```
 1              IN THE UNITED STATES BANKRUPTCY COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
 2                    FORT WORTH DIVISION

 3

 4   IN RE:               )   BK. NO: 23-90007-MXM-11

 5                        )

 6   EVENTIDE CREDIT      )

 7   ACQUISITIONS, LLC    )

 8      D E B T O R.      )

 9

10

11            *   *   *   *   *   *   *   *   *   *

12               TRANSCRIPT OF PROCEEDINGS

13            *   *   *   *   *   *   *   *   *   *

14

15

16

17

18

19

20

21      BE IT REMEMBERED, that on the 29th day of July, 2024,

22   before the HONORABLE MARK X. MULLIN, United States Bankruptcy

23   Judge at Fort Worth, Texas, the above styled and numbered

24   cause came on for hearing, and the following constitutes the

25   transcript of such proceedings as hereinafter set forth:
```

CINDY SUMNER, CSR (214) 802-7196

```
 1            P R O C E E D I N G S

 2            THE COURT:  Good morning.  Please be seated.

 3       All right.  This morning we have the Court's 10:30

 4  docket.  This morning we have Eventide Credit Acquisitions,

 5  LLC.  We'll go ahead and take appearances here in the

 6  courtroom first.

 7       Ms. Rosen, good morning.

 8            MS. ROSEN:  Good morning, Your Honor.  Suki

 9  Rosen, Forshey & Prostok, for the Debtor.  And I believe our

10  client representative is also -- Matt Martorello is also

11  available listening remotely.

12            THE COURT:  Good morning.

13            MR. GERBER:  Good morning, Your Honor.  Toby

14  Gerber, Beau Cox, and Michael Berthiaume in the courtroom,

15  Steve Peirce on the web for Norton Rose Fulbright and for Big

16  Picture Loans.

17            THE COURT:  All right.

18            MR. GERBER:  Your Honor, Mr. Cox will be

19  leading the argument for us.

20            THE COURT:  All right.

21       Anyone else on video wish to make an appearance?

22       Very good.  Mr. Cox --

23            MR. SCOFIELD:  John Scofield, Your Honor, just

24  appearing to monitor the hearing for the consumer borrowers.

25            THE COURT:  All right.  Thank you,
```

1    Mr. Scofield.  Appreciate the appearance.

2         Any other counsel?

3              MR. FORSHEY:  Your Honor, Bobby Forshey here

4    for Eventide.  I'm just going to be monitoring, as well.

5    Ms. Rosen will handle the hearing.

6              THE COURT:  All right.  Thank you,

7    Mr. Forshey.

8         Any other counsel wish to make an appearance?

9         All right.  Now, Mr. Cox, the podium is your's.

10             MR. COX:  Thank you, Your Honor.

11        As Mr. Gerber said, my name is Beau Cox.  It's a

12   pleasure to be here with you today.  We represent Big Picture

13   Loans.

14        Your Honor, we were all here on July 18.  And at that

15   time Your Honor, of course, set the Debtor's motion to

16   enforce the automatic stay for hearing for September 5.  Your

17   Honor also made clear that that was subject to and without

18   waiver of or prejudice to any motions that my client, Big

19   Picture Loans, might want to file in the interim.  There was

20   also a great deal of discussion at that July 18 hearing about

21   the problematic nature of some of the relief that was

22   requested at that time by the Debtor.

23        Your Honor, since July 18, I think all parties have

24   frankly heeded some of the comments that you've made during

25   the course of that hearing.  And there have been multiple

1  additional filings that changed the landscape that we're

2  dealing with today on our scheduling motion.  Most notably,

3  Your Honor, the Debtor filed their third amended motion to

4  enforce.  In that third amended motion, Your Honor, the

5  Debtor is no longer seeking to force Big Picture Loans

6  through this 362 proceeding to pay money back to the Debtor.

7  That relief has been stripped out.  The Debtor now instead

8  seeks a finding that the automatic stay applies to all of Big

9  Picture Loans properties, effectively an injunction

10 prohibiting Big Picture Loans from using any of its property

11 to operate its business.  And, thirdly, what amounts to an

12 injunction prohibiting Big Picture Loans from in any way

13 interfering with the Debtor's lien hold rights.

14      BPL, for our part, Your Honor, has filed two additional

15 papers.  First, as Your Honor suggested, we went ahead and

16 filed our motion to stay proceedings in favor of arbitration.

17 And that can be found, Your Honor, at Docket 313 and 314.

18 That motion -- and I'll talk about this a little bit more in

19 a minute without getting into the merits, just surely from a

20 scheduling perspective -- it asked the Court to compel the

21 parties to arbitrate the underlying disputes under their loan

22 and security agreement, or LSA, as required by the LSA's

23 arbitration provision.  And there are really, Your Honor, two

24 main reasons why it's critically important that we, from a

25 scheduling perspective, get a ruling on that arbitration


CINDY SUMNER, CSR (214) 802-7196

1    motion before we proceed to trial on the enforcement motion.

2         The first, Your Honor, is that the Debtor's theory that

3    underpins its motion to enforce is that BPL has breached the

4    LSA and defaulted under the note.  And without establishing

5    that premise, the Debtor simply is not entitled to any of the

6    relief that it seeks via its Section 362 motion.  So we have

7    to try that underlying issue first.

8         Secondarily, Your Honor, there is a sovereign immunity

9    issue here.  And we highlighted that for you in the

10   supplement that we filed yesterday, which I hope Your Honor

11   has had an opportunity to review.  We recognize that it was

12   filed on a Sunday.

13        Your Honor, BPL, for its part, Big Picture, it did

14   waive sovereign immunity, but only in a very narrow sense.

15   It waived it with respect to allowing the Debtor to proceed

16   to arbitrations on issues arising under the LSA.  It has not

17   otherwise waived it.  And we're going to have to deal with

18   that issue if we're here in this court dealing with the

19   underlying breach allegations as opposed to Michigan where

20   the parties agreed to arbitrate.  In addition to -- in

21   addition to the supplement that we filed in the -- excuse me,

22   the arbitration motion we filed, we also filed the supplement

23   that I mentioned a moment ago.  And that can be found at

24   Docket 260, which sets out our current request for the

25   schedule.


                    CINDY SUMNER, CSR (214) 802-7196

 1          So what are we asking for?  At its core the schedule

 2    that we seek allows for the parties to proceed in an orderly

 3    way where all parties' substantive, economic, and procedural

 4    rights will be protected.  That is the goal of our approach

 5    here.  We provided Your Honor with Exhibit A to our

 6    scheduling motion.  That can be found at Docket 312-1 that

 7    sets out the deadlines that we would propose.  I'm happy to

 8    give you a hard copy, if you need it, Your Honor.

 9          THE COURT:  No need.

10          MR. COX:  Thank you.

11          So let's talk about why it's so important to us that we

12    get a ruling on our arbitration motion before we proceed to

13    trial on a motion for enforcement.  To be clear, even under

14    this latest iteration of the Debtor's motion, its third

15    amended motion, the Debtor was still seeking relief that if

16    granted in full is very likely to destroy our ability to

17    operate our business.  This matters to us.  It's hugely,

18    hugely important.

19          Now, we have lots of questions about how the Debtor

20    could ever be entitled to the relief that it seeks.  But what

21    we do know is taken at face value, the Debtor is asking this

22    Court on September 5 to completely inhibit our ability to use

23    our assets to run our business.

24          THE COURT:  Help me out with that.

25          MR. COX:  Sure.


                  CINDY SUMNER, CSR (214) 802-7196

1            THE COURT:  How?  Either the stay applies or

2   it doesn't.  It's not my injunction, it's the Code.  It's

3   362.  If it applies, it applies.

4            MR. COX:  Your Honor, I will help you out.

5            THE COURT:  If it doesn't, it doesn't.

6            MR. COX:  I certainly appreciate that

7   question.  And I think that actually takes us to the core

8   reason why we're here today requesting that we have the

9   arbitration issues heard first.

10    Your Honor --

11            THE COURT:  But, again, that kind of misses

12   the point, I think, or at least I'm struggling with it.

