| | |
|---|---|
| Ian R. Phillips, Esq. (TX Bar No. 24091239)<br>COLE SCHOTZ P.C.<br>901 Main Street, Suite 4120<br>Dallas, TX  75202<br>Telephone: (469) 557-9390<br>Facsimile: (469) 533-1587<br>iphillips@coleschotz.com | Gary H. Leibowitz, Esq. (Admitted *pro hac vice*)<br>H.C. Jones, III, Esq. (Admitted *pro hac vice*)<br>J. Michael Pardoe, Esq. (Admitted *pro hac vice*)<br>COLE SCHOTZ P.C.<br>1201 Wills Street, Suite 320<br>Baltimore, MD 21231<br>Telephone: (410) 230-0660<br>Facsimile: (410) 230-0667<br>gleibowitz@coleschotz.com<br>hjones@coleschotz.com<br>mpardoe@coleschotz.com |

*Counsel to Official Committee of Unsecured Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| In re:<br><br>EVENTIDE CREDIT ACQUISITIONS, LLC, *et al.,*[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-90007 (MXM)<br><br>(Jointly Administered) |

## COMMITTEE'S (I) OBJECTION TO EVENTIDE CREDIT ACQUISITIONS, LLC'S THIRD MOTION TO EXTEND EXCLUSIVITY, AND (II) MOTION TO TERMINATE THE DEBTOR'S EXCLUSIVITY PERIODS, PURSUANT TO SECTION 1121 OF THE BANKRUPTCY CODE TO PERMIT THE COMMITTEE TO FILE A PLAN OF LIQUIDATION

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned Chapter 11 case (the "**Chapter 11 Case**"), by and through its undersigned counsel, hereby files this (I) Objection to Eventide Credit Acquisitions, LLC's Third Motion Pursuant to Section 1121(d) of the Bankruptcy Code to Extend the Exclusive Periods During Which Only the Debtor May File and Solicit Acceptances of a Chapter 11 Plan (the "**Motion to

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Eventide Credit Acquisitions, LLC (1353) and BWH Texas LLC (9205).

**Extend**"), and (II) Motion to Terminate the Debtor's Exclusivity Pursuant to Section 1121(d)(1) of the Bankruptcy Code, for cause, to permit the Committee to formulate, file, and prosecute a Plan of Liquidation.  In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The filing of this "**Objection and Motion to Terminate**" should come as no surprise to this Court.  Now that Eventide Credit Acquisitions, LLC ("**Eventide**" or the "**Debtor**") settled the adversary case it filed against Big Picture Loans ("**BPL**"), there are no material assets left in the estate to convert to cash *except* the substantial fraudulent transfer and breach of fiduciary duty claims against Eventide's insiders, principals, managers, affiliates and related entities and trusts.[2]  *See* Schedules A/B [Dkt. No. 29].[3]  The Debtor also has no current business operations or employees, and the collection of the BPL Settlement is being handled by the independent Collection Agent under the governing settlement agreement.  These facts are undisputed.

2. But instead of formulating or negotiating a simple liquidating plan with a liquidation trust to bring the causes of action, the Debtor is now solely focused on trying to get a second bite of the apple, and fight the claims of the defrauded consumer borrowers again – a fight already lost in the United States District Court for the Eastern District of Virginia.  The consumer borrower claims were litigated before Judge Robert E. Payne in the United States District Court

---

[2] Under 11 U.S.C. § 541(a) the estate is comprised of all the property listed under § 541, wherever located and by whomever held, including "all legal or equitable interests of the debtor in property as of the commencement of the case." The scope of the term "property of the estate" is very broad. *United States v. Whiting Pools*, 462 U.S. 198, 205-06 (1983); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987). Section 541(a) (1)'s reference to "all legal or equitable interests of the debtor in property" includes causes of action belonging to the debtor at the time the case is commenced. *In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1149 (5th Cir. 1987); *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983). Fraudulent transfer and breach of fiduciary duty claims against officers and directors are causes of action and thus "property of the estate."

