Ian R. Phillips, Esq. (TX Bar No. 24091239)
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX  75202
Telephone:  (469) 557-9390
Facsimile:  (469) 533-1587
iphillips@coleschotz.com

Gary H. Leibowitz, Esq. (Admitted *pro hac vice*)
H.C. Jones III, Esq. (Admitted *pro hac vice*)
Alicia L. Shelton, Esq. (Admitted *pro hac vice*)
J. Michael Pardoe, Esq. (Admitted *pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: (410) 230-0660
Facsimile: (410) 230-0667
gleibowitz@coleschotz.com
hjones@coleschotz.com
ashelton@coleschotz.com
mpardoe@coleschotz.com

*Counsel to the Official Committee of
Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re:<br><br>EVENTIDE CREDIT ACQUISITIONS, LLC, *et al.*,[1]<br><br><div align="center">Debtors.</div> | Chapter 11<br><br>Case No. 23-90007 (MXM)<br><br>(Jointly Administered) |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE
PURSUANT TO SECTIONS 105(A) AND 1104(A) OF THE BANKRUPTCY CODE**

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txnb.uscourts.gov/ no more than twenty-four (24) days after the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk and filed on the docket no more than twenty-four (24) days after the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, respectively, are:  Eventide Credit Acquisitions, LLC (1353) and BWH Texas LLC (9205).

## <u>TABLE OF CONTENTS</u>

JURISDICTION AND VENUE ................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 2
    I.     The Bankruptcy Case. ................................................................................................ 2

    II.    Martorello's Fraud, Dishonesty, and Mismanagement Prior to the
        Commencement of this Chapter 11 Case. .................................................................. 3

        A.     The Tribal Lending Scheme................................................................... 3
        B.     Judge Payne's Ruling that Martorello Lied about His
               Involvement with the Tribal Lending Scheme........................................... 5
        C.     Eventide's First Bankruptcy Was Dismissed as a Bad-Faith
               Filing. ...................................................................................................... 6
        D.     Fraudulent Transfers. ............................................................................. 8

    III.   Martorello's Fraud, Dishonesty, and Mismanagement During the
        Pendency of this Chapter 11 Case. ......................................................................... 10

        A.     Judge Payne Granted Summary Judgment Against
               Martorello on RICO Claims and the Fourth Circuit
               Affirmed................................................................................................. 10
        B.     Martorello's Improper Use of Chapter 11. .............................................. 11

RELIEF REQUESTED............................................................................................................ 12

BASIS FOR RELIEF REQUESTED ...................................................................................... 13
    I.     Cause Exists for the Appointment of a Chapter 11 Trustee Under
        Section 1104(a)(1) of the Bankruptcy Code. ......................................................... 13

    II.    Appointment of a Chapter 11 Trustee Is in the Best Interests of
        Creditors Under Section 1104(a)(2) of the Bankruptcy Code. .............................. 17

    III.   The Court Should Exercise Its Equitable Powers Under Section
        105(a) of the Bankruptcy Code to Appoint a Chapter 11 Trustee. ....................... 19

CONCLUSION........................................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Ashley River Consulting, LLC*,
  No. 14-13406 (MG), 2015 WL 1540941 (Bankr. S.D.N.Y. Mar. 31, 2015) ..........................17

*In re Eurospark Indus., Inc.*,
  424 B.R. 621 (Bankr. E.D.N.Y. 2010) ...............................................................................14, 18

*Galloway v. Big Picture Loans*,
  Case No. 3:18-cv-406 (E.D. Va.) ...............................................................................................5

*Galloway v. Justin Martorello*,
  Case No. 3:19-cv-406 (E.D. Va.) ...............................................................................................5

*Galloway v. Williams*,
  No. 3:19-CV-470, 2020 WL 7482191 (E.D. Va. Dec. 18, 2020) ..........................................4, 7

*Galloway, et al. v. Martorello, et al.*,
  Case No. 3:19-cv-314 .................................................................................................................7

*Gibbs v. Plain Green, LLC*,
  Case No. 3:17-cv-495 (E.D. Va.) ...............................................................................................4

*Gibbs v. TCV, V, LLP*,
  Case No. 3:19-cv-00789 (E.D. Va.), Mar. 29, 2021 Final Approval Order at
  Dkt. 95 ........................................................................................................................................4

*In re Ionosphere Clubs, Inc.*,
  113 B.R. 164 (Bankr. S.D.N.Y. 1990) ......................................................................................17

*In re Marvel Entm't. Corp.*,
  140 F.3d 463 (3d Cir. 1998) ......................................................................................................13

*In re Morningstar Marketplace, Ltd.*,
  544 B.R. 297 (Bankr. M.D. Pa. 2016) ......................................................................................14

*In re Railyard Co., LLC*,
  No. 15-12386-J11, 2016 WL 1254998 (Bankr. D.N.M. Mar. 30, 2016) ..................................14

*In re Sharon Steel Corp.*,
  871 F.2d 1217 (3d Cir. 1989) ..............................................................................................14, 17

*In re Soundview Elite, Ltd.*,
  503 B.R. 571 (Bankr. S.D.N.Y. 2014) ................................................................................17, 18

*In re Think Finance, LLC, Case No. 17-3964-swe11*
(N.D. Tex) ..................................................................................................................4

