| | | |
|---|---|---|
| Patrick J. Neligan, Jr.<br>State Bar. No. 14866000<br>John D. Gaither<br>State Bar No. 24055516<br>**NELIGAN LLP**<br>4851 LBJ Freeway, Suite 700<br>Dallas, Texas 75244<br>Telephone: 214-840-5300<br>pneligan@neliganlaw.com<br>jgaither@neliganlaw.com | Kristi C. Kelly<br>admitted *pro hac vice*<br>Andrew J. Guzzo<br>admitted *pro hac vice*<br>**KELLY GUZZO, PLC**<br>3925 Chain Bridge Road, Suite 202<br>Fairfax, VA 22030<br>(703) 424-7572 - Telephone<br>(703) 591-0167 - Facsimile<br>Email: kkelly@kellyguzzo.com<br>Email: aguzzo@kellyguzzo.com | Michael A. Caddell<br>John B. Scofield, Jr., *pro hac vice*<br>**CADDELL & CHAPMAN**<br>628 East 9th Street<br>Houston TX 77007-1722<br>Telephone: (713) 751-0400<br>Facsimile: (713)751-0906<br>Email:mac@caddellchapman.com<br>jbs@caddellchapman.com<br><br>*Counsel for the*<br>*Consumer Borrowers* |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re:<br><br>EVENTIDE CREDIT ACQUISITIONS, LLC, *et al.*,[1]<br><br>Debtors. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Chapter 11<br><br>Case No. 23-90007-11-mxm<br><br>(Jointly Administered) |

**CONSUMER BORROWERS' JOINDER IN SUPPORT OF MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE**

The Consumer Borrowers[2] file this Joinder in Support of the Motion for Appointment of a Chapter 11 Trustee (ECF 845) (the "Motion") filed by the Official Committee of Unsecured Creditors (the "UCC"). In support thereof, the Consumer Borrowers state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Eventide Credit Acquisitions, LLC (1353) and BWH Texas LLC (9205).

[2] The "Consumer Borrowers" mean Lula Williams, George Hengle, Dianne Turrner, Dowin Coffy, and the Estate of Felix Gillison, John Actis, II, Jerry Avent, Earl Browne, Rose Marie Buchert, Dominique de la Bay, Lori Fitzgerald, Keisha Hamm, Renee Galloway, Derek Geter, Sonji Grandy, Lucinda Gray, Anthony Green, Linda Madison, Lisa Martinez, Kevin Minor, Regina Nolte, Sharon Paavo, Burry Pough, Andrea Scarborough, Anastasia Sherman, Latanya Tarleton, Faith Thomas, Teresa Titus, Dana Duggan, and Richard Smith.

1

1. The Consumer Borrowers join in and support the UCC's Motion, and submit this joinder to make two additional points further supporting the requested relief. As further explained below, the Consumer Borrowers submit that appointment of a trustee is appropriate because Eventide and its sole manager, Matthew B. Martorello, have: (1) engaged in criminal conduct as conclusively determined in the *Williams* litigation; and (2) an irreconcilable conflict of interest because of Eventide's indemnification obligations to Mr. Martorello, as well as Eventide's groundless indemnification of Mr. Martorello's wife, who never even worked for Eventide.

**I. Mr. Martorello has engaged in criminal conduct as determined in the *Williams* litigation and confirmed by Mr. Martorello's own emails.**

    **A. Martorello stipulated to a violation of RICO.**

2. Section 1104 of Chapter 11 of the United States Bankruptcy Code provides that the "court shall order the appointment of a trustee" for "cause," including "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management." 11 U.S.C. § 1104(a)(1). The plain language of this section "does not promulgate an exclusive list of causes for which a trustee must be appointed," and courts have recognized that "'the concepts of incompetence, dishonesty, gross mismanagement and even fraud all cover a wide range of conduct[.]" *In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 472 (3d Cir. 1998).

3. Although not expressly enumerated in subsection (a)(1), subsection (e) makes clear that participation in criminal conducts constitutes grounds for appointment of a trustee. In particular, this section that the "United States trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer… participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor." 11 U.S.C. § 1104(e). The plain language of this statute requires appointment of a Chapter 11 trustee where

2

there "are reasonably grounds to suspect" that debtor's chief executive officer or manager "participated in" criminal conduct. *Cf. In re Jayo*, 2006 WL 2433451, at *7 (Bankr. D. Idaho Jul. 28, 2006) ("The Court is not limited in its evaluation of any facts, here including the criminal action," in determining the existence of cause under sections 1104(a) and 1112(b)).