13            MR. COX:  Sure.

14            THE COURT:  If the stay applies -- I'm not

15   saying it does or doesn't.  That's not set for today.  But if

16   the stay were to apply and if Big Picture were taking actions

17   that somehow harmed the estate because it violated the

18   stay -- again, the Bankruptcy Code 362 Automatic Stay, not

19   any injunction that I would issue.  How's this estate

20   protected if, in fact, the stay applies?  If it turns out the

21   stay doesn't apply, then, you know, no harm/no foul, because

22   there was no foul to begin with.  But as we wait to determine

23   at least the merits, I'm struggling with why -- what happens

24   if it turns out that Eventide were to win on the merits,

25   however far down the road that is?  I have no idea when the


CINDY SUMNER, CSR (214) 802-7196

1   arbitration group would rule.  What happens if the value of

2   the collateral -- and that's not my term, that's the term

3   defined by Eventide, if that is somehow dissipated harm to

4   where this estate ultimately gets harmed, shouldn't everybody

5   want to know whether or not the stay applies, regardless --

6   even if it's arguable property of the estate?  Again, I don't

7   know.  These are all really issues for September, unless the

8   Court were to, you know, push that off.  But I don't see how

9   the merits impacts that issue.

10              MR. COX:  So, Your Honor, first of all, I very

11  much appreciate the question.  Let me say it this way.  In

12  terms of the collateral, to use the term that the Debtor has

13  used, which is effectively all assets of BPL, there is, in my

14  mind, some confusion about how this stay would benefit the

15  Debtor, if it were to issue on or around September 5.

16  Because right now in other papers the Debtor has acknowledged

17  that we're using the collateral, its term, right, to generate

18  profits by running a consumer lending business.  Our running

19  of that business is the thing that is preserving the value of

20  the collateral.

21              THE COURT:  Aren't these arguments for

22  September?

23              MR. COX:  No doubt, Your Honor.  And I'm

24  trying to get back to your core question.

25              THE COURT:  Yes.


                  CINDY SUMNER, CSR (214) 802-7196

1                MR. COX:  But I first want to make sure that

2    it's clear that if this were to issue and a stay were to go

3    in place and there were no relief from that stay, at that

4    point we wouldn't be able to pay bills, and we wouldn't be

5    able to pay our employees, and we wouldn't be able to collect

6    on the loans that are out there.  And the value of the

7    collateral would be diminished.  So when Your Honor asked,

8    don't we need to know the answer to that, because if you're

9    using the collateral in violation of the stay it might be

10   diminishing its value, I think it's frankly quite the

11   opposite of that.  I just want to make sure that economic

12   reality is clear.

13               THE COURT:  I get that.  I mean, the stay --

14   the stay has, I think you use your word, I think it was

15   devastating is the word that was used in the papers to Big

16   Picture.  I get that.  I get that a lot from all creditors

17   who are subject to the automatic stay.  You know, the mom and

18   pop who sells their house, yet they have their own mortgage,

19   they're devastated if the stay's not lifted to allow them to

20   take action.  But if the stay applies, it applies.  It

21   doesn't mean it has to stay in effect forever.  There are

22   rights that Big Picture could have pursued.  This case had

23   been on the docket now for almost a year.  And I see motions

24   all the time, Judge, we don't think the stay applies.  But if

25   it does, please lift the stay and here are the reasons why.


                    CINDY SUMNER, CSR (214) 802-7196

1   There is no motion like that by Big Picture.

2             MR. COX:  There's not, Your Honor.  And I

3   think that comes back to the arbitration issue.  And so let

4   me -- let me just try to walk all the way through it to get

5   to your question.  And I don't mean my full presentation.  I

6   mean just this narrow point.

7             THE COURT:  No, I understand.  I understand.

8             MR. COX:  Okay.  So, Your Honor, the

9   contention from the Debtor is that its lien rights, which is

10  all it has pre-petition, right, I think we can all agree

11  about that, in our property as collateral, has somehow been

12  transferred into something more, because we have allegedly

13  breached the LSA.  But they can't just jump over the truth

14  that they need to put forward in order to demonstrate --

15            THE COURT:  And I looked at that.  That's all

16  part of the adversary proceeding.  I understand Eventide's

17  taking the position we own the collateral, or in the

18  alternative we have the lien rights to the collateral.  And

19  Big Picture's argument is, no, they don't, and no, they

20  don't.  And all of that's really subject to -- subject to the

21  adversary.

22            MR. COX:  You're right, Your Honor.  You're

23  right about all of that.  And if we go to hear the

24  enforcement motion on September 5, at that point there will

25  have been no finding by any Court or by any arbitration panel


                    CINDY SUMNER, CSR (214) 802-7196

1    that we breached the LSA or defaulted under the note.  And

2    so, Your Honor, it might be as simple as on September 5 you

3    just deny the relief that they're requesting, because they

4    haven't been able to lay the predicate for that relief which

5    requires a showing that our assets are, in fact, property of

6    the estate because we defaulted under the LSA.  And if that's

7    where we're headed, Your Honor, it seems like a -- it seems

8    like a cart before the horse proposition.  And maybe we're

9    being -- I mean I hate to use this term, I don't mean it

10   facetiously, but maybe we're being overly generous here to

11   the process and the way this ought to work to the Debtor.

12        If you just sit back and think logically, understanding

13   that to prevail on their motion they're going to have to

14   demonstrate that we defaulted under the LSA and the note, we

15   need to go and arbitrate that issue first, just logically.

16   I'm not talking about just from an advocacy perspective.

17   Because otherwise there's no point to the enforcement motion

18   hearing.  And so all we are looking for, Your Honor, is to

19   have a decision on our arbitration motion first.  If we go

20   arbitrate it, so be it.  If they win, they have the ability

21   to enforce that arbitration award.  If we win, then it will

22   have been a very, very good thing, Your Honor, that you

23   organized it in this fashion because our business won't have

24   been destroyed for no reason.

25        Which does bring us to another point that we addressed


                    CINDY SUMNER, CSR (214) 802-7196

1  in our papers.  If the stay were -- if you were to find that

2  the stay applied, even though they have no finding of

3  liability under the LSA, if you were to find that and the

4  devastating affects on our business took hold, how in the

5  world is this Debtor going to provide adequate protection to

6  us at this point?

7         My understanding, Your Honor, and I will admit I

8  haven't been involved in the case since the beginning, is

9  that this is effectively a shell company that doesn't have

10 any assets.  And that's what would -- that's what we'll be

11 going out there to try to get a bond.  That doesn't make any

12 sense, Your Honor.  Which is also part of why we've asked

13 that if Your Honor were to decline or arbitration motion and

14 if we were to proceed in this context, they would proceed as

15 an adversary proceeding under Part VII, because we would

16 definitely want discovery into some really important issues.

17 One of which is adequate protection, Your Honor, which we are

18 entitled to in this context.

19        The second, Your Honor, is even having studied their

20 papers with the way that they've evolved over time, I'm not

21 sure we all totally know what it would truly mean if Your

22 Honor were to say that a stay -- were to say that the stay

23 did apply, because of the way they define collateral, and the

24 way they define property, and the fact that there's no

25 evidence before this Court.  And there won't be any evidence


                CINDY SUMNER, CSR (214) 802-7196

1    before this Court of how the value of their lien, which is

2    the only right they have right now, compares to the value of

3    the property that we have.  All of that requires Part VII be

4    applied so that we have the opportunity to send out

5    interrogatories to get that information, to take a deposition

6    to get that information.

7            THE COURT:  I think the argument I'm going to

8    hear, which was in their papers, you've had that right all

9    along.  Those rules apply in contested matters.  And, again,

10   what I'm struggling with is -- and I'm not criticizing either

11   side.

12           MR. COX:  Of course.

13           THE COURT:  So please don't take it as

14   criticism.

15       We've had a bankruptcy cased filed in September of

16   2023.  We've had a motion to enforce the stay filed in March.