[3] On Line 14.1 in the "Investment" section of Schedule A/B, Eventide scheduled a "loan" to an affiliate called GFLP Entity 1, LP.  It remains unclear whether it is an "investment" or "loan."  The Debtor has failed to provide the Committee with copies of any loan or investment documents (to the extent they even exist), or any information whatsoever about it.

2

for the Easter District of Virginia (the "**Virginia Court**") in the context of Matt Martorello's involvement as the Debtor's operator in a scheme to defraud the borrowers through the creation of and collection of illegal, usurious loans.

3. Specifically, with respect to the creation of Eventide and the sale of Bellicose Capital and the illegal lending operation back to the LVD tribe, Judge Payne found that

- "those changes were all part of Martorello's desire to evade liability by trying to use LVD's sovereign immunity." *Williams v. Big Picture Loans, LLC*, 2020 WL 6784352 at *9, *aff'd*, 59 F.4th 68 (4th Cir. 2023).

- Matt Martorello and others lied about the creation of Big Picture Loans, and that the evidence showed that "Martorello created the entity, Big Picture Loans, at least a year before LVD says that it created or formed the entity." *Id*. at *12.

- "there are no remaining triable issues of fact on Plaintiffs' § 1962(d) claim'" because the undisputed evidence showed that Martorello knew about and facilitated the unlawful lending scheme. *Williams v. Big Picture Loans, LLC*, 693 F. Supp. 3d 610, 621 (E.D. Va. 2023).

Despite rulings by a federal judge finding that Matt Martorello lied to the Court, and that he facilitated the unlawful lending scheme which Eventide participated in, the Debtor wants to extend exclusivity with Matt Martorello still in control.

4. Plan exclusivity is not an unfettered right. As reflected in the legislative history and applicable case law, it is a privilege that must be: (a) continually earned based on good stewardship over estate assets and good case leadership; and separately, (b) based on a solid foundation of case circumstances. There can also be no serious dispute that a debtor in chapter 11 also owes a fiduciary duty to maximize value for the benefit of creditors, and not its

principals, managers, members, affiliates, or related entities. The Debtor's conduct here no longer warrants or justifies continued exclusivity. The record in this case demonstrates that Eventide and its manager / operator Matt Martorello are not providing "good stewardship" over the assets or discharging their fiduciary duties to creditors.

5. For example, without any authority for its position, the Debtor continues to assert that the allowance or disallowance of the consumer borrower claims is a gating issue for the plan process. It is not. As this Court is aware, claims objections and reconciliations are most commonly handled post-confirmation under a plan. A qualified and non-conflicted liquidation trustee can certainly handle the task as this Court has previously approved in a similar tribal lending case. *See In re Think Finance, et al.,* (Case No. 17-33964-swe) (Bankr. N.D.Tex.) [Dkt. No. 1664].

6. The Debtor has also failed and refused to prosecute the substantial fraudulent transfer claims against the Debtor's principals and affiliated and related entities for nearly a year despite the *Louisiana Exposition* demand from the Committee. The Committee is not surprised by the refusal given Eventide's historic conduct which includes a previously dismissed bad faith bankruptcy filing in 2021 in this Court (*In re Eventide Credit Acquisitions, LLC*, Case No. 20-40349-elm) (Bankr. N.D.Tex.), and the $43.0 million judgment entered against Matt Martorello in the United States District Court for the Eastern District of Virginia. What is surprising is the fact that Eventide has also brazenly stonewalled the Committee from participating in this case and violated the Committee's rights under 11 U.S.C. § 1103 by failing and refusing to provide any documents to the Committee during the entire pendency of this case. There can be no dispute that the Committee (i) sought relevant documents from the Debtor by letter dated October 10, 2023, (ii) provided the Debtor a Confidentiality Agreement, and (iii) provided a proposed protective

order in January and December 2024 which the Debtor has refused to sign. Yet not a single document has been produced, and the Debtor will not even agree to allow the Committee to have access to documents it provided the Virginia consumer borrowers in the Virginia litigation.[4] The Debtor is also objecting to the Committee's Rule 2004 Motions and Document Requests to avoid providing any information and documents. As a result, the estate must incur the fees and costs of unnecessary litigation. The Debtor has also refused to consent to derivative standing for the Committee to prosecute the fraudulent transfer claims for the benefit of the estate and creditors, in breach of its fiduciary duty to recover assets, choosing instead to improperly shield the insider transferees rather than recover funds for the benefit of creditors.[5]

7. In two "meet and confer" sessions conducted between counsel prior to the filing of this Objection and Motion to Terminate on December 9th and 11th, 2024, the Debtor steadfastly refused to cooperate with the Committee on the basis that it believed the Committee's work is "premature", and it did not want the estate to incur fees. Neither of these arguments provide a basis for violating the Committee's rights and there is no legitimate basis under applicable law for a debtor to freeze out a committee and block it from discharging its statutory duties.