*Turner v. Zest Finance, Inc.*,
Case No. 3:19-cv-00293 (E.D. Va.), June 30, 2020 Final Approval Order at
Dkt. 114..................................................................................................................4

*Williams v. Big Picture Loans, LLC*,
2020 WL 6784352 (E.D. Va. Nov. 18, 2020) .............................................4, 5, 6, 10

*Williams v. Big Picture Loans, LLC*,
Case No. 3:17-cv-461 (E.D. Va.).............................................................................5

*In re Wings Digital Corp.*,
No. 05-12117 (ALG), 2005 WL 3789334 (Bankr. S.D.N.Y. May 16, 2005).........................17

**Statutes**

11 U.S.C. §§ 105 and 1104 ................................................................. *passim*

28 U.S.C. § 1334.....................................................................................................1

28 U.S.C. § 157.......................................................................................................1

28 U.S.C. §§ 1408 and 1409 ..................................................................................1

The Official Committee of Unsecured Creditors (the "**Committee**") in the above-captioned case (the "**Chapter 11 Case**"), by and through its undersigned counsel, Cole Schotz P.C., hereby moves the Court (the "**Motion**"), pursuant to Sections 105(a) and 1104(a) of the Bankruptcy Code, for an order substantially in the form attached hereto as **Exhibit A**, appointing a Chapter 11 trustee for Eventide Credit Acquisitions, LLC (the "**Debtor**" or "**Eventide**").  In support of the Motion, the Committee respectfully states as follows:

<div align="center">

**JURISDICTION AND VENUE**

</div>

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The legal predicates for the relief requested herein are 11 U.S.C. §§ 105(a) and 1104(a).

<div align="center">

**PRELIMINARY STATEMENT**

</div>

2.     Matt Martorello was found liable in federal court for collecting illegal loans from consumer borrowers. The Fourth Circuit has now affirmed the ruling.  This alone dictates that a Chapter 11 Trustee must be appointed.  In light of his pre- and post-petition conduct, Martorello is unfit to manage Eventide's affairs or to continue directing the administration of this Chapter 11 Case.

3.     Prior to the Petition Date, Martorello, among other things, (i) organized a rent-a-tribe scheme designed to extract massively usurious interest payments from low-income consumer borrowers; (ii) orchestrated a sham "restructuring" to avoid regulators and have Eventide continue to receive the proceeds of the illegal loans; (iii) systematically funneled more than $60 million out of Eventide to himself, entities he controls, other insiders, and to law firms representing him in his personal capacity; (iv) lied under oath to a federal judge about his involvement in the rent-a-tribe scheme; and (v) caused Eventide to file for Chapter 11 five years ago in bad faith and with no

<div align="center">1</div>

legitimate need to restructure, all in an effort to forum shop and remove assets from the reach of creditors.

4.      Since the Petition Date, Martorello has caused Eventide to administer this Chapter 11 Case strictly for his own benefit, incurring more than $7 million in unnecessary legal fees spent fighting the legitimate efforts of the Committee and other interested parties, with no apparent goal of reaching a confirmable plan or providing any benefit whatsoever to Eventide's estate or non-insider creditors.  In fact, the case has been pending for almost two years and the Debtor has yet to even provide notice and a proof of claim bar date to creditors, choosing instead to break a settlement it reached with the consumer borrowers to certify a class.

5.      The Committee seeks appointment of a trustee in this Chapter 11 Case to focus Eventide's efforts on the legitimate administration of the estate and preserve the dwindling funds from the settlement with the tribal entities, and to stop the blatant gamesmanship that has plagued this case from the start.  As discussed below, there is ample cause to appoint a Chapter 11 Trustee in this case, and such an appointment would inure to the benefit of all interested parties.

## **BACKGROUND**

### I.      **The Bankruptcy Case.**

6.      On the September 6, 2023 (the "**Petition Date**"), Eventide filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.[2]

7.      The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No trustee or examiner has been appointed in this Chapter 11 Case.

---

[2] BWH Texas, LLC ("**BWH**") filed its voluntary petition on October 9, 2023, and the Court ordered BWH's bankruptcy case to be jointly administered with Eventide's on November 28, 2023 [Dkt. No. 92].

9.      On September 21, 2023, the Committee was appointed in this case by the Office of

the United States Trustee (the "**U.S. Trustee**"). The U.S. Trustee formed a seven-member

Committee consisting of the following members: (a) Dowin Coffy; (b) Dana Duggan; (c) Renee

Galloway; (d) George Hengle; (e) Regina Nolte, (f) Richard Smith, and (g) Teresa Titus. [Dkt. No.

20].

10.      On March 7, 2025, the Committee was granted exclusive derivative standing to

prosecute and/or settle Eventide's estate's Avoidance Actions[3] pursuant to the *Agreed Order*

*Granting Derivative Standing to the Official Committee of Unsecured Creditors to Pursuant*

*Avoidance Actions on Behalf of the Debtor's Bankruptcy Estate* [Dkt. No. 817] (the "**Derivative**

**Standing Order**").

## II.      **Martorello's Fraud, Dishonesty, and Mismanagement Prior to the Commencement of this Chapter 11 Case.**

### A.      **The Tribal Lending Scheme.**

11.      Beginning in 2011, the Debtor's enterprise (at the time consisting of different

entities) established and began operating a rent-a-tribe scheme that charged more than 400%

---

[3] As defined in the Derivative Standing Order, "**Avoidance Actions**" means:

> Any estate action, claim, cause of action, controversy, demand, right, suit, liability, damage, judgment, or offset of any kind or character whatsoever, whether known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, asserted or unasserted, assertable directly or derivatively arising under 11 U.S.C. §§ 544, 545, 547, 548, 549, 550 and/or 553, TUFTA and any other state law avoidance action equivalents. These include, among others, actions against individuals, entities, members and trusts which received transfers directly and/or indirectly from the Debtor between 2016 and the Petition Date.