4. Here, there can be no doubt that cause exists for the appointment of a trustee because Eventide's chief executive officer and manager, Mr. Martorello, has engaged in criminal conduct. Specifically, the Racketeer Influenced and Corrupt Organizations Act ("RICO") and state usury laws make it a crime to engage in usurious transactions like the ones arranged by Mr. Martorello and Eventide.

5. In a section entitled "Criminal Penalties," RICO provides that: "[a]ny person who violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years[.]" 18 U.S. Code § 1963(a). Unquestionably, Martorello has violated two of the provisions of 1962 as confirmed by his stipulation in *Williams*. There, Martorello agreed to the following stipulation as to the § 1962(c) claim:

> Given the Court's June 27, 2023 ruling that control is not a prerequisite for purposes of § 1962(c) liability, (see, e.g., June 27 Transcript at 177:1-5; 180:9-12), **Mr. Martorello stipulates that, for the entire class period, he was associated with an association-in-fact enterprise the activities of which affect, interstate or foreign commerce, and Mr. Martorello participated in the operation of the affairs of the enterprise through the collection of unlawful debt.**
>
> As a result, there are no remaining triable issues of material fact regarding Plaintiffs' § 1962(c) claim, and the Court can enter summary judgment on Plaintiffs' § 1962(c) claim.

**Exhibit 1** (June 30, 2023 Stipulation) (emphasis in original). Likewise, as to the § 1962(d) claim, Martorello further stipulated:

> In th[e] [Fourth] Circuit, a violation of § 1962(d) "does not require that a defendant have a role in directing an enterprise," *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012), and "simply agreeing to advance a RICO undertaking is sufficient"

3

>for a § 1962(d) violation. *Id*. As a result, Martorello's Opposition to Plaintiffs' Summary Judgment Brief, Dkt No. 1206, **did not contest Plaintiffs' assertion that "Martorello had high-level involvement in the facilitation of the" enterprise**. Dkt No. 1241 at p. 28. Given the Court's rulings that the loans are governed by the "law of the Commonwealth of Virginia," Dkt. No. 1328, and that a good-faith defense is not available as a defense to liability under 18 U.S.C. § 1962(d), *id*., Defendant concedes there are no remaining triable issues of fact on Plaintiffs' § 1962(d) claim

**Exhibit 2** (June 23, 2023 Stipulation) (emphasis added). Following these stipulations, the United States District Court for the Eastern District of Virginia entered judgment against Mr. Martorello for RICO violations, and that judgment was recently upheld on appeal. *Williams v. Martorello*, 2025 WL 1943836 (4th Cir. Jul. 16, 2025). Mr. Martorello's RICO violations, affirmed on appeal, constitute criminal conduct. 18 U.S. Code § 1963(a).

6. Mr. Martorello cannot unwind his factual admissions because "factual stipulations are 'formal concessions… that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 677–78 (2010) (citation omitted). And even though this case is now in a new court, judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).

7. And while Mr. Martorello will be quick to point out that the stipulation had two caveats—the applicability of state law and scienter—the United States Court of Appeals for the Fourth Circuit has rejected Martorello's precise arguments on these legal questions. *Williams*, 2025 WL 1943836, at *9. Because state law applies to the loans and "mistake of law" is not a defense to RICO claims, neither of these caveats can save Mr. Martorello or Eventide from the effect of his stipulation: he agreed that he violated each of the actual elements of § 1962(c)-(d), and has now been adjudicated to have done so.

4

8. Standing alone, the stipulation and affirmed judgment provide conclusive evidence—not just reasonable grounds—to support that Mr. Martorello engaged in criminal conduct. But Mr. Martorello's own e-mails further reflect his knowledge that he was involved in criminal activities. For example, as early as December 2012—a little over a year into the business—Martorello had concerns about the legality of his tribal lending business. **Exhibit 3** at Martorello_038990.

9. In an e-mail to a business valuation expert, Mr. Martorello wrote that he had "some urgent questions" for them "on valuation" of the business. *Id*. Among other things, Mr. Martorello compared the business to several other illegal ventures, such as online poker sites, marijuana stores, and "a drug cartel." *Id*. He wanted to know how they would value "a business that is illegal, yet very profitable?" *Id*. Martorello further added:

> Several states make it a FELONY crime to make loans over a certain rate or without a license. I had a 20 page document done for me to understand the risk that I have as an equity owner for **aiding and abetting felony crime** in states like GA and you will see the conclusion. It says something like… "yes it is possible the state will come after you for helping the tribe lend against their laws and charge YOU for aiding and abetting as a felony crime in their state (in some instances penalty could be jail time), but we don't think it's going to happen.