17   So whether or not the stay applies -- again, I want to make

18   this very, very clear.  Nothing I say today or in prior

19   hearings should be taken as how the Court would rule upon

20   that issue.  But it just seems like that's a pretty standard

21   issue that the Court sees all the time where, again, without

22   getting to the merits, the underlying disputes, which

23   partially are in the adversary proceeding -- and I guess I

24   just had a very cursory review of the motion, not of the

25   brief that was filed last night.  I take it, although I don't


CINDY SUMNER, CSR (214) 802-7196

1   really read it, it's not titled that way, it's a motion to
2   stay the bankruptcy, but not a motion to lift the stay to
3   allow arbitration to go forward.  And I'm struggling with the
4   relief that's being requested is simply tell us the stay
5   applies.  I don't -- I'm struggling with why you need the
6   protections of Part VII.  To the extent you've needed to take
7   discovery, you've had that right all along.  You did need
8   Part V of the adversary rules to apply because they apply in
9   contested matters.
10       So at this late stage when we've known the issue has
11  been out there for months and months and months -- although I
12  do understand there was an appeal.  There was a stay.  There
13  was confusion on the impact of the stay.  But that sort of
14  sounds like a hallow excuse at the moment.  And part of the
15  concern I have is I can only rule upon the papers that are
16  before me.  And a lot of what you're argument is, similar to
17  at lot of the arguments at least in my view, the District
18  Court might not agree with me, on the adversary was I can
19  only rule on that paper that's filed.  And I'm pretty limited
20  on what I can do with a 12(b)(6).  I'm pretty limited on what
21  I can do on this motion today.  I do know that I have a
22  motion to enforce -- to enforce the stay.  It's not that --
23  it's a serious matter, without question.  Is it that overly
24  complicated?  I don't think so.  Does it require a ton of
25  discovery?  I don't think so.  Getting to the bottom of

CINDY SUMNER, CSR (214) 802-7196

1    merits, which Mr. Gerber argued very forcibly in almost every

2    hearing we've had and in your argument, as well, I don't have

3    that in front of me today.  And it's really not in front of

4    me on September 5th.

5                    MR. COX:  You're correct, Your Honor.  And

6    so -- I'm sorry, did you --

7                    THE COURT:  No, go ahead.  So I hear what

8    you're saying.  But it's -- I can only rule on what I've got.

9                    MR. COX:  So I want to make one comment on the

10   week of the proceeding and then I'll come back to what's

11   before you.

12        Your Honor, you are correct, of course, about how long

13   the case has been on file.  You're also correct, of course,

14   that there have been some procedural, you know, zigging and

15   zagging --

16                    THE COURT:  Well, you're doing your job.  I'm

17   not criticizing -- I'm not being critical of that.

18                    MR. COX:  And so -- and so here is one thing,

19   though, that I do want to make clear.  They have been filing

20   continuously amendments to the stay motion, right.  At one

21   point there was a sanctions component.  Just last time we

22   were here, there was a component where we had to pay them

23   money.  It has been a moving target.  Okay.  There are now

24   currently three different motions before you, Your Honor,

25   that you can rule on in the near future.  The only one we can

CINDY SUMNER, CSR (214) 802-7196

1  rule on today is our motion which seeks an orderly schedule

2  to get to a ruling on the arbitration motion which is now

3  before you and has been filed, and on the enforcement motion.

4  That's all we're really here asking for today, Your Honor, is

5  to have the ability --

6          THE COURT:  You're asking for -- you're asking

7  for Part V to their motion.

8          MR. COX:  Part V, excuse me, Your Honor.

9          THE COURT:  Part VII of the adversary.

10          MR. COX:  To be clear, we're asking for that,

11  though, in the alternative, right.  So what we really want,

12  Your Honor, is to have the opportunity to have our

13  arbitration motion heard first.  I don't see any reason that

14  can't happen.

15          THE COURT:  Why can't they be heard at the

16  same time?

17          MR. COX:  Well, Your Honor, I think one of the

18  kind of practical issues there is that if our arbitration

19  motion were to be denied and you were then to immediately

20  take up the motion to enforce, we would have the ability

21  between those two things to seek a stay under Coin Base,

22  which Your Honor would need to rule on then, right.  And then

23  we would need to go up and seek some sort of emergent relief

24  in that regard.

25          THE COURT:  And, again, that's -- I can only


                    CINDY SUMNER, CSR (214) 802-7196

1  rule on what I have.  I'm not offended when people take

2  appeals.

3          MR. COX:  Of course.

4          THE COURT:  I'm not a offended by that

5  whatsoever.  I try very hard to make proper findings of fact

6  and I try to apply the law correctly, which I will do in

7  every case.  If there are appellate rights, there are

8  appellate rights.  But, again, I hear you, but that doesn't

9  really move the needle at all, at least in my view.  Because

10  all I have now in front of me is one motion to enforce the

11  automatic stay, which says, tell us that it applies.  It's

12  been watered down to say that.  Tell us that it applies.  I

13  don't really see any other, you know, enforcement other than

14  perhaps if the stay applies, then what's next?  I don't know.

15  Because I don't think it's in the motion now, the third

16  amended.

17          MR. COX:  Your Honor, the relief currently

18  being requested from the enforcement motion, the third

19  amended, it's not just a finding that the automatic stay

20  applies, to be clear.  That's sub 1 of what they're seeking.

21  Sub 2 is an order from this Court "prohibiting Big Picture

22  from using any of the capital key property".  That's

23  something I mentioned earlier that I would very much like to

24  understand what they're saying.  That's number 2.  Number 3

25  is, prohibiting Big Picture from interfering with the

CINDY SUMNER, CSR (214) 802-7196

1   Debtor's lien rights against the collateral.

2              THE COURT:  Whatever that means.

3              MR. COX:  And that's part of my issue here,

4   Your Honor.  They are not coming before you with a simple

5   motion that seeks exactly what you said which is, does the

6   stay apply or does it not?  They're seeking injunctive relief

7   that is premised upon an allegation that we breached a

8   pre-petition contract.  That's what it is.  And so that's

9   why, Your Honor, very much listening to you on July 18, we

10  got high behind and filed the arbitration motion.  Then we

11  came in with a supplemental paper here.  And are simply

12  asking for a schedule.  We are not trying to put off a

13  long-term hearing on their motion.  What we're trying to do

14  is have our arbitration motion heard first, given that this

15  is where we hope the relief that they're seeking has settled.

16             THE COURT:  But why is that -- again, it's not

17  a motion to lift stay to allow Big Picture to file an

18  arbitration motion.  That's kind of what it is.

19             MR. COX:  It's in substance, Your Honor, a

20  request that you order us to proceed in arbitration with

21  those disputes.  Much like a motion to compel in district

22  court.

23             THE COURT:  Exactly.  And if the stay were to

24  apply, lift the stay to allow that to go forward.

25             MR. COX:  Technically speaking, Your Honor, I


                  CINDY SUMNER, CSR (214) 802-7196

1    think what we're saying is, yes, order us --

2                THE COURT:  If the stay doesn't apply, we're

3    still at square one, of which you're now asking the Court to

4    send you to arbitration.  If the stay does apply, arguably,

5    then you're asking the Court to modify it to let us go to

6    arbitration.  At least that's how I'm sort of reading the

7    papers.

8                MR. COX:  I think logically, Your Honor -- and

9    maybe this is starting to sound a little bit, you know, law

10   schooly, and I don't mean for it to.

11               THE COURT:  No, no.

12               MR. COX:  I think that there is a threshold

13   issue that before you could ever determine that the stay

14   applies to Big Picture Loan's property, and I'm not talking

15   about their lien.  We understand they have a lien.  But

16   before you could ever determine that the stay applies to our

17   property and our ability to use our property, either you or

18   some arbitration panel, or somebody wearing a robe is going

19   to have to say that we've breached the LSA.  And the LSA says

20   that has to be decided in arbitration.  And so it's slightly

21   different, I think, Your Honor.

22               THE COURT:  It is slightly different.  But

23   it's even slightly different than that in that -- and, again,

24   I'm not prepared to -- and I don't want to argue the issues

25   on the motion to enforce the stay.  But I am familiar with


                    CINDY SUMNER, CSR (214) 802-7196

1   the 5th Circuit law.  I haven't gone through and done a

2   detailed review, just based upon the motions.  I had planned

3   to do that prior to a hearing on that.  But in that it's

4   arguable -- and the 5th Circuit has said that in the past.

5   Even if it's arguable property of the estate, the stay would

6   apply.

7          The contention is -- the contention from Eventide is it

8   is.  And I get Big Picture saying, no, it's not.  We won't

9   know until somebody ultimately rules.  Doesn't that fall

10  within the category of arguable?  It seems like these are all

11  just sort of legal issues that doesn't take a lot of

12  discovery.  I understand the disputes out there.  But I'm not

13  going to rule on those disputes.  But isn't just a legal

14  argument based upon these disputes, does the stay apply?

15  Does it arguably apply?  And if so, should the Court lift the

16  stay?  I think we're making -- again, I can only rule on the

17  papers that are in front of me.  I understand the arguments

18  that are being made.  But they technically really aren't in

19  front of me yet.

20             MR. COX:  I guess, Your Honor, what is before

21  you is our request, right, to have the arbitration motion

22  heard before.  That's clearly ripe.  It's ripe before you.