8. In addition, among other things, the Debtor has also:

   a. Allowed Matt Martorello to control Eventide as a debtor-in-possession when the Virginia Court and the Fourth Circuit have already held:

---

[4] If the Debtor simply agreed to the Protective Order, the Committee could access the documents the Debtor previously produced in the Virginia case without any costs to this estate whatsoever.

[5] The Debtor could save the estate hundreds of thousands of dollars, if not more, in professional fees and preserve cash for the estate and creditors by consenting to derivative standing, or by negotiating a plan term sheet which includes a liquidation trust. Instead, the Debtor chooses to litigate and cause delay giving the transferees and subsequent transferees additional time to move cash to other entities, or offshore to the Cook Islands consistent with its prior conduct.

5

(i) "Martorello and others lied about the creation of BPL" *Williams v. Big Picture Loans, LLC*, 2020 WL 6784352 at *2, *aff'd*, 59 F.4th 68 (4th Cir. 2023);

(ii) "Martorello had *de facto* control of Red Rock and Big Picture's lending operations," *Id.*;

(iii) "Martorello was functionally in charge of the lending business and the Tribal 'managers' were 'rather meaningless,'" *Id.*;

(iv) ". . . even after the LVD restructured the lending operations to avoid regulatory scrutiny, the evidence strongly shows that Martorello was still running the show." *Id.* at 52–53;

(v) "[t]he record supports the district court's conclusion that Martorello lied when he said he was never involved in receiving or demanding payments on Red Rock loans." *Id.* at 89;

(vi) "Martorello was still largely in charge of the lending operations after the restructuring and that he effectively controlled the tribal lending entities." *Id.* at 90;

(vii) As to the § 1962(d) claim, "Martorello conceded that, after the Court's ruling that the loans are governed by the law of Virginia and that a mistake of law defense is not available as a defense to liability, 'there are no remaining triable issues of fact on Plaintiffs' § 1962(d) claim'" because the undisputed evidence showed that Martorello knew about and facilitated the unlawful lending scheme. *Id*. at 621 (docket citations omitted);

(viii) As to the § 1962(c) claim, Martorello further stipulated: "that, for the entire class period, he was associated with an association-in-fact enterprise the activities of which affect, interstate or foreign commerce, and Mr. Martorello participated in the operation of the affairs of the enterprise through the collection of "'unlawful debt.'" *Id*. (docket citations omitted).

b. Failed to directly include the Committee in settlement discussions with BPL;

c. Seeks to retain Holland & Knight LLP as Special Counsel despite its direct conflict of interest with its ongoing representation of Matt Martorello;

d. Refused to consent to class certification for the purpose of a class proof of claim choosing instead to undertake a costly and unnecessary Rule 23 process;

e. Scheduled approximately $4.0 million in claims of Loeb & Loeb, the law firm which filed the prior chapter 11 case that was dismissed as a bad faith filing and failed to object to the claim;

6

    f.    Allowed Matt Martorello to control the Debtor's determination as to whether the Debtor must indemnify himself for the $43.0 million civil RICO judgment entered against him in the Virginia Court despite the conflict of interest and despite using millions of dollars of Eventide funds to pay for his defense for years;

    g.    Failed to schedule the fraudulent transfer claims in Schedule A/B;

    h.    Filed a Position Statement which misrepresented the decisions of the Virginia Court which expressly determined that Matt Martorello was the *de facto* head of Eventide and continued to control it after 2016 [Dkt. No. 15];

    i.    Failed to provide a cash flow forecast to this Court or the Committee during the 16 months that this case has been pending;