*See* Derivative Standing Order, ¶¶ 1 and 4.

annual interest on short term loans, in violation of many state usury statutes (the "**Tribal Lending**

**Scheme**").

12.     Under this model, short term lenders use "Native American tribal entities" as "the

nominal lender in an effort to cloak the payday lenders in the sovereign immunity of Native

American tribes, and, in doing so, to preclude enforcement of the interest rate caps in state usury

laws." *Williams v. Big Picture Loans, LLC*, 2020 WL 6784352, at *2 (E.D. Va. Nov. 18, 2020)

(citing Nathalie Martin & Joshua Swartz, *The Alliance Between Payday Lenders and Tribes: Are*

*Both Tribal Sovereignty and Consumer Protection at Risk?*, 69 Wash. & Lee L. Rev. 751, 785

(2012)).

13.     Over the last decade, government regulators and private class actions have returned

hundreds of millions of dollars to consumers and cancelled more than $1 billion in loans in similar

rent-a-tribe schemes, including cases in this Court.[4]

14.     Dozens of other actions have been heavily litigated throughout the country,

including criminal proceedings that have resulted in the felony convictions of three pioneers of the

tribal lending models.

15.     Each enterprise is slightly different, but most follow the same basic pattern: a tribal

lending entity is held out as the lender on these illegal loans, but it contractually relinquishes the

---

[4] *See, e.g., In re Think Finance, LLC, Case No. 17-3964-swe11* (N.D. Tex)(Committee and Liquidation Trustee recovered over $110.0 million from fraudulent transfer litigation and voided approximately $1.0 billion in illegal loans); *Turner v. Zest Finance, Inc.*, Case No. 3:19-cv-00293 (E.D. Va.), June 30, 2020 Final Approval Order at Dkt. 114 (approving settlement providing $18.5 million in cash and $170 million in debt relief to borrowers); *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *1 (E.D. Va. Dec. 18, 2020) (approving settlement providing $8.7 million in cash and over $100 million dollars in debt relief for over 300,000 consumers); *Gibbs v. Plain Green, LLC*, Case No. 3:17-cv-495 (E.D. Va.), Dec. 13, 2019 Order at Dkt. 141 (granting final approval of $60 million settlement and more than $380 million dollars in debt relief to consumers); *Gibbs v. TCV, V, LLP*, Case No. 3:19-cv-00789 (E.D. Va.), Mar. 29, 2021 Final Approval Order at Dkt. 95 (granting preliminary approval of a $50.5 million dollar fund and $380 million dollars in debt relief).

right to control and operate the key aspects of the lending business.  Behind the scenes, non-tribal outsiders control the day-to-day operations of the lending business and reap the vast majority of the profits.

16.     Here, Martorello took one additional step that most other rent-a-tribe schemes did not:  he established Eventide in February 2015 for the express purpose of collecting on a promissory note that was supposedly consideration to be paid by the Tribe in exchange for "purchasing" Martorello's illegal lending business.  The intent behind this restructuring was for Martorello to continue reaping the benefits—and the vast majority of the profits—of the Tribal Lending Scheme while securing a nominal sense of "separation" from the illegality of the loans.

17.     Importantly, however, Martorello retained control of the Tribal Lending Scheme even though it was purportedly being operated directly by the Tribe.  Indeed, as regulatory pressure ramped up and threatened class-action lawsuits became active litigation, Martorello consistently lied about his involvement with and control over the Tribal Lending Scheme.  The subterfuge was ineffective, however, and there is now a published opinion from the United States District Court for the Eastern District of Virginia (and affirmed by the Fourth Circuit) acknowledging Martorello's deception.

**B.     Judge Payne's Ruling that Martorello Lied about His Involvement with the Tribal Lending Scheme.**

18.     Since approximately 2017, the United States District Court for the Eastern District of Virginia has presided over various consumer borrower claims against Martorello. *See generally Williams v. Big Picture Loans, LLC*, Case No. 3:17-cv-461 (E.D. Va.). That matter has been before a single judge (Robert E. Payne), who has issued almost thirty (30) memorandum opinions in the *Williams* matter and two related cases styled as *Galloway v. Big Picture Loans*, Case No. 3:18-cv-

406 (E.D. Va.) and *Galloway v. Justin Martorello*, Case No. 3:19-cv-406 (E.D. Va.)—many of which contain both findings of fact and conclusions of law.

19.     Mostly notably for purposes of this Motion, Judge Payne issued a Memorandum Opinion on November 18, 2020 (the "**Misrepresentation Opinion**") detailing Martorello's involvement in the Tribal Lending Scheme and certain material misrepresentations made by Martorello during the litigation.  *Williams v. Big Picture Loans, LLC*, No. 3:17CV461, 2020 WL 6784352, at *2 (E.D. Va. Nov. 18, 2020), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023).