*Id*. at Martorello_038991 (bold and capitalized emphasis in the original).[3]

10. In this same e-mail, Mr. Martorello also noted the litigation against Scott Tucker, who Mr. Martorello described as a "competitor," who "employs similar practices." *Id*. at Martorello_038990. Mr. Tucker is now in jail for these practices "after a five-week jury trial in the U.S. District Court for the Southern District of New York" where he was convicted on RICO counts and other offenses "arising out of the Defendants' operation of an illegal payday lending

---

[3] As Martorello's e-mail confirms, many states make it a crime to engage in usury, including Virginia (where Martorello stipulated to engaging in such conduct).

scheme." *United States v. Grote*, 961 F.3d 105, 108–09 (2d Cir. 2020). That scheme utilized "Native American tribes in order to create the appearance that Tucker's lending portfolios were owned and operated by the Tribes. Under the arrangement, the Tribe would claim to own one or more of the loan portfolios in exchange for one percent of the portfolios' revenues," but "Tucker continued to provide all the capital for the loans and bear the risk of default, as well as advertise, extend, administer, and collect on the loans from his offices in Overland Park, Kansas." *Id*.[4]

11. Mr. Martorello's stipulation unquestionably demonstrates that "**Mr. Martorello participated in the operation of the affairs of the enterprise through the collection of unlawful debt.**" **Exhibit 1** (June 30, 2023 Stipulation) (emphasis in original). By doing so, Mr. Martorello not only violated the civil provisions of § 1962, but also the criminal section of 18 U.S. Code § 1963(a). Because of this, Martorello is unfit to serve as the manager and sole decision maker of the Debtor.

### B. Eventide was part and parcel of Martorello's scheme to make illegal loans as determined in *Williams*.

12. Standing alone, Martorello is unfit to serve as a manager based on his stipulation that he "participated in the operation of the affairs of the enterprise through the collection of unlawful debt." **Exhibit 1** (June 30, 2023 Stipulation) (emphasis removed). This conclusion is further supported by the undeniable fact that Eventide is part and parcel of Martorello's RICO scheme.

---

[4] By way of another example, the Third Circuit has also affirmed the convictions of two individuals who were ultimately convicted "of conspiring to collect unlawful debts in violation of [RICO]." *United States v. Neff*, 787 F. App'x 81, 85 (3d Cir. 2019). The defendants' "RICO convictions" were "based on their efforts to skirt state usury laws by partnering with American Indian tribes to offer usurious payday loans." *Id*.

13. As the *Williams* court has already found: (1) "there is substantial (and largely unrebutted) evidence that, throughout the relevant class periods, Martorello had de facto control of Red Rock and Big Picture's lending operations," (2) that "Martorello was both highly instrumental and heavily involved in the LVD's entrance into the business of payday lending," (3) that "Martorello was functionally in charge of the lending business and the Tribal 'managers' were 'rather meaningless,'" (4) "[a]nd, even after the LVD restructured the lending operations to avoid regulatory scrutiny, the evidence strongly shows that Martorello was still running the show." *Williams*, 339 F.R.D. at 52–53.

14. In the first of Martorello's appeals (*i.e.*, on the class certification ruling), the Fourth Circuit affirmed both of these conclusions and found that Judge Payne did not err in concluding that "Martorello operated as the "de facto head" of the Tribe's lending operations during the class period[.]" *Williams*, 59 F.4th at 87.

15. The Fourth Circuit not only affirmed Judge Payne's findings regarding Red Rock, but it also found that "that Martorello was still largely in charge of the lending operations after the restructuring and that he effectively controlled the tribal lending entities," which was accomplished through Eventide. *Id*. at 90.[5]

16. In the second of Martorello's appeals (*i.e.*, on the summary judgment ruling), the Fourth Circuit reiterated this conclusion, explaining that "[t]hroughout the scheme, **including the restructuring**, Martorello arranged the lending business so that he 'continued to keep almost all the profits ... while retaining substantial control of the lending operation through' his companies."