23  So --

24             THE COURT:  Yes.

25             MR. COX:  -- I see no harm in the world to the

CINDY SUMNER, CSR (214) 802-7196

1  Debtor to that approach.  I see immense harm to going in the

2  opposite order.  And so, Your Honor, if you sit back and you

3  sort of balance that, I see zero -- I mean, we could have the

4  arbitration hearing next week, if we wanted, right.  And

5  there's zero harm in proceeding in that manner.  However, if

6  we go the opposite direction and we were to get to the

7  enforcement motion, and even if we had them all heard, let's

8  say sort of jumbled up together at the same time, at its core

9  one of two things has to happen.  We have to just deny -- I

10 say, we, Your Honor has to deny the stay motion, because they

11 are only a lienholder because they didn't go through the

12 steps they needed to go through, which is in the arbitration

13 you get a finding that they're more than that.  Or

14 alternatively, you're going to grant the stay and our

15 substantive rights will have been abridged, Your Honor.

16        And so from our perspective --

17        THE COURT:  I don't like the way you phrase

18 that.  I'm going to grant a stay.  It either is there or it's

19 not.

20        MR. COX:  Fair enough, Your Honor.  You will

21 have made a finding that the stay applies.

22        THE COURT:  It either has or it hasn't since

23 day one.

24        MR. COX:  Correct, Your Honor.

25        And so if you were to find that it applies, which, of

CINDY SUMNER, CSR (214) 802-7196

1  course, we contend that it does not because they only have al

2  lien right now.

3          THE COURT:  I understand.

4          MR. COX:  Then you get into an issue of, okay,

5  what does that mean for Big Picture's business going forward?

6  And I heard you say earlier that you hear that all the time

7  and that that's necessarily novel.  Completely understand

8  that.  But there's no reason, Your Honor, to do it in that

9  way and cause harm to Big Picture, particularly when this

10 particular Debtor cannot offer any adequate protection.

11         THE COURT:  Okay.

12         MR. COX:  So, Your Honor, I hear your

13 comments.  I need to ask questions on the way.  I'll step

14 back and let Ms. Rosen respond.

15         THE COURT:  No, no.  Actually, I apologize for

16 interrupting your presentation.

17         MR. COX:  No.  I think it's helpful.  So any

18 other questions for me, or else I concede the podium and I'll

19 just reserve the right to come back up and address anything

20 she might have to say.

21         THE COURT:  Of course.  All right.

22         MR. COX:  Thank you, Your Honor.

23         THE COURT:  Thank you, Mr. Cox.

24         MS. ROSEN:  Okay.  Thank you, Your Honor.

25 Suki Rosen of Forshey & Prostok for the Debtor.  May I


                    CINDY SUMNER, CSR (214) 802-7196

1    proceed, Your Honor?

2                THE COURT:  Of course.

3                MS. ROSEN:  Okay.  Thank you.

4          Your Honor, at our last status conference on July 19th

5    the Court set a hearing on our enforcement motion.  That's

6    set for September 5th.  At that time the Court mentioned that

7    it had some concerns about the relief that we were seeking

8    through our enforcement motion.  We understood the Court's

9    concern and we addressed them.  The day after that status

10   conference, we filed our third amended enforcement motion and

11   we also filed a red-line reflecting the changes.  And we

12   showed that we streamlined the motion.  We're now only

13   seeking to enforce the automatic stay to prevent Big Picture

14   from using arguable property of the estate and to prevent it

15   from interfering with the Debtor's lien rights unless and

16   until it seeks and obtains relief from the automatic stay.

17         Just as a practical matter, Your Honor, Rule 7015

18   regarding amendments doesn't apply to a contested matter.  So

19   I disagree that we were required to seek leave on that.  But,

20   Your Honor, the point of the motion is, as the Court

21   indicated, if the stay applies, it applies.  And that's what

22   we're trying to do through the motion.

23         And to be clear, the changes that we made to the

24   enforcement motion, they were made without prejudice to

25   reasserting some of those arguments at a later date.  We are

                 CINDY SUMNER, CSR (214) 802-7196

1    not going to assert those through the enforcement motion.   So

2    all that we've currently got pending is our motion to enforce

3    the automatic stay.

4         And the last time, Your Honor, we discussed Judge

5    Pittman and his memorandum opinion.   And that makes it very

6    clear that this Court must be allowed to enforce the

7    automatic stay to protect Eventide's bankruptcy estate while

8    the parties' respective rights to the assets are being

9    determined through the adversary proceeding.

10         And, Your Honor, the enforcement motion is completely

11    separate from what's going on in the adversary proceeding.

12    The resolution of the enforcement motion will only involve

13    whether the Debtor has an arguable interest or right to the

14    property.   And, Your Honor, I disagree with what Mr. Cox said

15    about us -- about the estate purely having lien rights.   The

16    Debtor's position is that the note and all say are

17    self-effectuating and that property became property of the

18    estate.   In any event, that will be decided in the adversary

19    proceeding.   For purposes of the enforcement motion, it's

20    just whether or not the Debtor has at least arguable rights

21    to the property.   And also we'll evaluate whether the Debtor

22    has lien rights in the collateral that are subject to the

23    protection of the automatic stay.   The merits of the parties'

24    respective rights will not be resolved.

25         THE COURT:  Let's assume the Court were to

CINDY SUMNER, CSR (214) 802-7196

1   agree with Eventide.  Again, I don't want anybody to assume

2   I'm leaning to one side or the other, because I'm not.

3             MS. ROSEN:  Uh-huh.

4             THE COURT:  But for purposes of argument, if

5   the Court were to rule that the automatic stay applies

6   because there's arguable property of the estate, or arguable

7   lien rights -- so if the Court says, okay, the stay, to the

8   extent there's the collateral as defined in the Debtor's

9   motion, that the stay applies to the collateral, what next?

10  I mean, what's the -- you know, it's either applied or it

11  hasn't applied since day one.  I don't see what relief is the

12  Debtor then going to seek, or wanting to seek?  Mr. Cox

13  stated what he thinks that the Debtor is seeking on the 5th.

14   Tell me what -- let's assume the Debtor gets past that first

15  hurdle.  What's the next form of relief the Debtor would be

16  seeking on September 5th?

17            MS. ROSEN:  Well, I think that's all we're

18  seeking on September 5th, Your Honor, is that determination

19  that the stay does apply and that they're precluded from

20  using the property at that time, unless they obtain relief

21  from the automatic stay.  I think if the Court were inclined

22  to grant the motion, it could -- if they haven't filed a

23  motion for relief from the stay, the Court could say, you

24  know, we'll give Big Picture 20 days to come in and seek

25  relief from the stay.  But, I mean, that's on Big Picture at

CINDY SUMNER, CSR (214) 802-7196

1   that point.  If they're worried about the disruption to its

2   business, then they need to file a motion for relief from the

3   stay to continue to use the property and that's it.  And then

4   at that point in time the Court will have an opportunity to

5   evaluate the respective equities between the parties.

6              THE COURT:  All right.

7              MS. ROSEN:  Okay.  Your Honor, Big Picture

8   makes a bunch of arguments in its papers and in court.  And

9   they all hinge on Big Picture's position that the Debtor's

10  claims are disputed breach of contract claims.  But, Your

11  Honor, we say they're proper turnover claims.  And that's an

12  issue that's going to be decided in the adversary proceeding

13  which is currently stayed at Big Picture's request.  Yet, Big

14  Picture is asking the Court to just assume that its position

15  is correct.  It says it's entitled to all of the protections

16  associated with the disputed breach of contract claim,

17  arbitration, sovereign immunity, et cetera, without ever

18  answering on putting on any evidence to establish the

19  existence that a bona fide dispute exists relating to the

20  note.  That would take the Debtor's turnover claims outside

21  of Section 542.

22      Your Honor, Big Picture has gotten a lot of mileage out

23  of the mere assertion that a dispute exists.  And it's doing

24  everything it can to delay the resolution of that issue in

25  the adversary proceeding.  But as I indicated, the Debtor

CINDY SUMNER, CSR (214) 802-7196

1  says it owns those assets.  And that Big Picture's failure

2  default on September 1st and failure to make 11 straight

3  payments on the note --

4              THE COURT:  Okay.  I don't mean to cut you

5  off, but I do want to cut you off.

6              MS. ROSEN:  Yes, of course.

7              THE COURT:  I cut off Mr. Cox.

8       I don't want to argue the -- again, it's getting into

9  argument on merits, again.  And the issue I have today is do

10  I order the scheduling order that Big Picture has requested

11  and the application of all of the Part VII rules to your

12  motion.  So what's the response to that issue?