    j.    Failed to negotiate with the Committee about a potential plan over the 15 months this case has been pending despite incurring over $2.0 million in legal fees;

    k.    Falsely asserted that this is a "100 cent case" if the consumer borrower claims are disallowed even though the Debtor scheduled over $19.0 million in claims and admits in the Motion that liabilities exceed $25.0 million. (The BPL settlement, after payment of approximately $2.0 million of accrued fees to Debtor's counsel, will provide less than $14.0 million to the estate for distribution); and

    l.    Provided retainers to numerous law firms even though they were not providing services to the Debtor or approved by the Court. *See* Schedule A/B, lines 7.6 through 7.8. [Dkt. No. 29];

9.    Without immediate termination of the Debtor's exclusivity period, the estate and creditors will remain "hog tied," and over $100.0 million dollars which Eventide improperly transferred prepetition to insiders and related parties may vanish as a result.

10.    This Court has the power to stop the improper conduct by terminating exclusivity immediately so the Committee can file a Plan of Liquidation. By doing this, the Court can bring an abrupt end to this decade long shell game, and preserve and increase the funds in the estate for the benefit of the Debtor and creditors.

7

11. The Committee can produce a confirmable plan promptly, and, if given the opportunity, will do so expeditiously, affording the Court a more efficient and effective means for resolving this case.

## PROCEDURAL BACKGROUND

12. The Debtor commenced the Chapter 11 Case on September 6, 2023 (the "**Petition Date**"). No trustee or examiner has been appointed. The Office of the United States Trustee for the Northern District of Texas (the "**UST**") conducted a Committee Formation Meeting and selected the following three (3) members to form the Committee: (i) Dowin Coffy, (ii) Dana Duggan, and (iii) Renee Galloway. On September 21, 2023, the UST filed the Notice of Appointment of the Committee pursuant to Section 1102 of the Bankruptcy Code. [Dkt. No. 20].

13. On December 12, 2023, the Debtor filed its Motion of the Debtor and Debtor-In-Possession for Entry of an Order Extending Debtors' Exclusivity Periods Within Which to File a Plan and Solicit Votes Thereon [Dkt. No. 131](the "**First Motion to Extend Exclusivity**"). The Court entered the order approving the First Motion to Extend Exclusivity on January 22, 2024 [Dkt. No. 175].

14. On May 28, 2024, the Debtor filed its second motion to extend the period during which they have the exclusive right to (a) file a chapter 11 plan through January 3, 2025, and (b) solicit acceptances thereof through March 4, 2025. The Court granted the second extension on June 25, 2024. [Dkt. No. 279].

15. On December 9, 2024, the Debtor filed its third motion to extend the period during which it has the exclusive right to (a) file a chapter 11 plan seeking an extension through March 6, 2025, and (b) solicit acceptances thereof through May 6, 2025. [Dkt. No. 453].

## LEGAL STANDARD

16. Under Section 1121(d)(1) of the Bankruptcy Code, the "court may for cause reduce or increase" the time in which a debtor can exclusively file a plan. The Bankruptcy Code does not define "cause," but courts have held that section 1121(d)(1) "grants great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of 'cause.'" *See In re Mirant Corp.*, No. 4-04-CV-476-A, 2004 WL 2250986, at *2 (N.D. Tex. 2004); *Geriatrics Nursing Home, Inc. v. First Fid. Bank, N.A.* (*In re Geriatrics Nursing Home, Inc.*), 187 B.R. 128, 132 (D.N.J. 1995). The Debtor bears the burden of proving "cause" exists to extend exclusivity and extensions should not be granted "routinely nor cavalierly." *In re Mirant Corp.* at *2; *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987); *In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011).

17. The debtor in a Chapter 11 case is also required to demonstrate that there is a "reasonable probability that it will be able to propose a plan that will result in a successful reorganization within a reasonable time." *In re Sw. Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 451 (Bankr. W.D. Tex. 1987) (citing *In re Pine Run Trust, Inc.,* 67 B.R. 432, 435 (Bankr. E.D.Pa. 1986)). Some promise of probable success in formulating such a plan of reorganization is an element of cause for an extension of the exclusivity period. *In re Sw. Oil Co. of Jourdanton, Inc.*, 84 B.R. at 451 (internal citations omitted). A reasonable probability cannot be grounded solely on speculation. *Id.* The Code requires the debtor to prove that an effective reorganization is possible. *Id.* (citing *In re Craghead,* 57 B.R. 366, 370 (W.D.Mo.1985)).