20.     Following a two-day evidentiary hearing, Judge Payne explained that Martorello was clearly involved with, and was leading, Tribal Lending Scheme despite his assertions to the contrary.  *Id.*  After reviewing many of Martorello's emails, Judge Payne explained that the record showed "convincingly that Big Picture was not created by LVD as the result of the Tribe's years of knowledge and business acumen related to online lending. In fact, Big Picture was created by Martorello for use with a different tribe and, when that fell through, Big Picture, at Martorello's instruction, was used to rebrand Red Rock. In other words, the record shows convincingly that Martorello was the driving force in the creation of Big Picture and Ascension, just as he was in the creation of Red Rock." *Id.*, at *12.

21.     Judge Payne summarized this point by explaining that "the record convincingly confirms that misrepresentations respecting the genesis of Big Picture were made by Martorello." *Id.*

**C.     Eventide's First Bankruptcy Was Dismissed as a Bad-Faith Filing.**

22.     Eventide's first bankruptcy case was filed around the same time as the Misrepresentation Opinion was issued, and resulted in dismissal of the case as a bad-faith filing. As previously mentioned, Eventide was formed in 2015 for the express purpose of collecting on a

$300 million promissory note that would be paid from proceeds of the Tribal Lending Scheme. Followings its creation, Eventide continued to operate, control, and profit from the illegal rent-a-tribe scheme for years.

23.     On April 24, 2019, various defrauded consumer borrowers filed a Class Action Complaint in the United States District Court for the Eastern District of Virginia, styled *Galloway, et al. v. Martorello, et al.*, Case No. 3:19-cv-314 ("*Galloway*"). As a direct result of the pending litigation, Eventide filed a voluntary Chapter 11 Petition in this Court on January 28, 2020 ("**Eventide's First Chapter 11 Case**"), thereby staying the *Galloway* case. Following a motion from the consumer borrowers to dismiss Eventide's First Chapter 11 Case as a bad-faith filing, this Court dismissed the case for cause on June 18, 2020, pursuant to Section 1112(b) of the Bankruptcy Code.

24.     In route to dismissing Eventide's First Chapter 11 Case, Judge Morris of this Court conducted an extensive evidentiary hearing and issued a number of relevant findings:

> [T]he Bankruptcy Case was also clearly filed as the next step in a strategy to try to assist Martorello and individuals and entities affiliated with Martorello in finding a way to forum shop away from the District Court in the District of Virginia[.]

Excerpt of Transcript from June 9, 2020 Ruling (the "**6/9/20 Transcript**") (emphasis added).[5]

> Martorello has effectively resorted to name-calling, and **the Debtor**, through counsel, surprisingly and **brazenly stated that**, to the extent any of the Consumer Borrowers are ever found to hold any legitimate allowed claims against the Debtor, **the Debtor will simply separately classify them, apparently previewing the Debtor's intent to gerrymander a vote on a plan** in such instance.

*Id.*, at 55 (emphasis added).

> The Debtor's actions are not being taken under the direction and control of McManigle as the Debtor's independent Manager and

---

[5] A copy of the 6/9/20 Transcript is attached hereto as **Exhibit B**.

CRO. Instead, it is clear that the Cook Islands entity Breakwater, as the one hundred percent voting member of the Debtor, which in turn is wholly owned by the Cook Islands entity Bluetech, is directing the actions of the Debtor, to the exclusion of McManigle.

. . .

This is evident by virtue of the fact that McManigle had zero involvement in reviewing the proofs of claim that have been objected to, zero involvement in any discussions or negotiations with any of the Tribal Defendants, and perhaps most shockingly, zero involvement in any discussions or negotiations with Bluetech as the proposed DIP Lender, who astoundingly seeks to leverage the Bankruptcy Case to its benefit while at the same time thumbing its nose at the concept of subjecting itself to the jurisdiction of this Court[.]

*Id.*, at 55–56.

[C]ontrary to the Debtor's arguments of filing the Bankruptcy Case to stop the bleeding and preserve value, the Bankruptcy Case has been nothing but bleeding, with the Debtor having already incurred upwards of $800,000 in professional fees, predominantly in litigation in three different adversary proceedings that is duplicative of the arbitration in the case of the Tribal Defendants and which has, in any event, netted zero beneficial results for the estate.

*Id.*, at 52–53.

25.    Accordingly, as Judge Morris repeatedly pointed out, Martorello has a track record of seeking to use the bankruptcy process to forum shop away from undesirable litigation venues and to gain a strategic advantage over creditors.

**D.    Fraudulent Transfers.**

26.    Since Eventide's inception, Martorello has caused every penny that Eventide collected to be redirected to himself, entities that he controls, or other insiders, all in an effort to remove those funds from the eventual reach of creditors.

27.    Prior to filing this Chapter 11 Case, the Debtor entered into a series of transactions involving significant changes to its corporate structure and ownership of certain businesses and

assets. These restructurings included, among other things: (a) the formation of Bellicose Capital as the parent of Bellicose VI, Inc.; (b) the creation of Eventide to hold a $300,000,000.00 loan related to the sale of Bellicose Capital to the newly formed tribal entity called Big Picture Loans; and (iii) the transfer of over $60 million dollars from Eventide since 2016 to Matt Martorello and his affiliated entities including Gallant Capital, LLC, Braviant Holdings, LLC, Breakwater Holding, LLC which is now the co-Debtor "BWH," and Martorello's offshore family trusts, prior to the Petition Date.