---

[5] Prior to the restructure, Martorello utilized a "servicing agreement" between his company, Bellicose, and the Tribe to control the operations and receive the profits. As part of the "restructure," Martorello created Eventide and it became the mechanism through which Martorello remained the primary beneficiary of the scheme and in charge of the operations, which could not be altered until the repayment of the $300,000,000.00 promissory note.

*Williams v. Martorello*, 143 F.4th 555, 558 (4th Cir. 2025) (emphasis added) (citation omitted as to district court decision).

17. Because Eventide was part and parcel of the scheme, Martorello's RICO stipulation encompasses post-restructure loans. In other words, Martorello did not merely stipulate that he violated RICO for pre-restructure loans between 2012 and 2016. Instead, Martorello stipulated that he violated RICO for the "entire class period" in *Williams*, which was defined as "All Virginia consumers who entered into a loan agreement with Big Picture where a payment was made from June 22, 2013 to **December 20, 2019**." *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 53 (E.D. Va. 2021) (emphasis added).

18. Martorello, in short, his stipulated to violating RICO for four of the years when he was the manager of Eventide. And while he violated RICO for his personal gain, Eventide was the primary mechanism through which he did it between January 2016 and December 20, 2019.

## II. Cause also exists because Mr. Martorello has a clear conflict of interest as a result of Eventide's alleged indemnification of him and other insiders.

19. In addition to his criminal conduct, Mr. Martorello should be removed for another reason—his irreconcilable conflicts of interest. Where, as here, the debtor's manager has competing interests, courts have routinely appointed trustees. *See, e.g., Matter of Cajun Elec. Power Co-op., Inc.*, 74 F.3d 599, 600 (5th Cir. 1996) (en banc) ("[W]e find the conflicts of interest within the members of the Board of Cajun Electric Power Cooperative, Inc., to be such that the court below was correct in the appointment of a trustee."); *In re Klaynberg*, 643 B.R. 309, 319 (Bankr. S.D.N.Y. 2022) (finding that the facts "reflect serious conflicts of interest and mismanagement that weigh in favor of appointing a trustee."); *In re Patman Drilling Int'l, Inc.*, 2008 WL 724086, at *6 (N.D. Tex. Mar. 14, 2008) (holding that trustee appointment was appropriate because of management's conflicts of interest, and creditors' lack of confidence); *In*

*re Concord Coal Corp.*, 11 B.R. 552 (Bankr. S.D. W.Va. 1981) (trustee appointed under 11 U.S.C. § 1104(a)(2) on grounds that debtor's many competing business interests rendered questionable his commitment to rehabilitation and that debtor could not secure and maintain lenders' and creditors' trust); *In re Sharon Steel Corp.*, 871 F.2d 1217, 1228 (3d Cir. 1989); *In re SunCruz Casinos, LLC*, 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003) ("The enumerated conflicts of interest suffered by the Boulis Estate interfere with its ability to carry out the fiduciary obligations of a debtor in possession."); *Fiesta Homes of Georgia*, 125 B.R. 321, 325 (Bankr.S.D.Ga.1990) (The "presence of a conflict of interest constitutes cause for removal of the Debtor in Possession from administration of [a] case.").

20. As set forth in the UCC's Motion, Mr. Martorello is unfit to manage Eventide's affairs or to continue directing the administration of this Chapter 11 Case because he has consistently administered Eventide's estate for the benefit of himself and insiders and not for the benefit of the estate or creditors. Mr. Martorello also has an irreconcilable conflict because Eventide is allegedly contractually obligated to indemnify Mr. Martorello, including for the $43,401,817.17 judgment against him in favor of Virginia borrowers, as well as other insiders including his wife, brother, and related entities.

21. Eventide listed Mr. these multimillion-dollar indemnification claims as undisputed on its sworn schedules signed by Mr. Martorello. *See* ECF 29 at 13, 18, 19, 22, 23.

22. Although Eventide, managed by Mr. Martorello, has insisted that claims litigation must precede plan confirmation, it has *not* objected to the proof of claim filed by Mr. Martorello for indemnification (Claim No. 36-1). And Eventide, under Mr. Martorello's control, has already paid more than $20 million dollars the indemnity claims to defend Mr. Martorello and other

9

insiders prior to the commencement of this bankruptcy. *See* **Exhibit 4** ("Eventide has spent somewhere approaching $20mm on your lawsuit.").

23.   Eventide's potential indemnification of Mr. Martorello and various insiders puts him in an untenable position because Mr. Martorello—the manager of Eventide—must determine how Eventide proceeds against Mr. Martorello, the individual, and must make the same determination regarding his wife, brother, and related entities.