13             MS. ROSEN:  Understood, Your Honor.  I'll move

14  on on that.

15       Regarding that, Your Honor, we don't think there's any

16  basis to apply the adversary rules to the enforcement motion.

17  We do not believe any discovery is needed.  The Debtor's

18  arguable ownership rights and lien rights exist on the face

19  of the note and the LSA.  The merits of the parties'

20  respective rights will not be determined through the

21  enforcement motion.  Discovery, as the Court indicated,

22  already provided for any contested matters under Rule 9014.

23  If Big Picture thinks it needs discovery on whether or not

24  the Debtor has arguable rights and lien rights in the

25  collateral, then it can serve it and seek to expedite it.


              CINDY SUMNER, CSR (214) 802-7196

1  We'll seek to quash it and argue -- we'll seek to quash it as

2  unnecessary and oppose any request to expedite it.  But we

3  don't need the adversary rules for that.  And we also don't

4  need the adversary rules for motion practice.  Big Picture

5  can file whatever motions it wants and have them heard

6  concurrently with the enforcement motion.

7        Based on its new schedule that it had attached to its

8  reply, it's not even really clear what portions of the

9  adversary rules Big Picture wants to have applied.  As

10  Mr. Cox indicated, all they really want is to have their

11  arbitration motion heard first.  And, Your Honor, candidly, I

12  haven't had an opportunity to review the pile of paper that

13  they filed last night.  But I do know that they filed a

14  motion to stay the hearing on the enforcement motion based on

15  arbitration.

16        On their schedule I think they provided the Debtor six

17  weeks to respond to that, Your Honor.  We don't need six

18  weeks to respond to that motion.  We can respond to that on

19  August 19th, which is what we have in our proposed schedule

20  at ECF 308.

21        Does the Court have that, by the way?

22              THE COURT:  I do.

23              MS. ROSEN:  Okay.  Thank you.

24        And, Your Honor, Big Picture's motion can then be heard

25  with the enforcement motion.  Their delay tactics are


                    CINDY SUMNER, CSR (214) 802-7196

1    obvious.  Big Picture has had 15 months -- I'm sorry, months

2    since the filing of the enforcement motion on March 15th and

3    now to file its motion for arbitration, yet it just filed it

4    last night.

5          In our view, Your Honor, Big Picture's dilatoriness

6    alone warrants denial of its proposed schedule and request to

7    apply the adversary rules.  The reality is, all it wants is

8    to have its arbitration motion heard before the enforcement

9    motion so that it can indefinitely delay the resolution of

10   the enforcement motion.  It wants to seek another claim-based

11   stay when its arbitration motion is denied.  And, Your Honor,

12   we think the arbitration motion lacks merit and should be

13   denied.

14         There's a new case, and I won't get into the details of

15   it.  But there's a new case just last week by Judge Black in

16   Virginia denying arbitration of a motion to enforce the

17   automatic stay.  And it's Brown versus Goldman Sachs.  It's a

18   2024 Bankruptcy Lexis 1630.  And it took the position, same

19   that we would argue, that an arbitrator can't take the role

20   of a protector of the judicial system.  An arbitrator is an

21   alternative to the system.  And permitting him or her to

22   determine matters relating to the automatic stay would

23   essentially undermine the Court's ability to enforce its own

24   orders, which the automatic stay is an order of the

25   Bankruptcy Court.


                    CINDY SUMNER, CSR (214) 802-7196

```
 1        Your Honor, it's not clear whether or not Big Picture
 2   still intends to file a motion based on sovereign immunity.
 3   We believe that motion also has zero merit.  But
 4   nevertheless, we'll take that up.  We're willing to respond
 5   according to our proposed schedule and have that taken up at
 6   the same time as the enforcement motion.  All Big Picture
 7   wants here is to have its motions heard first because it
 8   knows that if the motions are heard concurrently with the
 9   Debtor's enforcement motion, then it can't obtain a stay
10   pending appeal, because the automatic stay is
11   self-effectuating.  A party can't avoid the affects of the
12   automatic stay by filing an appeal or seeking a stay pending
13   appeal, because there's nothing to stay.  The Section 362
14   Stay is self-effectuating and just remains in place.
15        Your Honor, Big Picture's offered zero legal basis
16   requiring the Court to hear its motions first.  Even though
17   we believe those motions lack merit, as I've indicated, we
18   included them in our schedule.  And, Your Honor, I disagree
19   with Mr. Cox.  I don't think there's any harm whatsoever to
20   Big Picture of the motions are heard together.  Big Picture
21   will still get its day in court.  Will still get its motions
22   heard.  The only thing it won't get is an opportunity to
23   delay the resolution of the enforcement motion indefinitely
24   while it pursues additional appeals and tries to obtain
25   another stay pending appeal.
```

CINDY SUMNER, CSR (214) 802-7196

1          Your Honor, just also, the adversary rules don't

2    require -- the Debtor is not seeking an injunction here.

3    It's just seeking to enforce the automatic stay, which is a

4    self-effectuating injunction.  We don't need an injunction to

5    enforce an injunction.

6          Regarding the impact on Big Picture.  Your Honor, with

7    respect to the stay, that's just (indecipherable word).  The

8    Court indicated the automatic stay applies uniformly.  And

9    that's not a -- that's certainly not a basis to find that the

10   stay does not apply.  And, Your Honor, we are not trying to

11   destroy Big Picture's business.  But they need to come in and

12   ask for relief from the automatic stay if they want to

13   continue using the business and using the assets, et cetera.

14   We just want the Court to ensure that, as the Court

15   indicated, the estate's interest in the collateral and the

16   property is protected until the parties' respective rights to

17   the property is determined.  And they've got some stuff in

18   their motion that we disagree with, Your Honor.

19         We think the evidence will show at the hearing that the

20   Tribal economy isn't supported by Big Picture's business at

21   all.  In fact, that they haven't made any distribution to the

22   Tribe since January 2023.  But we're not going to discuss the

23   merits of the parties' respective rights -- I'm sorry.  We're

24   not going to determine the parties' respective rights to the

25   property through the enforcement motion.


                 CINDY SUMNER, CSR (214) 802-7196

1          Well, Your Honor, I know that you don't want me to go

2    to the merits at all, but I just want to take one minute just

3    to talk about the realities of what's actually going on here.

4                THE COURT:  And I'll let Mr. Cox respond

5    accordingly.

6                MR. ROSEN:  Of course.

7          In our view, Your Honor, the Debtor has defaulted on

8    the payment of a $26.85 million note to which it has no

9    defense.  Big Picture's force majeure argument does not apply

10   to the note.  It only permits a termination of the LSA on

11   90-day's notice.  So even if the force majeure argument had

12   merit, which it doesn't, the LSA indisputably was not

13   terminated on September 6th when the Debtor accelerated the

14   note.

15         So none of these facts are disputed, or could be

16   disputed.  Yet, Big Picture has managed to parlay this

17   undisputed payment default into basically a year-long period

18   where it's been able to continue to use the property, it has

19   not made any payments to the Debtor, it's using money that it

20   should be paying to the Debtor to fight with the Debtor.

21   It's trying to prevent the Debtor from being able to protect

22   itself in the process, which is the to detriment of

23   Eventide's creditors and its bankruptcy estate.  And, Your

24   Honor, it's done this by appealing a 12(b)(6) order which did

25   not deny Big Picture's request for arbitration on the merits.


                    CINDY SUMNER, CSR (214) 802-7196

1    Instead, it just denied it as premature.  And, Your Honor,

2    they're trying to do the exact same thing here.  They're

3    trying to prevent the Debtor from protecting its arguable

4    rights and its lien rights through the automatic stay.

5         And just in closing, Your Honor, I want to make it very

6    clear that it's the Debtor, not Big Picture that needs the

7    protection of the automatic stay in the bankruptcy court

8    right now in relation to the enforcement motion.  We asked

9    last time and I'll ask the Court again, Your Honor, please

10   don't take the bait on this one.  The Debtor needs the

11   protection of the automatic stay.  The Court has absolute

12   discretion to control the matters on its own docket.  Big

13   Picture is trying to manipulate the process to indefinitely

14   delay the hearing on the enforcement motion so that it can

15   continue to use the property without obtaining relief from

16   the stay or otherwise protecting the Debtor in the process.

17   There's no legal basis whatsoever for Big Picture's motions

18   to be heard first.

19        So, Your Honor, we ask that the Court deny the request

20   to apply the adversary rules to the enforcement motion and

21   adopt the Debtor's schedule at ECF 308, which includes a

22   response date for Big Picture to respond to the enforcement

23   motion on August 5th.