18. Although § 1121(d) does not define "cause," the following factors, among others, have been identified by courts as being relevant in determining whether "cause" exists:

   a. the size and complexity of the case;

9

    b.  the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

    c.  the existence of good faith progress toward reorganization;

    d.  the fact that the debtor is paying its bills as they become due;

    e.  whether the debtor has demonstrated reasonable prospects for filing a viable plan;

    f.  whether the debtor has made progress in negotiations with its creditors;

    g.  the amount of time which has elapsed in the case;

    h.  whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

    i.  whether an unresolved contingency exists.

*In re Express One Int'l, Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re McLean Industries, Inc.,* 87 B.R. 830 (Bankr.S.D.N.Y.1988).

  19.  In determining whether "cause" exists under section 1121 of the Bankruptcy Code, courts apply a "general balancing analysis to avoid allowing the debtor to hold the creditors and other parties-in-interest 'hostage' so that the debtor can force its view of an appropriate plan upon the other parties." *See In re Pub. Serv. Co.*, 88 B.R. 521, 537 (Bankr. D.N.H. 1988). In *In re Pub. Serv. Co.*, the court noted the legislative history behind the Bankruptcy Code, stating that exclusivity (which was interminable under the Bankruptcy Code's predecessor, the Bankruptcy Act) "gives the debtor undue bargaining leverage, because by delay he can force a settlement out of otherwise unwilling creditors…." *Id.* at 534. Terminating exclusivity "simply returns the parties to a level playing field." *Id.* at 540. The bankruptcy court must balance the potential harm to creditors, *In re Southwest Oil Co. of Jourdanton, Inc.,* 84 B.R. at 453, and limit the delay that makes creditors hostages of Chapter 11 debtors. *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),* 808 F.2d 363, 372 (5th Cir.

10

1987); *In re Mirant Corp.*, 2004 WL 2250986, at *2 (The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts).

## ARGUMENT

I. **The Motion to Extend Should be Denied.**

20. Here, the Debtor argues in its Motion to Extend that it:

> [n]eeds more time to file a plan and seek confirmation thereof because (i) resolving the disputes between BPL, the Tribe, Eventide, and the various other entities has changed the course of this case; and (ii) there are outstanding issues between Eventide the Consumer Borrowers, the Unknown Borrowers, and the other parties that remain contingent upon future occurrences.

Motion to Extend ¶ 3. It further states that it needs the time to "develop and obtain acceptances of a confirmable plan." *Id*. at ¶ 22. A review of the applicable criteria for courts to consider in deciding to extend exclusivity, however, weigh against the requested continuation.

A. **Size and Complexity of Case.**

21. Notably, for the purpose of extending exclusivity, the Motion to Extend argues that the case is a "mega case" with liabilities "over $25 million". This is contrary to the Debtor's contention that the Committee should *not* investigate the fraudulent transfers because this is "100 cent case" -- which would require the liabilities to be less than the $14.0 million from the BPL settlement. The Debtor can't have it both ways. In addition, the case is not complex. The Debtor is not an operating business, there are no scheduled assets left to liquidate, and a simple "pot plan" with a liquidation trust to prosecute the causes of action and administer a claims process can be filed and consummated. This prong weighs against an extension.

B. **Necessity of Sufficient Time to Permit the Debtor to Negotiate a Plan.**

22. The Motion to Extend falsely states that it "attempted to negotiate a plan with its major creditors . . ." ¶ 29b. This is patently false. The Debtor has yet to provide a plan term sheet

or have any plan negotiations with the Committee whatsoever. To the contrary, Committee counsel emailed Debtor's counsel on November 20, 2024 proposing a cost-effective liquidating plan with a liquidation trust, and the Debtor refused to negotiate. This prong weighs against an extension.