28.    The Committee believes that the Debtor made intentional and/or constructive fraudulent transfers to, among others, the following people and entities: Matt Martorello, Justin Martorello, Rebecca Martorello, Rebecca Martorello Trust, Capstone Opportunity Trust, GFLP Entity 1, LP, Breakwater Holding, LLC n/k/a BWH, Braviant Holdings, LLC, Bluetech Irrevocable Trust f/k/a M.Martorello Irrevocable Trust, Brian McFadden, Gallant Capital, LLC, Liont, LLC, MBM Services, LLM, Alpha Tau Capital, LLC, SourcePoint VI, LLC, James Dowd, Simon Liang, and their families, subsidiaries, affiliates, and certain professionals.

29.    More specifically, of the more than $62 million transferred from Eventide, at least $41,133,952 was transferred to Eventide's insiders, and several million more was improperly directed to law firms and other professionals for Martorello's benefit.  This is detailed in the Debtor's own Expert Report of William L. Roberts (the "**Roberts Report**"),[6] attached hereto as **Exhibit C**.  To that end, the Committee intends to commence several fraudulent transfer actions against Martorello and other insiders, seeking to avoid and recover more than $40 million in transfers made by Eventide.

---

[6] On February 10, 2025, Eventide filed the Debtor's Application for *Order Authorizing the Employment and Retention of William L. Roberts as Accountant* [Dkt. No. 581], which the Court granted by Order dated March 13, 2025 [Dkt. No. 665].

III. **Martorello's Fraud, Dishonesty, and Mismanagement During the Pendency of this Chapter 11 Case.**

A. **Judge Payne Granted Summary Judgment Against Martorello on RICO Claims and the Fourth Circuit Affirmed.**

30.     Shortly after the Petition Date, Judge Payne granted summary judgment in favor of the plaintiffs in the *Williams* case, discussed above, on the plaintiffs' RICO claims (§§ 1962(c)–(d)) against Martorello.

31.     As to the § 1962(d) claim, "Martorello conceded that, after the Court's ruling that the loans are governed by the law of Virginia and that a mistake of law defense is not available as a defense to liability, 'there are no remaining triable issues of fact on Plaintiffs' § 1962(d) claim'" because the undisputed evidence showed that Martorello knew about and facilitated the unlawful lending scheme. *Id.* at 621 (docket citations omitted).

32.     As to the § 1962(c) claim, Martorello further stipulated: "that, for the entire class period, he was associated with an association-in-fact enterprise the activities of which affect, interstate or foreign commerce, and Mr. Martorello participated in the operation of the affairs of the enterprise through the collection of "'unlawful debt.'" *Id.* (docket citations omitted).

33.     Based on the loan-level data, the parties also stipulated that the total damages were $43,401,817.47. *Id.* (docket citations omitted).

34.     Following six years of litigation and after cross-motions for summary judgment, a Final Judgment Order was entered against Martorello in September 2023 in the amount of $43,401,817.17 in favor of the Plaintiffs and other borrowers in Virginia who took out loans from the illegal lending enterprise. *See* Sept. 22, 2023, Final Judgment Order, attached hereto as **Exhibit D**.

35.     On July 16, 2025, the United States Court of Appeals for the Fourth Circuit affirmed the summary judgment ruling in favor of the plaintiffs in the amount of $43,401,817.17. A copy of the Fourth Circuit's Published Opinion is attached hereto as **Exhibit E**.

**B.      Martorello's Improper Use of Chapter 11.**

36.     Throughout this Chapter 11 Case, Martorello has taken every opportunity to engage in gamesmanship and to flout the rules of bankruptcy.  Moreover, at the most fundamental level, Martorello has completely failed to appropriately administer Debtor's estate.

37.     As an initial example, the Debtor listed a $548,333.33 loan to GFLP Entity 1, LP (an entity that Martorello controls) as an asset in its amended schedules (the "**GFLP Loan**").  To date, nearly two years into this Chapter 11 Case, the Debtor has taken no visible steps whatsoever to collect on the GFLP Loan.  Undersigned counsel has repeatedly asked for a status update on this point from Debtor's counsel but has received only vague answers as to whether Eventide will ever monetize this asset for the benefit of the estate and creditors.

38.     Additionally, Martorello caused the Debtor to move for joint administration of this Chapter 11 Case with BWH Texas, LLC ("**BWH**"), another entity he controls.  The supposed justification for this was administrative efficiency, but BWH has not taken any steps to earnestly administer its estate.  BWH has not begun liquidating its assets and is making no effort to maximize value to its creditors.  Indeed, it appears that Martorello caused Eventide's case to be jointly administered with BWH's so that BWH could "piggyback" on Eventide's filings in order to limit BWH's legal fees at the expense of Eventide and its creditors.