24.   And although Eventide has yet to object to the indemnification claims (quite tellingly, given its insistence on adjudicating the other claims), Eventide has further taken the position that they won't indemnify Mr. Martorello if the judgment was affirmed. For example, at a recent hearing, Eventide's counsel argued:

> With respect to indemnification, I think there's a flaw in Mr. Guzzo's logic. If they win on the *Williams* case, then, under the terms of the indemnity agreement, Mr. Martorello isn't indemnified. He is -- it's a standard indemnification. He does something bad or something wrong, he's not indemnified.

Hr'g Trans. 31:9-14 (July 9, 2025).[6]

25.   And if Eventide now refuses to indemnify Mr. Martorello, the conflicts get worse because Eventide has paid all Mr. Martorello's litigation fees in *Williams*, *Galloway*, *Smith*, and *Duggan*. This means that Eventide's estate will have claims against Mr. Martorello for the $20 million dollars in fees it has paid on his behalf. This presents a clear conflict of interest because Mr. Martorello, the manager, must object to the proof of claim filed by Mr. Martorello, the

---

[6] This statement is further evidence that a trustee should be appointed. In the words of Eventide's counsel, affirmation of the Williams judgment is tantamount to a finding that Mr. Martorello – Eventide's manager – "did something bad or something wrong." If Martorello did something bad enough to place his conduct outside the scope of the indemnification, how can he possibly continue to stay on as manager of the company? And, separately, if Mr. Martorello's conduct was beyond the scope of the indemnity then Eventide has admitted that – at Mr. Martorello's direction – it made more than $20 million in improper prepetition transfers on Mr. Martorello's behalf.

10

individual, then potentially litigate the merits of the indemnification, and then seek to recover from Mr. Martorello's bankruptcy estate, as well as the law firms who improperly received payment. This conflict is particularly acute given Eventide's indefensible insistence on litigating the merits of the Consumer Borrowers claims before proceeding with plan confirmation, a transparent effort to protect Mr. Martorello rather than acting in the best interests of creditors.

26. The Consumer Borrowers recognize that "the mere fact a party occupies dual roles as an owner and a creditor in a bankruptcy case is clearly insufficient to establish cause for the appointment of a trustee." *SunCruz Casinos*, 298 B.R. at 832. But where, as here, the management has the "opportunity and apparent ability to act in its own self interests to the detriment of the Debtors' other creditors," the dual role crosses the line. *Id*. As one court has explained:

> Rautiola has not suggested that he is or will be capable of pursuing aggressive, independent investigation of all the transactions at issue, or that he will prosecute litigation to recover assets on behalf of the Debtor. **In fact, since he is one potential target of such litigation, it is impossible to believe that he would do so in the manner that a disinterested person would.**

*In re Nartron Corp.*, 330 B.R. 573, 593 (Bankr. W.D. Mich. 2005) (emphasis added); *see also In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 113 (Bankr. S.D.N.Y. 2008) ("An independent trustee should be appointed under § 1104(a)(2) when they suffer from material conflicts of interest, and cannot be counted on to conduct independent investigations of questionable transactions in which they were involved."); *In re PRS Ins. Group, Inc.,* 274 B.R. 381, 389 (Bankr.D.Del.2001) (appointment of trustee appropriate under § 1104(a)(2) where causes of action against insiders are a significant asset of this estate and there are no business operations requiring current management); *In re Microwave Prods. of Am., Inc.,* 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989) (chapter 11 trustee appointed where debtor was not in a "strong posture" to pursue possible claims due to conflicts of interest and fraudulent transfers, and "a trustee would likely be able to

investigate claims that could result in additional sums of money coming into the estate"); *In re L.S. Good & Co.,* 8 B.R. 312, 315 (Bankr. W.Va.1980) (appointing trustee under § 1104(a) (2) where "[t]he magnitude of the number of inter-company transactions places current management of [the debtor] in a position of having grave potential conflicts of interest and the presumption arises that the current management of [the debtor] will be unable to make the impartial investigations and decisions demanded in evaluating and pursuing inter-company claims on behalf of [the debtor].").