24             THE COURT:  All right.  Let me ask you an

25   unfair question.


CINDY SUMNER, CSR (214) 802-7196

1          MS. ROSEN:  Okay.

2          THE COURT:  And you can respond any way, it

3    doesn't matter.  But I think I heard you say something and I

4    just want to make sure.

5       So obviously Big Picture filed yesterday the motion to

6    go to arbitration.  Did I hear you say that the Debtor

7    doesn't oppose that being set on the 5th?

8          MS. ROSEN:  That's correct, Your Honor.  That

9    can be set on --

10         THE COURT:  Again.  That's their motion, so

11   they can get it set whenever they want to get it set.  But

12   from the Debtor's perspective, you wouldn't oppose that?

13         MS. ROSEN:  Correct, Your Honor.  Our schedule

14   at ECF 308 has that motion being heard at the same time as

15   our's on September 5th.  There would be a hearing on their

16   motion and on our motion and whatever else they're going to

17   file.

18         THE COURT:  And --

19         MS. ROSEN:  And, Your Honor, just to clarify,

20   too.  We've shortened our response dates and all of those

21   things to try to accommodate --

22         THE COURT:  Yeah.  To be clear -- to be clear,

23   we had a status conference a couple of weeks ago.  And

24   obviously status conferences typically bear fruit in agreed

25   scheduling orders and agreed procedures.  It became


                   CINDY SUMNER, CSR (214) 802-7196

1    abundantly clear after two hours to this Court that fruit was

2    nowhere to be found.  And so we're doing it the hard way.

3    You file your motions.  You get a separate hearing according

4    to the rules.  And the Court will rule.  If the parties don't

5    want to agree on scheduling, I'm not going to pick one over

6    the other.  So I hear what the Debtor wanted at the status

7    conference.  The Court didn't grant it.  You filed your

8    motion, it's set for hearing.  We have a motion now to apply

9    the adversary proceeding rules to that motion and the Court

10   will decide whether or not that motion should be granted or

11   denied.

12           MS. ROSEN:  Your Honor, just to be clear.  I

13   don't think we had -- I had email communications with

14   Mr. Gerber prior to this hearing.  And I don't believe there

15   was any opposition by Big Picture to the Court adopting the

16   Debtor's proposed schedule.  I'll let him respond.

17           THE COURT:  That's not before me.  But if you

18   all agree to that, great.  I'm not ordering it unless there's

19   a motion filed specifically requesting it.  I've given the

20   parties many hearings now thinking that we'll get to a

21   consensus to just chat.  But it's pretty obvious to me now

22   that the parties have no desire to do that.

23           MS. ROSEN:  Your Honor, just to clarify.  I

24   didn't state that correctly and I apologize to Mr. Gerber.

25       What they agreed to was that we could ask the Court to


                    CINDY SUMNER, CSR (214) 802-7196

1   adopt our schedule.  Not that they agreed to it.  But that at

2   this hearing, we did not have to file our own motion for the

3   Court to adopt our schedule.

4            THE COURT:  And I hear you and the Court's not

5   going to do that.

6            MS. ROSEN:  Okay.

7            THE COURT:  Unless they agree to it.  If they

8   don't agree to it, then I'm not going to force it, just like

9   I wouldn't force -- I'm not going to force your schedule on

10  Big Picture, and we will see whether or not I enforce Big

11  Picture's schedule on the Debtor.

12           MS. ROSEN:  Thank you, Your Honor.

13           THE COURT:  Mr. Cox, back to you.

14           MR. COX:  Thank you, Your Honor.  I'll be very

15  brief.

16      Your Honor, there's been a lot of discussion about, you

17  know, delay this, delay that.  Your Honor, if the underlying

18  arbitration had occurred back when they originally initiated

19  it, it would be done.  They initiated the arbitration and

20  then they abandoned it.  And that's part of the issue here.

21      Your Honor, I'm also not totally sure, but I think I

22  heard Ms. Rosen suggest that the only thing they are now

23  going to be seeking on September 5th is a finding that the

24  automatic stay applies.

25           THE COURT:  That was my understanding reading


            CINDY SUMNER, CSR (214) 802-7196

1    the papers.

2                    MR. COX:  That's what I heard her say, which I

3    think means that we can cross out Romanettes (ii) through

4    (iii) of their prayer in the third amended motion to stay.

5    That's what I heard, we're down to one Romanette.  And I just

6    want to make sure we're all on the same page.

7                    THE COURT:  You can reply to that or not.  I'm

8    not going to reply to that.  The motion says what it says.

9                    MS. ROSEN:  Correct, Your Honor.  We're not

10   going to take away any of the requests that we're seeking in

11   our motion.

12                   MR. COX:  Okay.  It sounds like there's even

13   more than just the stay applies.

14        So, Your Honor, several times during the course of

15   counsel's argument she said that there is no dispute that

16   there's been a breach of the LSA.

17                   THE COURT:  There's a big time dispute.

18                   MR. COX:  Yeah.  I just want to be super

19   clear, there is.  We're sitting here and we're saying there

20   is.  And we get to say that there is.

21                   THE COURT:  And Mr. Gerber has made it very

22   clear in prior hearings, for example, the -- that there was a

23   prior acceleration and they weren't going to -- yeah, I get

24   it.

25                   MR. COX:  I just wanted to make sure.


                    CINDY SUMNER, CSR (214) 802-7196

```
 1                    THE COURT:  Those are not currently before me.
 2   I understand the parties have wild disputes on the facts.
 3                    MR. COX:  Perfect.
 4                    THE COURT:  So I hear you.
 5                    MR. COX:  I just wanted to make sure --
 6                    THE COURT:  I hear contentions on both sides.
 7                    MR. COX:  Correct.  Not just that one party is
 8   (inaudible word) that the other, but there is an actual
 9   dispute under the LSA.  And I just want to be clear about
10   that.
11                    THE COURT:  Okay.  That's -- there are
12   disputes.
13                    MR. COX:  Correct.
14                    THE COURT:  When you say, under the LSA, I'm
15   not going to go that far, because I don't know.  There are
16   clear disputes that are being articulated by the parties.  A
17   lot of it's going to be in the adversary proceeding now.
18                    MR. COX:  Fair enough, Your Honor.
19        Now, I think the thrust of what's happening here --
20                    THE COURT:  Just keep in mind, and I hate to
21   harp on this, but there were alleged disputes at the argument
22   about the adversary proceeding, but there's never been an
23   adversary filed.  So I have no idea technically, legally
24   under the papers filed before me.  The only thing I have is a
25   12(b)(6).
```

CINDY SUMNER, CSR (214) 802-7196

```
 1              MR. COX:  Yes, Your Honor.

 2              THE COURT:  And so I ruled on that.  But I

 3  hear that Big Picture is taking -- making the arguments that

 4  those -- that there are those disputes.

 5              MR. COX:  Correct.  We do not concede that

 6  there has been a breach of the LSA or that we owe them a

 7  dollar.

 8              THE COURT:  Understood.

 9              MR. COX:  Now --

10              THE COURT:  To my knowledge, there's never

11  been an answer filed in the adversary proceeding.

12              MR. COX:  I would have to defer to the team on

13  that one.  I'm not sure.

14              THE COURT:  There has not been an answer

15  filed.

16              MR. COX:  Okay.

17              THE COURT:  So it's all subject to the appeal

18  and the stay and that's now in front of Judge Pittman.  And

19  he will rule according to how he believes he should rule.

20              MR. GERBER:  That's correct, Your Honor.  But

21  I would point out, we filed -- I filed a motion to arbitrate

22  this matter and those disputes are at the center of --

23              THE COURT:  And that's --

24              MR. GERBER:  -- so you'll hear evidence about

25  it at the motion.
```

CINDY SUMNER, CSR (214) 802-7196

1                    THE COURT:  Fair enough.  And that was filed

2    last night and it's not before me, but I'm aware of it.  I

3    did a cursory review of it.  My question of the Debtor was,

4    they have no opposition to that being set on the 5th.  But

5    it's your motion.  I'm not setting it.  You're going to have

6    to get a setting on your motion, expedited or otherwise, or

7    delayed.  I don't really care.  Because I don't think trying

8    to coordinate between the two is going to help.  So I've kind

9    of given up on that until the parties give me the indication

10   that perhaps I can be helpful in any status conference.