### C. Debtor's Good Faith Progress.

23. The Debtor alleges that the BPL settlement and "negotiations" with consumer borrowers about noticing constitutes "significant strides." Motion to Extend ¶ 29c. Notably, the Debtor never mentions the Committee in its efforts whatsoever. While the BPL settlement provided some funding for a future plan, it is a breach of the Debtor's duties to the estate and creditors to stop its efforts to obtain additional funding for distributions by prosecuting the estates' causes of action. As previously stated, the Debtor has never circulated a plan term sheet or a draft of a plan despite asserting in the Motion to Extend that it intends to file a plan next month in January 2025. *Id*. at ¶ 24. No progress towards a consensual plan has been made. This prong weighs against an extension.

### D. Payment of Bills as They Come Due.

24. There is no dispute that Debtor failed to pay its administrative expenses from September 2023 until October 2024, and since it is not an operating business, there are no ordinary course expenses to even pay. This prong weighs against an extension.

### E. Whether Debtor Demonstrated Reasonable Prospects for Filing a Viable Plan.

25. The Debtor merely argues that it demonstrated a reasonable prospect for filing a plan by making progress in resolving the claims of consumer borrowers. But no progress has been made with the consumer borrowers. To the contrary, the Debtor even refused to provide the defrauded consumer borrowers an extension to respond to the Debtor's motion to retain a claims

agent, and to respond to the Debtor's objection to the consumer borrower claims unless the Committee agreed to essentially suspend its efforts to investigate the administration of this case and the causes of action. This is yet another example of the Debtor's bad faith conduct. In ¶ 29e of the Motion to Extend, the Debtor again states that it "made substantial progress to date formulating a plan", but the Debtor has not shared even an outline of this proposed plan. *Id*. at ¶ 29e. This prong weighs against an extension.

### F. Whether the Debtor has Made Progress in Negotiations with Creditors.

26. The Debtor shockingly states that this factor "heavily weighs in Eventide's favor." *Id*. at ¶ 29f. The Debtor has not participated in any negotiations with the Committee whatsoever. In fact, the Motion to Extend omits any mention of the Committee as if it doesn't even exist. Accordingly, no progress has been made at all with unsecured creditors toward a confirmable plan. This prong weighs against an extension.

### G. Amount of Time Elapsed in the Case.

27. While the total amount of time sought by the Debtor is less than 18 months, the longer the causes of action remain dormant, the further away the creditors get from the money. The Committee believes that the Debtor transferred in excess of $100.0 million prior to the Petition Date to insiders, affiliates and related entities also controlled by Matt Martorello. As this Court is aware, Matt Martorello routinely creates new entities, transfers assets, and offshores cash to Cook Islands trusts with the help of his professionals. He previously admitted to using Giordani & Associates PLLC ("**G&A**") for asset protection. G&A brazenly admits on its website that it assists its client "by implementing the various techniques available to preserve individual wealth from threats of . . . litigation, future creditors . . ." and this includes the "implementation of foreign trusts". *See* https://giordanilaw.com/practice-areas/international-estate-asset-protection-planning/

13

28. Following the money to collect fraudulent transfer judgments grows more difficult as time elapses and the funds are offshored or transferred to subsequent transferees. This prong weighs against an extension.

### H. Whether the Debtor Seeks an Extension to Pressure Creditors to Submit to its Demands.

29. Ironically, the Debtor makes an admission against extending exclusivity in the Motion to Extend at ¶ 29h. It states, "Indeed, Eventide has not yet made any particular reorganization 'demands' on any creditors in the case." *Id*. at ¶ 29h. Extending exclusivity requires efforts to negotiate a plan, and the Debtor admits that it has not even made a demand, or a proposal. *Id*. This prong weighs against an extension.

### I. Existence of Unresolved Contingency.

30. Without any specificity, the Debtor merely states that it has "unresolved contingencies relating to providing notice to the Unknown Borrowers which it hopes to resolve." *Id*. at ¶ 29i. The notice issues are a problem of the Debtor's own creation. For example, the Debtor refuses to consent to class certification, leaving itself in the difficult position of figuring out how to properly notify hundreds of thousands of consumer borrowers across the country. This prong weighs against an extension.