39.     In other words, Martorello is again causing Eventide to spend money that should be set aside for its creditors on legal fees for another of his entities.  To that end, Eventide has somehow incurred more than $7 million in legal fees in this small chapter 11 case, all before plan

confirmation, and with several very significant matters remaining ahead.  As mentioned, Eventide still has not set a bar date or provided notice to its creditors of the Chapter 11 Case.

40.     At every step, Eventide has been unnecessarily litigious, often retrenching and taking the most obstinate possible position, only to relent at the very last minute before a contested hearing.  As a result of these tactics, Eventide has caused the Committee and other parties in interest to expend very significant time and resources that should be focused on achieving a confirmable plan.  For example, the Debtor refused to prosecute avoidance actions to recover the millions of dollars in prepetition transfers for the benefit of creditors despite receive a *Louisiana Expo* notice from the Committee, forcing the Committee to litigate to obtain derivative standing, and the Debtor fought the Committee on access to documents – a fight which continues today.[7]

41.     In light of the Debtor's fraudulent behavior and gross mismanagement, the Committee files this Motion seeking the appointment of a chapter 11 trustee to preserve the value of the Debtor's estate.

## RELIEF REQUESTED

42.     By this Motion, the Committee seeks entry of an Order, substantially in the form attached hereto as Exhibit A, pursuant to Sections 105(a) and 1104(a) of the Bankruptcy Code, directing the appointment of a Chapter 11 trustee to manage the affairs of Eventide and administer this Chapter 11 Case.

---

[7] Notably, despite agreeing in the Derivative Standing Order not to interfere, the Debtor continues to oppose and object to the Committee's legitimate attempts at discovery through Rule 2004 examinations.

## BASIS FOR RELIEF REQUESTED

43.    There is ample cause to appoint a Chapter 11 Trustee, and there is no question that

doing so would be in the best interests of Eventide's estate and creditors.  The applicable standard

is set forth in Section 1104(a) of the Bankruptcy Code, which reads, in pertinent part, as follows:

> At any time after the commencement of the case but before
> confirmation of a plan, on request of a party in interest . . . , and after
> notice and a hearing, the court shall order the appointment of a
> trustee—
>
> (1)    for cause, including fraud, dishonesty, incompetence, or
> gross mismanagement of the affairs of the debtor by current
> management, either before or after the commencement of the
> case, or similar cause, but not including the number of
> holders of securities of the debtor or the amount of assets or
> liabilities of the debtor; or
>
> (2)    if such appointment is in the interests of creditors, any equity
> security holders, and other interests of the estate, without
> regard to the number of holders of securities of the debtor or
> the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

44.    Thus, where a court finds *either* (i) that cause exists to appoint a trustee *or* (ii) that

such appointment is in the interests of the estate and creditors, an order for the appointment of a

trustee is mandatory.  Here, the Committee contends that each basis is satisfied and that the Court

must appoint a Chapter 11 Trustee, for the reasons explained below.

## I.    Cause Exists for the Appointment of a Chapter 11 Trustee Under Section 1104(a)(1) of the Bankruptcy Code.

45.    The categories comprising "cause" under Section 1104(a)(1) of the Bankruptcy

Code "cover a wide range of conduct," and are illustrative rather than exclusive.  *In re Marvel

Entm't. Corp.*, 140 F.3d 463, 472 (3d Cir. 1998) (internal quotations omitted).  Fraud, dishonesty,

incompetence, and gross mismanagement of a debtor's business affairs are all grounds for

appointment of a chapter 11 trustee under § 1104(a)(1). The determination must be made on a

case-by-case basis, taking into account all relevant factors and the totality of the circumstances.

*See In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 and 1228 (3d Cir. 1989).

46.    In determining the existence of "cause":

> [C]ourts should consider enumerated and similar grounds in the context of the totality of the circumstances, including such things as management's competence and the quality of its business decisions, strategies and tactics; the debtor's policies, procedures and accounting practices; any financial improprieties; failure to maintain adequate records or to provide timely reports; the debtor's business with related parties; conflicts of interest; the actual or perceived dishonesty of debtor's management; and acrimony or loss of trust and confidence between the debtor and its creditors or employees or other parties with whom the debtor does business. No single circumstance is necessarily determinative, and the importance ascribed to any particular circumstance must be considered in light of the whole.

*In re Railyard Co., LLC*, No. 15-12386-J11, 2016 WL 1254998, at *11 (Bankr. D.N.M. Mar. 30, 2016).

47.    A debtor-in-possession owes fiduciary duties to its creditors and the bankruptcy estate. *In re Morningstar Marketplace, Ltd.*, 544 B.R. 297, 303 (Bankr. M.D. Pa. 2016) (citing *In re Marvel Entm't. Corp.*, 140 F.3d 463, 471 (3d Cir. 1998)). These obligations "include a duty of care to protect the assets, a duty of loyalty and a duty of impartiality." *In re Eurospark Indus., Inc.*, 424 B.R. 621, 627 (Bankr. E.D.N.Y. 2010). The rights of a debtor in possession must be forfeited if these fiduciary duties are neglected. *See id.* (collecting cases).  In making the determination whether cause exists to appoint a trustee, the Court must consider current management's actions before and after the commencement of the case.