27. What's more, for reasons still unknown to the Consumer Borrowers, Eventide has indemnified and paid the fees of Mr. Martorello's wife, Rebecca Martorello, who has also filed an indemnification claim against Eventide. *See* Claim 37-1 (asserting that Ms. Martorello "is indemnified by the Debtor from certain liabilities and costs, which continue to accrue, as set forth in these attachments to this proof of claim."). Given Ms. Martorello's position—that she never was involved in the tribal lending enterprise, never an officer or employee of Eventide, and allegedly out of the tribal lending operation by the time of the creation of Eventide —it is remarkable that Eventide paid her prior attorneys' fees in the litigation, listed her claim as undisputed, has not objected to her claim, and has not sought to recover all amounts paid on her behalf. It hasn't done so because that would require Mr. Martorello, the manager, to sue his wife, who he chose to indemnify even though she allegedly never worked for Eventide.

28. Given his conflicts of interest, Mr. Martorello cannot continue to serve as the Debtor's sole manager, decision maker, and estate fiduciary. He cannot remain in the position where he is both: (1) indemnitee and indemnitor, (2) plaintiff and defendant, and (3) a plaintiff (as manager) against his wife, especially given his repeated and ongoing efforts to favor himself and insiders over the estate.

12

**III. Martorello has repeatedly admitted that Eventide's liability mirrors his own.**

29. The Consumer Borrowers have one final, but important point to make: Mr, Martorello should no longer be in charge of this bankruptcy as its only purpose is to litigate the Consumer Borrowers' claims, which has already drained more than $20 million dollars from the company. As Mr. Martorello has told this Court:

> The issues associated with determination of whether Matt has any such liability **are largely, if not entirely, the same as the issues** that would be litigated in respect of the consumer borrower claims against Eventide.

*Martorello*, ECF 6 at ¶ 20 (emphasis added). In Mr. Martorello's own words, Eventide's liability on the Consumer Borrowers' claims is duplicative of his own liability to Consumer Borrowers.

30. Given this concession, it naturally follows that it is not in the best interest of creditors to drain the rest of the estate litigating the same issues against Eventide that have been emphatically lost by Mr. Martorello. If Mr. Martorello, as Eventide's manager, had unbiased and independent judgment, he would reach this conclusion on his own. Because of his own self-interest, however, he would rather waste the remaining money in Eventide's estate even though he has admitted that the liability issues are "largely, if not entirely, the same issues" as to Eventide.

31. An unbiased and independent trustee should be appointed so he or she can independently determine whether it is in the best interest of creditors to continue to spend millions of dollars of the estate's dwindling resources litigating "largely, if not entirely, the same issues" that were conclusively decided against Mr. Martorello in the Fourth Circuit. No unbiased and independent person would read the Fourth Circuit's decision in *Williams* and conclude that it is in the best interest of Eventide's creditors to continue to fight the very same issues. And at a minimum, someone other than the very person who suffered the $43 million dollar judgment should make that decision.

## CONCLUSION

32. Over the past eight years, Mr. Martorello has drained more than $20 million dollars from the Debtor's estate for the sole purpose of fighting the claims against him. And other than a $43 million dollar judgment against him, he has nothing to show for the depletion of nearly all of the Debtor's assets on his defense. Given that the liability issues are "largely, if not entirely, the same issues" as to Eventide, an independent trustee should be appointed to determine whether Eventide's remaining assets should be spent on continued litigation of the same issues that have already been lost. For the reasons set forth in the UCC's Motion and the additional reasons raised in this joinder, the Motion should be granted.

Dated: August 20, 2025

/s/ John D. Gaither
Patrick J. Neligan, Jr.
State Bar. No. 14866000
John D. Gaither
State Bar No. 24055516
NELIGAN LLP
4851 LBJ Freeway, Suite 700
Dallas, Texas 75244
Telephone: 214-840-5300
pneligan@neliganlaw.com
jgaither@neliganlaw.com

*Counsel for the Consumer Borrowers*

/s/ Andrew J. Guzzo
Kristi C. Kelly, admitted *pro hac vice*
Andrew J. Guzzo, admitted *pro hac vice*
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 - Telephone
(703) 591-0167 - Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

Michael A. Caddell
John B. Scofield, Jr., *pro hac vice*
**CADDELL & CHAPMAN**
628 East 9th Street
Houston TX 77007-1722
Telephone: (713) 751-0400
Facsimile: (713)751-0906
Email: mac@caddellchapman.com
jbs@caddellchapman.com

14

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on August 20, 2025, a true and correct copy of the foregoing was served electronically via this Court's CM/ECF notification system.

                                      */s/ Andrew J. Guzzo*
                                      Andrew J. Guzzo