11                    MR. COX:  Understood, Your Honor.  And I think

12   part of what we're here today on is effectively a request

13   that we do have in one form or the other an expedited hearing

14   on the arbitration motion, right.  I mean, I think we're

15   asking for a schedule that just simply puts that before the

16   enforcement motion.  If Your Honor wants to move the

17   enforcement motion back, that's fine.  If it doesn't, we

18   would still like to have the arbitration motion heard first.

19                    Now, I do want to just make one last comment.  This is

20   substantive in nature.  But I think it gets at the thrust of

21   what's going on here.  The relief that has been requested

22   through the enforcement motion continues to be whittled down.

23   What I heard Ms. Rosen say is that it's incumbent upon us to

24   file a motion for relief from the stay.  Your Honor, we don't

25   think the stay applies nor could it apply, because they


                      CINDY SUMNER, CSR (214) 802-7196

1    didn't go and do what they needed to do to get a finding that

2    we breached --

3                    THE COURT:  And that's a position that Big

4    Picture can take.  Again, whether the stay -- whether it

5    applies or not, that's been in effect since September,

6    whatever the date was, 6th, 2023, automatic by the Bankruptcy

7    Code.  I don't know if it applies or not.  But a request has

8    been made for to determine whether or not it has been -- it

9    is applied.

10                   MR. COX:  Yes, Your Honor.

11                   THE COURT:  Big Picture can do -- Big Picture

12   can take whatever action it deems appropriate.  And if it

13   turns out that the stay applies, Big Picture may have taken

14   some action at its peril.  I don't know.

15                   MR. COX:  Yes, Your Honor.

16                   THE COURT:  So it is what it is on the

17   automatic stay.  It's automatic.  It's not just for the

18   Debtor.  I know Ms. Rosen keeps arguing on behalf of the

19   Debtor, that's her client.  But we all know the automatic

20   stay is to protect the estate, including the Debtor,

21   creditors, parties in interest.  So it's much broader than a

22   fight between the two of you.  The stay applies to the entire

23   estate and any and all creditors and parties in interest

24   affected by that.  So at least that's the view that I have to

25   take on whether or not the stay applies or not.  We'll find

CINDY SUMNER, CSR (214) 802-7196

1    out after a full fulsome hearing on that.

2              MR. COX:  And, Your Honor, the only reason I

3    raise that is because I think Ms. Rosen said several times

4    that we need to come in and file a motion for relief from the

5    stay.  She said it several times throughout the argument.

6    And I just want to be clear two quick things.

7         The first is, I think it's a little bit non-sensical

8    for us to file a motion for relief from stay that we don't

9    think applies.  That's number one.  That's our decision, as

10   you put it, rightfully so.  Second, Your Honor, this is what

11   I think is going to happen next.  You asked a really good

12   question of Ms. Rosen.  You said, what happens next?  Right.

13             THE COURT:  Uh-huh.

14             MR. COX:  I think what is going on here is

15   that everybody appreciates, the Debtor included, that if our

16   arbitration rights were not heard first and if Your Honor

17   were to determine, despite the lack of a finding that we

18   breached the LSA, that the stay applies and always has

19   applied, then I think the Debtor is actually hopeful that we

20   will file a motion for relief from the automatic stay.  And I

21   think what we're going to see is at that point a renewed

22   request for the same sort of mandatory injunction style

23   relief that was in its last pleading.  It's going to say,

24   sure, they can have relief from the stay if they start paying

25   us millions of dollars.  That's where this is headed.


                    CINDY SUMNER, CSR (214) 802-7196

1      Your Honor, we don't think that we owe them anything

2  and we shouldn't be in that position.  We ought to have the

3  arbitration matter heard first.  And that's respectfully what

4  we would request of you.

5           THE COURT:  Understood.  All right.  Anything

6  else?

7      Ms. Rosen, and I'm going to give Mr. Cox the final word

8  at the end of the day, but any rebuttal?

9           MS. ROSEN:  Thank you, Your Honor.  Just three

10  quick things.

11      First, outside of this motion, we would -- we oppose

12  any expedited consideration of their arbitration motion.  And

13  to the Court's point, I'm not saying that there isn't a

14  disagreement between the parties.  Our position in the

15  adversary proceeding is that it's not a bona fide dispute.  I

16  know they say there's a dispute.  Our position is it's not a

17  bona fide dispute sufficient to bring it outside of Section

18  542.  And finally, Your Honor, if Big Picture doesn't want to

19  seek relief from the automatic stay, our position is that

20  they do so at their peril.

21           THE COURT:  All right.  Any final reply?

22           MR. COX:  Nothing further, Your Honor.

23           THE COURT:  Give the Court about 10 minutes or

24  so and I'll be back.

25              (Brief recess ensued.)


                    CINDY SUMNER, CSR (214) 802-7196

1            THE COURT:  All right.  We're back on the

2  record.  Thank you all for being patient as the Court

3  considered your arguments today.

4        This oral ruling constitutes the Court's findings of

5  fact and conclusions of law as authorized by Rule 52 of the

6  Federal Rules of Civil Procedure, which is incorporated by

7  Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Rule

8  7052 is incorporated by Rule 9014 of the Federal Rules of

9  Bankruptcy Procedure, hence Rule 52 applies in this 9014

10 contested matter.

11       Before the Court is Big Picture's initially filed --

12 Big Picture's motion to enforce the Section 362 Automatic

13 Stay that was initially filed on May 13th, 2024.  And that

14 can be found at ECF Number 260.  And that motion, as amended,

15 requests the Court to deny -- or direct that Part VII of the

16 Federal Rules of Bankruptcy Procedure apply to Eventide's

17 motion to enforce the Section 362 Automatic Stay, which is

18 currently set for hearing on September 5, 2024.

19       I may have mis-stated that.  Let me restate that,

20 because I may have mis-stated that.

21       Before the Court is Big Picture's motion to apply the

22 adversary rules to the pending motion that's been filed by

23 Eventide.  And, again, Big Picture's motion can be found at

24 ECF Number 260.  And Big Picture requests that the Court

25 direct Part VII of the Federal Rules of Bankruptcy Procedure


                CINDY SUMNER, CSR (214) 802-7196

1    apply to Eventide's motion to enforce the Section 362

2    Automatic Stay, which is currently set for hearing on

3    September 5, 2024.  And Big Picture requests that the Court

4    enter the proposed scheduling order that's filed at ECF

5    Number 310-1, which the Court has reviewed.

6           Specifically for purposes of today, the Court has

7    reviewed, Number 1, Big Picture's motion, again, that can be

8    found at ECF Number 260.  Although not set for hearing today,

9    the Court has read Eventide's motion to enforce the Section

10   362 Automatic Stay originally filed on March 15th, 2024 at

11   ECF Number 229; Eventide's first amended motion to enforce

12   the Section 362 Automatic Stay filed on May 9th, 2024 at ECF

13   Number 257, along with a brief filed in support at ECF Number

14   261 and the supporting appendix filed at ECF Number 262.  The

15   Court also reviewed Eventide's second amended motion to

16   enforce the Section 362 Automatic Stay that was filed on July

17   15, 2024 at ECF Number 292, along with the brief in support

18   filed at ECF Number 293.  And the Court also reviewed

19   Eventide's third amended motion to enforce the Section 362

20   Automatic Stay that was filed on July 19th, 2024 at ECF

21   Number 311.  And that's the motion that we discussed a bit on

22   the record today.  But is not before the Court today.

23          The Court also takes judicial notice of the docket in

24   this bankruptcy case and the prior hearings held and orders

25   entered in this bankruptcy case involving the Debtor and Big

1    Picture.  And the Court also takes judicial notice of the

2    docket, the pleadings, hearings held, and orders entered in

3    Adversary Proceeding Number 23-09006, which is also pending

4    in this court.

5         The Court notes that last evening Big Picture filed a

6    motion, brief, and appendix at Docket Number 313, 314, and

7    315, respectively, requesting the Court to stay, or abstain

8    from deciding Eventide's third amended motion to enforce the

9    Section 362 Automatic Stay.  And, of course, that's the

10   motion that's currently set on September 5, 2024.  And also

11   require Eventide to assert its contract rights in

12   arbitration.  That motion that was filed last night, to be

13   clear, is not set for hearing today.  But this morning the

14   Court has had an opportunity to conduct a cursory review of

15   the motion itself at ECF Number 313, but not the brief that

16   was filed, nor the appendix that was filed in support.

17   Finally, the Court carefully considered the arguments of

18   counsel.