### J. Length of Previous Extensions.

31. As previously discussed, following the money to collect fraudulent transfer judgments grows more difficult as time elapses and the funds are transferred to subsequent transferees. This prong weighs against an extension.

### K. Breakdown in Negotiations.

32. The Motion to Extend mistakenly cites to negotiations to resolve the BPL adversary proceedings as evidence of negotiations. *Id*. at ¶ 29k. But this prong relates to plan negotiations,

14

and the Debtor fails to allege that it has undertaken any plan negotiations because it has not. This prong weighs against an extension.

L. **Failure to Resolve Fundamental Reorganization Matters Essential to Survival.**

33. The Debtor admits that there are no unresolved matters essential to the Debtor's survival. *Id*. at ¶ 29l. Based on this admission, there is no need for Matt Martorello to control the estate through the Debtor as a debtor-in-possession. The causes of action which are the only remaining asset in the estate should be administered without the interference of a conflicted insider like Matt Martorello. This prong weighs against an extension.

M. **Gross Mismanagement by the Debtors**.

34. The Debtor denies mismanagement. *Id*. at ¶ 29m. Notably, however, the Debtor omits any discussion of its:

> a. Refusal to prosecute the fraudulent transfer claims or consent to derivative standing for the Committee;
>
> b. Refusal to provide any documents or information to the Committee;
>
> c. Failure to directly include the Committee in settlement discussions with BPL;
>
> d. Attempt to retain Holland & Knight LLP as Special Counsel despite their disqualifying conflict;
>
> e. Decision to incur millions of dollars in legal fees to fight class certification instead simply dealing with a class proof of claim;
>
> f. Scheduling approximately $4.0 million in claims of Loeb & Loeb, the law firm which filed the prior chapter 11 case that was dismissed as a bad faith filing and failing to object to the claim;
>
> g. Allowing Matt Martorello to control the Debtor's determination as to whether the Debtor must indemnify himself for the $43.0 million civil RICO judgment entered against him in the Virginia Court despite the conflict of interest and despite using millions of dollars of Eventide funds to pay for his defense for years;
>
> h. Failing to schedule the fraudulent transfer claims in Schedule A/B;

15

    i. Filing a Position Statement which misrepresents the decisions of the Virginia Court which expressly determined that Matt Martorello was the *de facto* head of Eventide and continued to control the lending scheme 2016 [Dkt. No. 15]; and

    j. Failing to provide a cash flow forecast to this Court or the Committee during the 16 months that this case has been pending.

The case is being grossly mismanaged and this prong weighs against an extension.

35. Accordingly, the well-established elements overwhelmingly weigh against granting the Debtor any further extensions for exclusivity. The Debtor failed to use the prior extensions to even discuss a plan term sheet and given Matt Martorello's improper stewardship of the Debtor, there is no prospect for the Debtor to propose a confirmable plan.

## II. **Exclusivity Should be Terminated Immediately so the Committee Can File a Plan.**

36. The Debtor is not an operating business any longer. The settlement with BPL liquidated the prepetition Note, and a "Collection Agent" is collecting and administering the settlement payments pursuant to the settlement agreement. No other assets remain to liquidate other than the fraudulent transfer and breach of fiduciary duty claims and the Debtor's management is too hopelessly conflicted to bring such claims against its insiders, affiliates, and related entities. Accordingly, if exclusivity is not terminated, the Debtor can continue to hold the estate and creditors hostage in this case.

37. The Supreme Court has held, "the trustee is 'accountable for all property received,' [11 U.S.C.] Secs. 704(2), 1106(a) (1), and has the duty to maximize the value of the estate, see [11 U.S.C.] Sec. 704(1)." *Commodity Futures Trading Comm'n. v. Weintraub*, 471 U.S. 343, 352 (1985) (emphasis added). The fraudulent transfer and breach of fiduciary duty claims are causes of action and property of this estate. Eventide is duty bound to assert the claims if doing so would maximize the value of the estate. 11 U.S.C. § 704(1) (debtor-in-possession is required to pursue cause of action if it would be beneficial to the estate to do so).