48.    Here, Martorello has engaged in myriad behavior, both pre- and post-petition, that constitute cause under Section 1104(a) and justify the appointment of a trustee.  Eventide was created for the express purpose of collecting on a promissory note that was funded by the illegal loan portfolio that Martorello "sold" to the Tribe.  As such, Eventide's very creation was in

furtherance of Martorello's ongoing fraud on consumers—i.e., Eventide's creditors.  Judge Payne

of the United States District Court for the Eastern District of Virginia found affirmatively that

Martorello violated multiple sections of RICO and entered a final judgment in favor of the

Plaintiffs in excess of $43 million on account of the fraud, and the Court of Appeals for the Fourth

Circuit affirmed the ruling.  Moreover, prior to the final judgment, Judge Payne issued the

Misrepresentation Opinion detailing Martorello's false and misleading statements seeking to

distance himself from the Tribal Lending Scheme and the operation of the loan portfolio.

Martorello has always been the driving force behind the Tribal Lending Scheme and was actively

engaged in fraudulent behavior and deception since at least 2011.  His actions in managing

Eventide since 2015 are a continuation of his fraud on consumers, and there are no other officers,

directors or even employees at Eventide for him to blame.

49.     In fact, Eventide's creation was the second step in Martorello's fraudulent scheme,

and was designed to help him remove money from the reach of creditors.  The restructuring that

spawned Eventide in the first place came after increased regulatory pressure on tribal lending and

at a time when Martorello was well-aware of his potential liability.  Seeking to distance himself

from these legal issues, Martorello organized a scheme to vest the right to payment on the illegal

loan portfolio in Eventide and then systematically transferred every dollar out of Eventide shortly

after it was paid.  In doing so, Martorello caused the Debtor to engage in somewhere between $41

million and $63 million in fraudulent transfers between 2016 and 2023.  Like with the Tribal

Lending Scheme itself, these fraudulent transfers harmed Eventide's creditors directly and

constitute "cause" to appoint a trustee.

50.     There is likewise ample evidence that Martorello has actively mismanaged

Eventide and continues to do so in this Chapter 11 Case.  Eventide has amassed more than $7

million in legal fees during the two years this case has been pending and has many significant hurdles remaining before any confirmed plan could become effective.  At every turn, Eventide has thrown up roadblocks to the Consumer Borrowers' and the Committee's efforts to appropriately account for the legitimate claims of creditors and to preserve and liquidate Eventide's only significant remaining assets—the Avoidance Actions.  Martorello has caused Eventide to delay, obfuscate, haggle for no reason, refuse to produce documents until the last minute, and generally fight over everything conceivable in an apparent effort to spend as much of the estate's money as possible.  Meanwhile, counsel for Eventide has repeatedly accused the Committee of incurring unnecessary fees, when the truth is that the Committee's fees are completely driven by Eventide's antics.

51.     Furthermore, Eventide has no apparent plan to collect on the GFLP Loan and is presently subsidizing BWH's bankruptcy case while BWH makes no efforts whatsoever to liquidate its assets or to provide value to its creditors.  These are not the actions of a legitimate debtor-in-possession seeking to reorganize or liquidate.  Eventide has no operations, no employees, and essentially no non-insider creditors other than the defrauded consumer borrowers.  The Debtor should be focused on reaching a deal with the consumer borrowers on class certification to avoid hundreds of thousands of dollars in postage expenses, and claim allowance, instead of stalling, and on achieving plan confirmation so that a post-confirmation fiduciary can seek to liquidate the Avoidance Actions.  It is perfectly clear that Martorello has no such intention, so it is necessary for a Chapter 11 Trustee to be appointed.

52.     Martorello has already caused Eventide to file a bad-faith bankruptcy once, when Eventide's First Bankruptcy Case was dismissed in 2020.  Here, this Chapter 11 Case is

16

significantly further along than would warrant dismissal, but there is no question that Martorello's

conduct gives rise to cause for a trustee to be appointed.

## II.  Appointment of a Chapter 11 Trustee Is in the Best Interests of Creditors Under Section 1104(a)(2) of the Bankruptcy Code.

53.     Section 1104(a)(2) of the Bankruptcy Code provides an additional basis for the

appointment of a Chapter 11 Trustee that is less stringent and affords the Court more discretion.

*See, e.g.*, *In re Wings Digital Corp.*, No. 05-12117 (ALG), 2005 WL 3789334, at *5 (Bankr.

S.D.N.Y. May 16, 2005). Whether to appoint a trustee under § 1104(a)(2) is assessed according to

a flexible standard that allows for the appointment of a trustee even where no cause exists under §

1104(a)(1). *See Sharon Steel*, 871 F.2d at 1226; *see also In re Ionosphere Clubs, Inc.*, 113 B.R.

164, 168 (Bankr. S.D.N.Y. 1990).

54.     Simply put, § 1104(a)(2) gives the Court "discretion to appoint a trustee when doing

so would serve the parties' and the estates' interests." *In re Ashley River Consulting, LLC*, No. 14-

13406 (MG), 2015 WL 1540941, at *11 (Bankr. S.D.N.Y. Mar. 31, 2015) (quoting *In re Marvel*,

140 F.3d at 474). This is a fact-driven analysis under the Court's broad equity powers. *See, e.g.*,

*In re Soundview Elite, Ltd.*, 503 B.R. 571, 582-83 (Bankr. S.D.N.Y. 2014). When evaluating

appointment of a trustee under the "best interest" prong, the Court should "eschew rigid absolutes

and look to the practical realities and necessities," *In re Hotel Associates, Inc.*, 3 Bankr. 343, 345

(Bankr. E.D. Pa. 1980), by considering the following four factors:

    (a)    the trustworthiness of the debtor;

    (b)    the debtor in possession's past and present performance and
           prospects for the debtor's rehabilitation;

    (c)    the confidence – or lack thereof – of the business community
           and of creditors in present management; and

    (d)    the benefits derived by the appointment of a trustee, balanced
           against the costs of appointment.