19        After due and careful deliberation, the Court finds and

20   concludes as follows:

21        Number 1, Eventide's motion to enforce the Section 362

22   Automatic Stay is set for hearing on September 5, 2024.  In

23   that motion, as amended, Eventide requests the Court to; 1,

24   find that the Section 362 Automatic Stay applies to the

25   "collateral" as defined in the motion as "arguable property

1  of the estate".  And, 2, arguably, to enforce the Section 362

2  Automatic Stay, if applicable, to protect the bankruptcy

3  estate's interest in the collateral.  But as I stated on the

4  record, I'm a bit confused on what affirmative "enforcement"

5  is being requested.

6        With that said, the Court finds and concludes that at

7  least for purposes of this ruling, and this ruling only, the

8  issues raised and relief sought by Eventide in its motion to

9  enforce Section 362 Automatic Stay constitute; 1, contested

10 matters under Rule 9014; and, 2, core matters under 28 USC

11 Section 157(b)(2)(A), (G), and (O) over which the Court has

12 statutory and constitutional authority to enter final orders.

13       The issue of whether the Section 362 Automatic Stay --

14 which, again, the stay is intended to protect all creditors

15 and parties in interest in any given bankruptcy estate.

16 Again, the issue today, or the issue in that motion filed by

17 Eventide, which applies to the collateral, constitutes a core

18 matter over which the Bankruptcy Court has exclusive

19 jurisdiction to determine if the Section 362 applies, if at

20 all.

21       As we all know, if the Section 362 Automatic Stay

22 applies, it is automatic by operation of the United States

23 Bankruptcy Code upon the filing of a bankruptcy petition.

24 Which in this case the bankruptcy petition was filed on

25 September 6th, 2023, nearly 11 months ago.


                    CINDY SUMNER, CSR (214) 802-7196

1        Eventide believes and contends that the collateral,

2   again a term identified or defined by Eventide, constitutes

3   "arguable" property of the estate.  And that the Section 362

4   Automatic Stay applies to the collateral unless or until the

5   Court modifies the Section 362 Automatic Stay.

6        Eventide contends further that if Big Picture has been

7   using the collateral in violation of the Section 362

8   Automatic Stay since -- or contends that Big Picture has been

9   using the collateral in violation of the automatic stay since

10   Eventide filed its bankruptcy case.

11        Big Picture, obviously, disputes both; 1, that the

12   collateral constitutes "arguable" property of the Debtor's

13   estate and; 2, that the Section 362 Automatic Stay applies to

14   the collateral.  Again, the consideration and resolution of

15   that dispute is not for today, but is currently set for

16   hearing on September 5, 2024.

17        The only issue properly before the Court today is

18   whether the Court should direct and order that Part VII of

19   the Federal Rules of Bankruptcy Procedure apply to Eventide's

20   motion.  And if so, enter a proposed scheduling order

21   suggested by Big Picture at ECF Number 310-1.  And I think I

22   heard Mr. Cox indicate that Big Picture also requests, what

23   I'll call the arbitration motion, which was the motion that

24   was filed yesterday at Docket Number 313, be set prior to

25   Eventide's motion to enforce the automatic stay.  And if

CINDY SUMNER, CSR (214) 802-7196

1   necessary, to expedite the hearing on that arbitration

2   motion.

3          In support of its motion, Big Picture contends that the

4   issues and disputes raised in Eventide's motion to enforce

5   the Section 362 Automatic Stay are "are serious, complicated,

6   and require extensive discovery".  The Court agrees that the

7   issues raised by Eventide in its motion to enforce are

8   serious.  But the Court is not persuaded by Big Picture's

9   contention that the issues are complicated or that extensive

10  discovery is necessary to contest Eventide's motion to

11  enforce the Section 362 Automatic Stay.

12         Again, this bankruptcy case has been pending since

13  September 5, 2023, almost a year ago.  The application, if at

14  all, of the Section 362 Automatic Stay to the collateral

15  automatically arose by operation of law, not by any ruling of

16  this Court.  Additionally, Eventide's original motion to

17  enforce the Section 362 Automatic Stay has been on file since

18  March 15, 2024, almost 4 1/2 months ago.  Yet, it appears

19  from the docket, from Big Picture's pleadings, and arguments

20  of Big Picture's counsel; 1, Big Picture has not filed an

21  objection or otherwise responded to, specifically responded

22  to Eventide's original motion to enforce the Section 362

23  Automatic Stay or any of its subsequent amendments; 2, Big

24  Picture has not taken any, or at least sufficient discovery

25  necessary to be prepared to contest Eventide's motion to

1 enforce the Section 362 Automatic stay.  And, 3, Big Picture

2 has not, as yet, to affirmatively either; 1, seek a

3 determination from this Court whether the Section 362

4 Automatic Stay even applies to the collateral or any action

5 Big Picture may be taking concerning the collateral or; 2,

6 seeking relief from the Section 362 Automatic Stay.  Which,

7 again, is a process and procedure often used by creditors and

8 parties in interest in cases where it's not clear if their

9 actions might be in violation of the stay, or if there's even

10 a hint that the stay might apply.

11       Again, to be abundantly clear, nothing that the Court

12 has said during the hearing today or in this ruling should be

13 interpreted as how the Court might rule following a full

14 hearing on the merits of Eventide's motion to enforce the

15 automatic stay.

16       Accordingly, the Court finds and concludes that Big

17 Picture's argument in support of its motion before the Court

18 today are not persuasive.  The Court finds and concludes

19 further that the application of Part VII of the Federal Rules

20 of Bankruptcy Procedure to Eventide's motion to enforce the

21 Section 362 Automatic Stay is unnecessary and would cause a

22 needless, unduly, and unfair delay of Eventide's rights and

23 the estate's rights to have its motion to enforce heard in a

24 timely manner.  And, therefore, the Court denies Big

25 Picture's motion.  The Court will not direct or order Part

CINDY SUMNER, CSR (214) 802-7196

1    VII of the Federal Rules of Bankruptcy Procedure apply to

2    Eventide's motion to enforce the Section 362 Automatic Stay.

3    Nor will the Court enter the scheduling order requested by

4    Big Picture, or the oral request by Ms. Rosen that the Court

5    enter the scheduling order that has been suggested by

6    Eventide.

7        And finally, the Court denies the oral request made by

8    Mr. Cox that its arbitration motion be set on an expedited

9    basis or before the September 5, 2024 hearing on Eventide's

10   motion to enforce the Section 362 Automatic Stay.  The Court

11   will, however, if Big Picture so requests, set Big Picture's

12   motion to arbitrate simultaneous with Eventide's motion that

13   is currently set on September 5, 2024.

14       The Court reserves the right to make additional

15   findings of fact and conclusions of law.  And that will be

16   the Court's ruling on the motions before the Court today.

17       Ms. Rosen, if you'll be so kind as to draft the form of

18   order.  You don't have to recite.  You can simply just

19   incorporate by reference to the oral findings of fact and

20   conclusions of law that I just stated in the ruling of the

21   Court.  But I'll let you and Mr. Cox and Mr. Gerber

22   determine.  If your form of order is sufficient, I will

23   require that at least Big Picture approve it as to form only,

24   not as to content.  And once that order is uploaded, the

25   Court will be happy to sign it.  If there's a dispute on the

CINDY SUMNER, CSR (214) 802-7196

1 form of order, the parties can reach the Court and we'll

2 determine how to arrive at a form of order.

3      All right.  Anything else?

4           MS. ROSEN:  I'll do that, Your Honor.  Thank

5 you.

6           THE COURT:  All right.

7      Mr. Cox?

8           MR. COX:  No, Your Honor.  Thank you.

9           THE COURT:  Thank you all for your argument

10 today and for being prepared, as you always are.

11      With that, the Court will be in recess until 1:30.

12           (End of Proceedings.)

13

14

15

16

17

18

19

20

21

22

23

24

25

                    CINDY SUMNER, CSR (214) 802-7196

1                 <u>C E R T I F I C A T E</u>

2              I, CINDY SUMNER, do hereby certify that the

3    foregoing constitutes a full, true, and complete

4    transcription of the proceedings as heretofore set forth in

5    the above-captioned and numbered cause in typewriting before

6    me.

7

8

9

10

11

12

13

14                        /s/Cindy Sumner

15                        _____

16                        CINDY SUMNER, CSR #5832
                          Expires 10-31-2024
17                        Cindy Sumner, CSR
                          5001 Vineyard Lane
18                        McKinney, Texas 75070
                          214 802-7196
19

20

21

22

23

24

25


                 CINDY SUMNER, CSR (214) 802-7196