16

38. Due to Matt Martorello's conflict of interest here as manager, Eventide has refused to assert the causes of action. As a result, the Committee seeks to bring the actions on the estate's behalf. There is no dispute that BPL paid many millions of dollars to Eventide prior to the Petition Date, but the Debtor had only approximately $200 cash when it filed its petition because the Debtor transferred cash to Matt Martorello and other entities. Accordingly, the estate has colorable and allowable claims that Eventide has unjustifiably refused to pursue. *In re Louisiana World Exposition v. Fed. Insur. Co.*, 858 F.2d 233 (5th Cir. 1988).

39. A creditor's interests in a Chapter 11 context are not protected where a debtor-in-possession fails to fulfill its obligation to collect property of the estate. If a valid--and potentially profitable--cause of action exists under state law which the debtor-in-possession may assert on behalf of the corporation, all creditors are harmed when the debtor-in-possession refuses to pursue it. The value of the estate is not maximized and the ultimate recovery of all creditors is diminished. *Id*. Indeed, the willingness of courts to leave debtors-in-possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *Id.* Where a debtor-in-possession possesses a cause of action--and, because the estate will benefit as a result, must assert that cause of action--yet is unable, because of a conflict of interest, to bring that action, allowing a creditors' committee to pursue the suit on the debtor-in-possession's behalf will often prove beneficial to the estate. Inherent conflicts in the debtor-in-possession's relationship with its management and creditors constitute a basis for not only derivative standing, but to terminate exclusivity.[6]

---

[6] Derivative standing in a case where all other assets have been liquidated is far less expensive than the appointment of a chapter 11 trustee or conversion to chapter 7 due to inefficiencies.

17

40. It is well-established under Section 1103(c)(2), a committee may "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business ... and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2). With the Debtor's recent refusal to provide any documents or information to the Committee whatsoever, it is now abundantly clear that the Matt Martorello will scuttle any attempt at a negotiated resolution for the case, and there is no reasonable chance of a consensual plan. The continuation of exclusivity will only provide insiders with additional opportunities to pressure creditors to accede to their insider demands which have pervaded this case since the Petition Date, at great expense to all creditors.

41. The Committee therefore respectfully submits that under these unique circumstances, the Debtor cannot demonstrate the requisite "cause" that would warrant the continuation of exclusivity. But there is cause to terminate the exclusive periods.

42. If, as the Committee suspects, the Debtor cannot obtain authorization from Matt Martorello to provide documents to the Committee, consent to derivative standing, or negotiate a plan with the Committee, this case should not be subject to his control. Instead, the Committee should be allowed to file a plan. As previously argued, the current circumstances support the termination of exclusivity under the *In re Express One Int'l, Inc.* factors.

43. If creditors "los[e] faith in the capability and perhaps the integrity of debtor's management," such loss of confidence "is a factor the court should and must consider in its determination" as to whether the debtor should be granted an extension of its exclusivity period. *See In re All Seasons Indus.*, 121 B.R. 1002, 1006 (Bankr. N.D. Ind. 1990). Given the apparent conflicts between Matt Martorello and the transferees, the Committee believes that Matt Martorello will never allow the Debtor to negotiate the terms of a plan that allows his controlled

entities and/or relatives to be sued for the fraudulent transfers, and he will likely demand full releases.

44. Given these concerns, exclusivity should be terminated to permit the Committee to file the plan and pursue confirmation.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Committee respectfully requests the Court (i) deny the Motion to Extend, (ii) immediately terminate the periods in which the Debtor can exclusively file, and solicit acceptance of, a plan; and (iii) grant such other and further relief as the Court deems just and proper.

Dated: December 16, 2024

Respectfully submitted,

By: */s/ Ian R. Phillips*

Ian R. Phillips, Esq. (TX Bar No. 24091239)
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
Email: iphillips@coleschotz.com

and

Gary H. Leibowitz, Esq. (Admitted *pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: (410) 230-0660
Facsimile: (410) 230-0667
Email**:** gleibowitz@coleschotz.com

*Counsel for Official Committee of Unsecured Creditors*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2024, a true and correct copy of the foregoing was served via the court's ECF system to all parties receiving such electronic notice.


By: */s/ Ian R. Phillips*

Ian Ross Phillips

60754/0002-48994311