*In re Soundview Elite, Ltd.*, 503 B.R. 571, 583 (Bankr. S.D.N.Y. 2014).

55.      It is not necessary to find fault on the part of a debtor before appointing a chapter

11 trustee pursuant to § 1104(a)(2). *In re Eurospark*, 424 B.R. at 627 (Bankr. E.D.N.Y. 2010)

(citing *Sharon Steel*, 871 F.2d at 1226). The Bankruptcy Code provides this remedy to ensure that

the bankruptcy system functions properly and the rights of creditors are adequately balanced

against the rights of the debtor.

56.      Each of the foregoing factors weigh strongly in favor of appointing a trustee.

Martorello is clearly not trustworthy, based upon his repeatedly deceptive actions and self-dealing.

Judge Payne issued an entire published opinion about Martorello's dishonesty with the Court and

found affirmatively that Martorello violated multiple sections of RICO for collecting illegal loans.

Martorello also used Eventide to furtively transfers more than $40 million to himself, entities he

controls, and other insiders, and even more on account of improper indemnity payments to law

firms for his personal benefit.

57.      Eventide's past and present performance likewise militates in favor of a trustee.  As

noted above, Martorello is causing Eventide to administer this case in such a way that can be

geared only toward protecting him, personally.  Eventide is not seeking to work in good faith with

its creditors and set this Chapter 11 Case on track for plan confirmation.  Instead, Eventide has

been overly litigious and is clearly angling only to provide whatever buffer possible between

consumer borrowers and Martorello.

58.      Lastly, Eventide has no ongoing operations so the business community's opinion

of Martorello is not relevant, and there can be no legitimate question that the benefits of appointing

a Chapter 11 Trustee would greatly outweigh the costs.  At present, Eventide is burning quickly

through legal fees for the benefit of Martorello's agenda, at the expense of the estate and its

creditors.  Putting a stop to this cash drain would significantly outweigh the costs of a trustee and any necessary professionals.  A Chapter 11 Trustee can quickly address the consumer borrower class and claim issues, and then proceed towards an end of this case.

59.     If there was ever a case that required the appointment of a Chapter 11 Trustee, it is this one.  The Committee is not aware of any case where a court-determined operator of an illegal RICO scheme was allowed to remain in control of the company that helped perpetrate the scheme through a bankruptcy process.  Section 1104 was created to address this precise type of situation, and if these facts don't deserve the appointment, then what facts would?

60.     For these reasons, the Committee contends that appointment of a Chapter 11 Trustee is appropriate.

## III.     **The Court Should Exercise Its Equitable Powers Under Section 105(a) of the Bankruptcy Code to Appoint a Chapter 11 Trustee.**

61.     To the extent necessary in order to effectuate the relief requested herein, the Committee asks the Court to exercise its broad equitable powers under Section 105(a) of the Bankruptcy Code to appoint a Chapter 11 Trustee and to implement such other measures as the Court deems just and proper in light of Martorello's pre-and post-petition conduct and the ongoing harm to the Debtor's estate and creditors.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Committee respectfully requests that the Cour enter an Order substantially in the form attached hereto as <u>Exhibit A</u>, granting the Motion and ordering the appointment of a Chapter 11 Trustee to manage Eventide's affairs and to continue administering this Chapter 11 Case.

19

Dated:  August 6, 2025                              Respectfully submitted,

**COLE SCHOTZ P.C.**

*/s/ Ian Ross Phillips*
Ian Ross Phillips, Esq. (TX Bar No. 24091239)
901 Main Street, Suite 4120
Dallas, TX  75202
469-557-9390 (Telephone)
469-533-1587 (Facsimile)
iphillips@coleschotz.com

and

Gary H. Leibowitz, Esq. (Admitted *pro hac vice*)
H.C. Jones III, Esq. (Admitted *pro hac vice*)
Alicia L. Shelton, Esq. (Admitted *pro hac vice*)
J. Michael Pardoe, Esq. (Admitted *pro hac vice*)
1201 Wills Street, Suite 320
Baltimore, MD 21231
410-230-0660 (Telephone)
410-230-0667 (Facsimile)
gleibowitz@coleschotz.com
hjones@coleschotz.com
ashelton@coleschotz.com
mpardoe@coleschotz.com

## <u>CERTIFICATE OF CONFERENCE</u>

I, Gary H. Leibowitz, hereby certify that I conferred with Debtor's counsel concerning the relief requested herein by email and telephone on August 6, 2025.  Debtor's counsel has not consented to the relief requested.  As such, a ruling by the Court is required.


*/s/ Gary H. Leibowitz*
Gary H. Leibowitz, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2025, a true a correct copy of the foregoing was served via the Court's ECF system on all parties registered to receive such electronic notice.

*/s/ Ian Ross Phillips*
Ian Ross Phillips