**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| EVENTIDE CREDIT ACQUISITIONS, LLC, *et al.*,[1] | Case No. 23-90007 (MXM) |
| Debtors. | |

**OFFICIAL COMMITTEE OF UNSECURED CREDITOR'S FIRST AMENDED
CHAPTER 11 PLAN OF LIQUIDATION OF
EVENTIDE CREDIT ACQUISITIONS, LLC**

Ian R. Phillips, Esq. (TX Bar No. 24091239)
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
iphillips@coleschotz.com

*Counsel to the Official Committee of Unsecured
Creditors*

Gary H. Leibowitz, Esq. (*Admitted Pro hac vice*)
H.C. Jones, III, Esq. (*Admitted Pro hac vice*)
J. Michael Pardoe, Esq. (*Admitted Pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: (410) 230-0660
Facsimile: (410) 230-0667
gleibowitz@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

Dated:    September 4, 2025

---

[1] The last 4 digits of the Debtor's tax identification number is 1353.

# TABLE OF CONTENTS

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES** ........................................... **4**

  **1.1.**   **Defined Terms** ............................................................................................. **4**

  **1.2**   **Rules of Interpretation** ............................................................................. **13**

  **1.3**   **Computation of Time** ................................................................................ **13**

  **1.4**   **Governing Law** ......................................................................................... **14**

  **1.5**   **Reference to Monetary Figures** ............................................................... **14**

  **1.6**   **Controlling Document** ............................................................................. **14**

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS** ............................................. **14**

  **2.1**   **Administrative Expense Claims** ............................................................... **14**

  **2.2**   **Professional Claims** ................................................................................. **15**

  **2.3**   **Priority Tax Claims** ................................................................................. **15**

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS** .......................................................................................................... **16**

  **3.1**   **Classification of Claims and Interests** .................................................... **16**

  **3.2**   **Treatment of Classes of Claims and Equity Interests** ............................ **16**

  **3.3**   **Special Provision Governing Unimpaired Claims** .................................. **18**

  **3.4**   **Voting Classes; Presumed Acceptance by Non-Voting Classes** ............. **19**

  **3.5**   **Nationwide Consumer Borrower Class** ................................................. **19**

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN** ......................... **20**

  **4.1**   **Restructuring Transactions** ...................................................................... **20**

  **4.2**   **Corporate Action** ..................................................................................... **20**

  **4.3**   **Funding and Administration of Reserve Accounts** ................................. **21**

  **4.4**   **Books and Records** ................................................................................... **22**

  **4.5**   **Section 1145 Exemption** ........................................................................... **23**

  **4.6**   **Exemption from Certain Taxes and Fees** ................................................. **23**

  **4.7**   **Subordination** .......................................................................................... **23**

  **4.8**   **Cancellation of Notes, Instruments, Certificates, and Other Documents** ............. **24**

  **4.9**   **Effectuating Documents; Further Transactions** ....................................... **24**

**ARTICLE V** ........................................................................................................... **24**

  **5.1**   **Establishment of the Litigation Trust** ..................................................... **24**

  **5.2**   **Transfer of Assets to the Litigation Trust** ............................................... **24**

  **5.3**   **Litigation Trust Funding** ......................................................................... **24**

| | | |
|---|---|---|
| 5.4 | Causes of Action | 25 |
| 5.5 | Litigation Trust Distributions | 26 |
| 5.6 | Litigation Trust Agreement | 26 |
| 5.7 | Indemnification and Exculpation | 28 |

**ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .... 28

| | | |
|---|---|---|
| 6.1 | Assumption and Rejection of Executory Contracts and Unexpired Leases | 28 |
| 6.2 | Insurance Policies | 29 |
| 6.3 | Cure of Defaults and Objections to Cure and Assumption | 29 |
| 6.4 | Reservation of Rights | 30 |

**ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS** ... 30

| | | |
|---|---|---|
| 7.1 | Distributions on Account of Claims Allowed as of the Effective Date | 30 |
| 7.2 | Special Rules for Distributions to Holders of Disputed Claims | 31 |
| 7.3 | Delivery of Distributions | 31 |
| 7.4 | Claims Paid or Payable by Third Parties | 33 |
| 7.5 | Setoffs | 34 |

**ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS** ... 35

| | | |
|---|---|---|
| 8.1 | Disputed Claims Process | 35 |
| 8.2 | Prosecution of Objections to Claims | 35 |
| 8.3 | Estimation of Claims | 35 |
| 8.4 | Recoupment | 36 |
| 8.5 | No Interest | 36 |
| 8.6 | Disallowance of Claims | 36 |

**ARTICLE IX EFFECT OF CONFIRMATION OF THE PLAN** ... 36

| | | |
|---|---|---|
| 9.1 | Dissolution of the Committee | 36 |
| 9.2 | Discharge of Claims and Termination of Equity Interests | 36 |
| 9.3 | Exculpation | 37 |
| 9.4 | Injunction | 37 |
| 9.5 | Release of Liens | 38 |
| 9.6 | Reimbursement or Contribution | 38 |

**ARTICLE X CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ... 38

| | | |
|---|---|---|
| 10.1 | Conditions Precedent to the Effective Date | 38 |
| 10.2 | Substantial Consummation | 39 |

**ARTICLE XI MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ... 39

2

**11.1    Modification of Plan** ...................................................................................... **39**

**11.2    Effect of Confirmation on Modifications** ...................................................... **39**

**11.3    Revocation or Withdrawal of Plan** ............................................................... **39**

**ARTICLE XII RETENTION OF JURISDICTION** ............................................................ **40**

**ARTICLE XIII MISCELLANEOUS PROVISIONS** ........................................................... **42**

**13.1    Additional Documents** .................................................................................... **42**

**13.2    Payment of Statutory Fees** ............................................................................ **42**

**13.3    Reservation of Rights; Binding Effect** .......................................................... **42**

**13.4    No Admission** .................................................................................................. **42**

**13.5    Closing of Chapter 11 Case** ........................................................................... **42**

**13.6    Service of Documents** ..................................................................................... **43**

**13.7    Term of Injunctions or Stays** ........................................................................ **43**

**13.8    Entire Agreement** ........................................................................................... **43**

**13.9    Plan Supplement Exhibits** ............................................................................. **43**

**13.10   Non-Severability** ............................................................................................. **44**

60754/0002-49429237v3

## INTRODUCTION

The Official Committee of Unsecured Creditors (the "**Committee**") of Eventide Credit Acquisitions, LLC, the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), hereby proposes this Plan. The Committee seeks to liquidate the remaining assets of the Debtor in an orderly process. The Committee is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan contemplates the allowance of certain claims, and distributions to holders of Allowed Claims. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, operations, projections, risk factors, a summary and analysis of this Plan, the liquidation, and certain related matters.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### 1.1. Defined Terms

1.1.1. "*Administrative and Priority Claims Estimate*" means an estimated amount of Allowed Administrative Expense Claims and Priority Claims for the purposes of establishing the Administrative and Priority Claims Reserve.

1.1.2. "*Administrative and Priority Claims Reserve*" means the amount to be held by the Litigation Trustee in reserve for the payment of Allowed Administrative and Priority Tax Claims and Priority Non-Tax Claims.

1.1.3. "*Administrative Expense Claim*" means a Claim against the Debtor for the costs and expenses of administration of the Chapter 11 Case arising on or prior to the Effective Date pursuant to sections 328, 330, or 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, other than Substantial Contribution Claims.

1.1.4. "*Administrative Expense Claims Bar Date*" means the last date by which a request for payment of an Administrative Expense Claim may be filed, which date is thirty (30) days after the Effective Date.

1.1.5. "*Administrative Claims Objection Deadline*" means the last day for filing an objection to any request for the payment of an Administrative Expense Claim, which shall be the later of (a) one hundred twenty (120) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.

1.1.6. "*Affiliate*" means, with respect to any Person, any other Person that directly or indirectly, including through one or more intermediaries or controls, is controlled by or is under common control with, such first Person. For the purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by" and "under common control with"), when used with respect to any Person, means the power to direct or cause the direction of

the management or policies of such Person, directly or indirectly, whether through the ownership of voting securities, by Contract or otherwise.

1.1.7. "*Allowed*" means, as to a Claim, a Claim allowed under the Plan, under the Bankruptcy Code, or by a Final Order, as applicable.

1.1.8. "*Avoidance Actions*" means Claims of the Debtor's Estate arising under sections 544, 547, 548 and/or 549 of the Bankruptcy Code and, solely to the extent related to the foregoing, section 550 of the Bankruptcy Code.

1.1.9. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

1.1.10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Texas or such other court having jurisdiction over the Chapter 11 Case.

1.1.11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the local rules and judge-specific guidelines of the Bankruptcy Court.

1.1.12. "*Bar Date*" means the deadline to file a Proof of Claim in this case, which shall be fourteen (14) days before the date set by the Bankruptcy Court for the Confirmation Hearing.  The Debtor shall send a written notice of the Bar Date to all known creditors other than the Nationwide Consumer Borrowers within five (5) business days of the entry of an Order approving the Disclosure Statement.  The Bar Date notice for the Nationwide Consumer Borrowers shall be sent to the Nationwide Class Counsel.

1.1.13. "*Business Day*" means any day other than a Saturday, Sunday or other day on which commercial banks are authorized or required to close under the Laws of, or are in fact generally closed in, the state of Texas.

1.1.14. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

1.1.15. "*Causes of Action*" means any action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, Equity Interest, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever that are property of the Debtor's estate under 11 U.S.C. § 541, whether known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, asserted or unasserted, assertable directly or derivatively, in contract or in tort, in law or in equity, arising under the statutes or administration regulations of any jurisdiction, or pursuant to any other theory of law. Such Causes of Action shall include, by example only and without limitation, (i) avoidance actions, (ii) actions under 11 U.S.C. §§ 542, 544, 545, 547, 548, 549, 550 and/or 553 and any state law equivalents, (iii) commercial tort claims, (iv) any right of setoff, counterclaim or recoupment, and (v) the right to object to Claims or Equity Interests (subject to the provisions of the Plan).  These

5

include, among others, (a) actions against entities, individuals, and trusts which received transfers from the Debtor, or immediate and mediate transferees, between January 1, 2016 and the Petition Date, and (b) actions against all current and former managers, officer, directors and members of the Debtor, totaling, the Committee asserts, in excess of $65.0 million.

1.1.16. "*Chapter 11 Case*" means the Chapter 11 Case pending for the Debtor in the Bankruptcy Court.

1.1.17. "*Claim*" means an actual or alleged (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and calculated together with all applicable accrued interest, fees and commission due, owing or incurred from time to time or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  For the avoidance of doubt, this Plan's definition of "Claim" is no less broad than the definition of "claim" as defined in section 101(5) of the Bankruptcy Code.

1.1.18. "*Claims Agent*" means Donlin Recano & Co. LLC, the duly appointed Claims, Noticing and Balloting Agent in this Bankruptcy Case.

1.1.19. "*Claims Register*" means the official register of Claims against and Equity Interests in the Debtor maintained by the Claims Agent.

1.1.20. "*Class*" means a category of holders of Claims or Equity Interests under section 1122(a) of the Bankruptcy Code.

1.1.21. "*Class Administrator*" means American Legal Claims Services, the administrator for the Nationwide Consumer Borrower Class.

1.1.22. "*Class Notice*" means the form of notice to be disseminated to Nationwide Consumer Borrowers.

1.1.23. "*Committee*" means the Official Unsecured Creditors' Committee appointed in the Chapter 11 Case pursuant to the *Appointment of the Official Unsecured Creditors' Committee* [Docket No. 20].

1.1.24. "*Compensation Procedures*" means the procedures for the payment of Professional Fees approved by the Bankruptcy Court in the *Order Establishing Procedures for Interim Compensation and Reimbursement of Professionals* [Doc. No. 97].

1.1.25. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

1.1.26. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

60754/0002-49429237v3

1.1.27. "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Committee seeks entry of the Confirmation Order.

1.1.28. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code after a Confirmation Hearing.

1.1.29. "*Consumer Borrower Class Claim(s)*" means the Claim of the Nationwide Consumer Borrowers who are members of the Nationwide Consumer Borrower Class, against the Debtor, arising under, derived from, based on, or related to any Consumer Borrower Litigation.

1.1.30. "*Consumer Borrower Litigation*" means the list of cases under "Consumer Borrower Litigation" set forth on **Exhibit C** to the Disclosure Statement.

1.1.31. "*Consummation*" means the occurrence of the Effective Date.

1.1.32. "*Contract*" means any written or oral contract, agreement, indenture, note, bond, loan, lease, sublease, mortgage, license, sublicense, obligation or other binding arrangement of any kind.

1.1.33. "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by the Committee for the benefit of the Litigation Trust under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

1.1.34. "*Cure Notice*" means notices to be provided to non-debtor parties to Executory Contracts and Unexpired Leases identifying the Cure payments for Executory Contracts and Unexpired Leases proposed to be assumed as part of the Plan.

1.1.35. "*Cure Objection Deadline*" means the deadline established by the Bankruptcy Court by which non-debtor parties to Executory Contracts and Unexpired Leases that are proposed to be assumed as part of the Plan must object to (i) the Cure proposed by the Committee and (ii) the proposed assumption of the Executory Contracts and Unexpired Leases.

1.1.36. "*Debtor*" means Eventide Credit Acquisitions, LLC, the debtor and debtor-in-possession in the Chapter 11 Case.

1.1.37. "*Disclosure Statement*" means a disclosure statement, including any exhibits, appendices, related documents, ballots, and procedures related to the solicitation of votes to accept or reject the Plan, in each case, as amended, supplemented, or otherwise modified from time to time in accordance with the terms hereof, and that is prepared and distributed in accordance with, among other things, sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Rule 3018 of the Federal Rules of Bankruptcy Procedure, and other applicable law.

1.1.38. "*Disputed*" means, as to a Claim or an Equity Interest, a Claim or an Equity Interest: (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or

otherwise made a written request to the Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

1.1.39. "*Disputed General Unsecured Claims Reserve*" means the amount to be held by the Litigation Trustee in reserve for the payment of Disputed General Unsecured Claims.

1.1.40. "*Distribution*" means any initial or subsequent payment or transfer made under the Plan.

1.1.41. "*Distribution Date*" means, except as otherwise set forth herein, the date or dates, on or after the Effective Date, upon which the Litigation Trustee or its designee shall make Distributions to holders of Allowed Claims entitled to receive Distributions under the Plan.

1.1.42. "*Effective Date*" means the date on which the terms and conditions set forth in Article 10.1 of the Plan have occurred.

1.1.43. "*Eligible Tribal Loan*" means loans issued by Red Rock Tribal Lending d/b/a Castle Payday and/or Big Picture Loans prior to September 6, 2023.

1.1.44. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.1.45. "*Equity Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of the Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of the Debtor (in each case whether or not arising under or in connection with any employment agreement).

1.1.46. "*Estate*" means the estate of the Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

1.1.47. "*Exculpated Parties*" means collectively, (a) the Committee and its members; and (b) the following professionals: (1) Cole Schotz P.C.; (2) Aurora Management Partners; (3) Kelly & Guzzo, P.L.C,; (4) Consumer Litigation Associates, P.C.; (5) Tycko & Zavareei, LLP; (6) Neligan, LLP; (7) Caddell & Chapman; (8) Terrell Marshall Law Group LLC; (9) Gupta Wessler LLP; and (10) Berger Montague.

1.1.48. "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.49. "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

1.1.50. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to seek leave to appeal, appeal or seek certiorari has expired and no application for leave to appeal, appeal or petition for certiorari has been timely taken, or filed, or as to which any application for leave to appeal or appeal that

has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

1.1.51. "*General Unsecured Claim*" means any Claim against the Debtor other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Substantial Contribution Claim, an Other Secured Claim, a Consumer Borrower Claim, a Substantial Contribution Claim, a Professional Claim or a Section 510(b) Claim.

1.1.52. "*General Unsecured Claims Cash Pool*" means a cash distribution pool in a fixed amount for distributions to holders of Allowed General Unsecured Claims.  On the Effective Date, the General Unsecured Claims Cash Pool shall be funded with cash in the amount of $50,000 which the Committee estimates as a 25% distribution to Allowed Claims in the class.

1.1.53. "*Impaired*" means, with respect to any Class of Claims, a Claim that is not Unimpaired.

1.1.54. "*Initial Distribution Date*" means, the date of the initial Distribution to holders of Allowed Claims other than members of the Nationwide Consumer Borrower Class, which date, unless otherwise set forth in the Plan, shall not be more than ninety (90) days after the Effective Date.

1.1.55. "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

1.1.56. "*Insurance Rights*" means all of the Debtor's rights under their insurance policies, including any directors' and officers' policies, and under applicable law against their insurance carriers concerning such insurance policies, and any proceeds of such policies received by the Debtor as an insured.

1.1.57. "*Intellectual Property*" means without limitation all of the following: (i) all patents; (ii) all know-how, work product, trade secrets, inventions (whether patentable or otherwise), data, information, processes, techniques, procedures, compositions, devices, methods, formulas, protocols and information, whether patentable or not; (iii) all software, source code, object code, system diagrams and architecture, flow charts, algorithms and all other information technology; (iv) all works of authorship, copyrightable works, copyrights and applications, registrations and renewals; (v) all logos, trademarks, service marks, domain names, and all applications and registrations relating thereto; (vi) all other proprietary rights; (vii) all regulatory exclusivities, patent extensions, supplemental protection certificates or the like; and (viii) all copies and tangible embodiments of each and all of the foregoing utilized in the Debtor's business.  Notwithstanding the above, Intellectual Property shall not include any "Tribal Property."

1.1.58. "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, or regulation, in each case, that is validly adopted, promulgated, or issued by a governmental authority of competent jurisdiction.

1.1.59. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

60754/0002-49429237v3

1.1.60. "*Litigation Trust*" means the trust established pursuant to Article V of this Plan to, among other things, hold the Litigation Trust, prosecute Causes of Action, object to Claims and make distributions pursuant to the Plan and Litigation Trust Agreement.

1.1.61. "*Litigation Trust Agreement*" means that certain Litigation Trust Agreement, which shall be included in the Plan Supplement, governing the duties and scope of authority of the Litigation Trustee.

1.1.62. "*Litigation Trust Assets*" means the assets and property held in trust by the Litigation Trustee for the benefit of the holders of Allowed Consumer Borrower Claims pursuant to the Litigation Trust Agreement

1.1.63. "*Litigation Trust Initial Funding*" means all remaining Cash and assets in the Estate immediately after the funding of the Reserve Accounts and the payment of any other amounts required by the Plan, including pursuant to Article 4.3 of the Plan.

1.1.64. "*Litigation Trust Oversight Board*" or "*LTOB*" means the board charged with overseeing the Litigation Trust pursuant to and as set forth in the Litigation Trust Agreement.

1.1.65. "*Litigation Trustee*" means the person or entity selected by the Committee in its sole and absolute discretion (in consultation with the Debtor) to serve as trustee of the Litigation Trust as approved by the Bankruptcy Court, and any successor trustee appointed pursuant to the Litigation Trust Agreement.  The Committee will identify the Litigation Trustee and submit the name to the Bankruptcy Court no later than the filing of the Plan Supplement.

1.1.66. "*Nationwide Class Counsel*" means the consortium of the following firms representing the Nationwide Consumer Borrower Class: (i) Kelly & Guzzo, P.L.C.; (ii) Consumer Litigation Associates, P.C.; (iii) Caddell & Chapman; (iv) Terrell Marshall Law Group PLLC; (v) Berger Montague; and (vi) Gupta Wessler LLP.

1.1.67. "*Nationwide Consumer Borrower*" means any Person, including their successors and assigns and Persons holding or exercising any relevant legal rights of such Person, who received an Eligible Tribal Loan. The term shall be synonymous with member, when referring to members of the Nationwide Consumer Borrower Class.  For purposes of this Plan, each Nationwide Consumer Borrower shall be treated as a single member of the Nationwide Consumer Borrower Class but each Eligible Tribal Loan he or she received will be considered separately when making any distribution or providing any other benefit.

1.1.68. "*National Consumer Borrower Class Representatives*" means John Actis, II, Jerry Avent, Earl Browne, Rose Marie Buchert, Dowin Coffy, Dominique de la Bay, Lori Fitzgerald, Keisha Hamm, George Hengle, Renee Galloway, Derek Geter, Estate of Felix Gillison, Sonji Grandy, Lucinda Gray, Anthony Green, Linda Madison, Lisa Martinez, Kevin Minor, Regina Nolte, Sharon Paavo, Burry Pough, Andrea Scarborough, Anastasia Sherman, Latanya Tarleton, Faith Thomas, Teresa Titus, Dianne Turner, and Lula Williams, Dana Duggan, and Richard Smith.

1.1.69. "*Other Priority Claim*" means any unsecured claim entitled to priority in repayment pursuant to section 507 of the Bankruptcy Code that is not a Priority Tax Claim or Administrative Expense Claim.

1.1.70. "*Other Secured Claim*" means any Secured Claim other than a Secured Tax Claim.

1.1.71. "*Person*" means any natural person, corporation, company, partnership, association, limited liability company, limited partnership, limited liability partnership, trust or other legal entity or organization.

1.1.72. "*Petition Date*" means September 6, 2023, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

1.1.73. "*PII*" means personal identifiable information provided by the Nationwide Consumer Borrowers to tribal lenders or to the Debtor prior to the Effective Date.

1.1.74. "*Plan*" means this chapter 11 plan, as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, including the Plan Supplement and all exhibits, supplements, appendices, and schedules.

1.1.75. "*Plan Supplement*" means any compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, which shall be filed by the Committee no later than five (5) Business Days before the voting deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  The Plan Supplement includes, but is not limited to, the following: the Litigation Trust Agreement.

1.1.76. "*Priority Non-Tax Claim*" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

1.1.77. "*Priority Tax Claim*" means any Claim against the Debtor that is entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Claim for penalties.

1.1.78. "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class.

1.1.79. "*Professional*" means a Person employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code.

1.1.80. "*Professional Claim*" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 328, 330 or 331 of the Bankruptcy Code.

11

1.1.81. "*Professional Fee Escrow*" means an interest-bearing account funded by the Debtor with Cash on or before the Effective Date, if available cash exists, in an amount equal to the Professional Fee Estimate. If there is insufficient cash on the Effective Date then it will continue to be funded from the BPL Settlement payments until funded in full.

1.1.82. "*Professional Fee Estimate*" means the aggregate amount of Professional Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services prior to and as of the Effective Date, and any post-Effective Date fees and expenses, which good faith estimates Professionals shall deliver to the Committee as set forth in Article 2.2 herein and, in turn, the Committee will utilize for purposes of establishing the Professional Fee Escrow.

1.1.83. "*Proof of Claim*" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

1.1.84. "*Reserve Accounts*" means, collectively, (i) the Administrative and Priority Claims Reserve; (ii) the General Unsecured Claims Cash Pool; (iii) the Substantial Contribution Fund; and (iv) the Professional Fee Escrow.

1.1.85. "*Section 510(b) Claim*" means any Claim against the Debtor subject to subordination under section 501(b) of the Bankruptcy Code.

1.1.86. "*Secured Claim*" means a Claim: (a) secured by a Lien on collateral to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.1.87. "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

1.1.88. "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa or any similar federal, state, or local law.

1.1.89. "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

1.1.90. "*Solicitation Agent*" means Donlin Recano & Co. LLC, the notice, claims, and solicitation agent retained by the Debtor in the Chapter 11 Case by Bankruptcy Court order.

1.1.91. "*Subject States*" means Arizona, Arkansas, Colorado, Connecticut, Illinois, Indiana, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, and South Dakota.

1.1.92. "*Substantial Contribution Claims*" means the Allowed Administrative Expense Claims of the Nationwide Class Counsel.

1.1.93. "*Substantial Contribution Fund*" means cash in an amount needed to fund payment of the Substantial Contribution Claims.

1.1.94. "*Unclaimed Distribution*" means (i) in respect of any Distribution under the Plan on account of an Allowed Claim to a holder, other than a member of the Nationwide Consumer Borrower Class, that has not: (a) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check; (b) given notice to the Litigation Trustee of an intent to accept a particular Distribution; (c) responded to the Litigation Trustee's requests for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution and (ii) in respect of Distributions under the Plan to members of the Nationwide Consumer Borrower Class, any funds remaining in the Litigation Trust as a result of distribution checks remaining uncashed by members of the Nationwide Consumer Borrower Class 120 days after issuance thereof.

1.1.95. "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.1.96. "*Unimpaired*" has the meaning set forth in section 1124 of the Bankruptcy Code.

## 1.2    Rules of Interpretation

For purposes of the Plan: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) any immaterial effectuating provisions may be interpreted in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

## 1.3    Computation of Time

13

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

## 1.4    Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to conflict of laws principles.

## 1.5    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

## 1.6    Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.   In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control.   In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II

## ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III.

## 2.1    Administrative Expense Claims

Unless otherwise agreed to by the holder of an Allowed Administrative Expense Claim and the Litigation Trustee after the Effective Date, each holder of an Allowed Administrative Expense Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Expense Claim an amount of Cash from the Administrative and Priority Claim Reserve equal to the amount of such Allowed Administrative Expense Claim either: (a) if an Administrative Expense Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Expense Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Expense Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Expense Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Expense Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction

14

giving rise to such Allowed Administrative Expense Claim without any further action by the holders of such Allowed Administrative Expense Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Litigation Trustee; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

All requests for allowance and payment of an Administrative Expense Claim, other than Professional Claims and the Substantial Contribution Claim must be filed with the Bankruptcy Court and served on counsel for the Litigation Trustee on or after the Effective Date, by no later than the Administrative Expense Claims Bar Date. In the event that any party to an Administrative Expense Claim on or before the Administrative Claims Objection Deadline, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim. The Committee is not aware of any potential Administrative Expense Claims.

### 2.2 Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served in accordance with the Compensation Procedures approved by the Bankruptcy Court no later than **45 days after the Effective Date**. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code. Allowed Professional Claims for services rendered prior to the Effective Date shall be paid in Cash in the amount the Bankruptcy Court allows from the Professional Fee Escrow, which shall be held in trust for the Professionals and funded with Cash equal to the Professional Fee Estimate. Claims for any post-Effective Date services by Professionals shall be submitted to the Litigation Trustee and paid in the ordinary course, but **in no event later than fourteen (14) days after their submission**. Professionals shall deliver to the Committee their estimates for purposes of computing the Professional Fee Estimate **no later than five (5) Business Days prior to the anticipated Effective Date**. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Committee may estimate the unpaid fees and expenses of such Professional. Any funds remaining in the Professional Fee Escrow after all Professional Claims have been paid will be deposited into the Litigation Trust for use in accordance with this Plan.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate. For the avoidance of doubt, the Litigation Trustee may employ and pay any Professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court. Any Professionals employed by the Litigation Trustee shall be paid from the funds in or generated by the Litigation Trust.

### 2.3 Priority Tax Claims

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive on the Effective Date payment in Cash from the Administrative and Priority Claims Reserve in an amount equal to the amount of such Allowed Priority Tax Claim or, as determined by the Committee, regular installment payments from the Litigation Trustee of a total

15

value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash from the Administrative and Priority Claims Reserve and the holder of such Claim, or as may be due and payable under applicable non-Bankruptcy law, or in the ordinary course of business.  The Committee is not aware of any Priority Tax Claims that in the aggregate total in excess of $100. Notwithstanding the foregoing, the Plan shall be deemed to be an objection to any penalty asserted as a Priority Tax Claim arising with respect to or in connection with any Allowed Priority Tax Claims.

## ARTICLE III

## CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS

### 3.1    Classification of Claims and Interests

Except for the Claims addressed in Article II, all Claims and Equity Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest qualifies within the description of such other Classes.  A Claim or an Equity Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Secured Claim of Bluetech | Impaired | Deemed to Reject |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Consumer Borrower Claims | Impaired | Entitled to Vote |
| 6 | Equity Interests | Impaired | Deemed to Reject |

### 3.2    Treatment of Classes of Claims and Equity Interests

Except to the extent that the Litigation Trustee on or after the Effective Date, and a holder of an Allowed Claim, as applicable, agree to a less favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim.  Unless otherwise indicated, the holder of an Allowed Claim, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

16

(a)     **Class 1 — Priority Non-Tax Claims**

    (1)     *Classification*: Class 1 consists of any Priority Non-Tax Claims against the Debtor.

    (2)     *Treatment*: Each holder of an Allowed Class 1 Claim shall receive Cash from the Administrative and Priority Claim Reserve in an amount equal to such Allowed Class 1 Claim.

    (3)     *Voting*: Class 1 is Unimpaired.  Holders of Allowed Class 1 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 1 Claims are not entitled to vote to accept or reject the Plan.

(b)     **Class 2 — Other Secured Claims**

    (1)     *Classification*: Class 2 consists of any Other Secured Claims against the Debtor.

    (2)     *Treatment*: Each holder of an Allowed Class 2 Claim shall receive, as the Litigation Trustee determines:

        A.     payment in full in Cash of its Allowed Class 2 Claim, including any accrued and unpaid interest, fees, and expenses as may be required to be paid;

        B.     the collateral securing its Allowed Class 2 Claim; or

        C.     such other treatment rendering its Allowed Class 2 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (3)     *Voting*: Class 2 is Unimpaired.  Holders of Allowed Class 2 Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Class 2 Claims are not entitled to vote to accept or reject the Plan.

(c)     **Class 3 — Secured Claim of Blutech Irrevocable Trust**

    (1)     *Classification*: Class 3 consists of the disputed Secured Claim of Bluetech Irrevocable Trust ("**<u>Bluetech</u>**") in the amount of $7,086,634.72.  The Committee contends that Bluetech is an Insider, and that its scheduled claim is not valid or secured. The Committee or Litigation Trustee intends to seek the disallowance and/or equitable subordination of the claim under section 510(c).

    (2)     *Treatment*:  In the event the Class 3 Claim is Allowed, then Bluetech shall receive a cash Distribution equal to the amount of its Allowed claim.  If the

17

claim is Disallowed or equitably subordinated, it will not receive a distribution under the Plan.

(3)    *Voting*: Class 3 is Impaired.  The holder of the Class 3 Claim is an Insider and its vote to accept or reject the Plan will be disregarded under section 1129(a)(10).

(d)    **Class 4 — General Unsecured Claims**

(1)    *Classification*: Class 4 consists of any General Unsecured Claims.

(2)    *Treatment*:  Each holder of an Allowed Class 4 Claim shall receive a cash Distribution equal to its Pro Rata share of the General Unsecured Claims Cash Pool.

(3)    *Voting*: Class 4 is Impaired.  Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

(e)    **Class 5 — Nationwide Consumer Borrower Class Claim**

(1)    *Classification*: Class 5 consists of a single class claim of the Nationwide Consumer Borrower Class.

(2)    *Treatment*:  The Nationwide Consumer Borrower Class Claim shall be treated in accordance with the Section 3.5 of this Plan.

(3)    *Voting*: Class 5 is Impaired.  The Nationwide Consumer Borrower Class Representatives are entitled to submit a single vote to accept or reject the Plan on behalf of the Nationwide Consumer Borrower Class.

(f)    **Class 6 – Equity Interests**

(1)    *Classification*: Class 6 consists of the Equity Interests.

(2)    *Treatment*:  Holders of the Equity Interests shall have their Equity Interests cancelled on the Effective Date.

(3)    *Voting*:  Class 6 is Impaired.  Holders of the Equity Interests are deemed to have rejected the Plan.

**3.3    <u>Special Provision Governing Unimpaired Claims</u>**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Litigation Trustee regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

18

**3.4**    **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Committee shall request the Bankruptcy Court to deem the Plan accepted by the holders of such Claims in such Class.

**3.5**    **Nationwide Consumer Borrower Class**

The Nationwide Consumer Borrower Class shall be made up of all Nationwide Consumer Borrowers.  The Nationwide Consumer Borrower Class Claim shall be allowed as an unsecured claim in the amount of $775,000,000, or in the event the amount is determined by a decision of the Bankruptcy Court, then the Nationwide Consumer Borrower Class Claim shall be in that amount.  No other claims of any members of the Nationwide Consumer Borrower Class shall be allowed for distribution purposes.  Distributions to members of the Nationwide Consumer Borrower Class shall be governed by the Plan and the Litigation Trust Agreement.

Distributions to members of the Nationwide Consumer Borrower Class shall be allocated as follows:

o    Tier 1: the following states: Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Ohio, South Dakota, Vermont, Virginia, and Wisconsin.  Tier 1 shall receive 70% of the Litigation Trust Proceeds (the "**Tier 1 Allocation**"); and

o    Tier 2: the following states: Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Washington, West Virginia, Washington D.C., and Wyoming.  Tier 2 shall receive 30% of the Litigation Trust Proceeds (the "**Tier 2 Allocation**").

o    Tier 3: states other than Tier 1 states and Tier 2 states.  Tier 3 shall not receive any of the Litigation Trust Proceeds, and shall include the states of Nevada and Utah.

Each member of the Nationwide Consumer Borrower Class in a Tier 1 state shall receive a Pro Rata Distribution of the Tier 1 Allocation calculated based on the total amount paid by such Class member on Eligible Tribal Loans as reflected on the applicable tribal lender's books and records available to the Debtor.

Each member of the Nationwide Consumer Borrower Class in a Tier 2 state shall receive a Pro Rata distribution of the Tier 2 Allocation calculated based upon the total amount of interest, and of charges, paid by such Class member on Eligible Tribal Loans, as reflected on the tribal lender's books and records available to the Debtor, over the usury limit in such state applicable to unsecured installment loans issued by lenders subject to such state's laws in a similar dollar amount as the Eligible Tribal Loans.

19

Members of the Nationwide Consumer Borrower Class in a Tier 3 state shall not receive any monetary distribution.

Notwithstanding anything in this Plan or the Confirmation Order, Distributions from the Litigation Trust to individual members of the Nationwide Consumer Borrower Class shall not exceed the amount each of those consumers paid in excess of principal on his or her Eligible Tribal Loans.

As set forth more fully in the Litigation Trust Agreement the Nationwide Consumer Borrower Class shall be represented by the following firms:

- Kelly & Guzzo, P.L.C.;
- Neligan LLP;
- Consumer Litigation Associates, P.C.;
- Caddell & Chapman;
- Terrell Marshall Law Group PLLC;
- Berger Montague; and
- Gupta Wessler LLP.

The Nationwide Consumer Borrower Class Representatives shall receive the requested service awards in the amount of $5,000 as representatives of the Nationwide Consumer Borrower Class pursuant to the terms of the Litigation Trust Agreement.

## ARTICLE IV

## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

### 4.1    Restructuring Transactions

On the Effective Date, the Committee shall implement the "Restructuring Transactions". The actions to implement the Restructuring Transactions may include: (a) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, interest, or right consistent with the terms of the Plan; (b) creation of the Litigation Trust; and (c) all other actions necessary or appropriate and consistent with the Plan and Confirmation Order, including making filings or recordings that may be required by applicable law in connection with the Plan.

### 4.2    Corporate Action

Upon the Effective Date, the Committee shall be authorized to implement the Restructuring Transactions.  Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including the implementation of the Restructuring Transactions.  On or (as applicable) before the Effective Date, the appropriate manager or officers of the Debtor shall be ordered and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor, including any and all other agreements, documents, securities, and instruments relating to the

20

foregoing.  The authorizations and approvals contemplated by this Article 4.2 shall be effective notwithstanding any requirements under non-bankruptcy law.

**4.3      Funding and Administration of Reserve Accounts**

On the Effective Date, the Debtor and the Debtor's "Collection Agent" (Daniel J. "Corky" Sherman or his successor as applicable) pursuant to the Order Granting Motion to Approve Settlement Agreement and Release Between the Lac Vieux Desert Band of Lake Superior Chippewa Indians, Big Picture Loans, LLC, Eventide Credit Acquisitions, LLC and Certain other Limited Parties to the settlement Agreement ("**BPL Settlement**") [Doc. No. 410] shall cause all cash to be transferred to the Escrow Account.  The Collection Agent shall also direct Big Picture Loans to send all future payments to be made pursuant to the BPL Settlement to the Litigation Trustee, and the Collection Agent shall immediately forward any Cash received after the Effective Date to the Litigation Trustee.  The Collection Agent's obligations under the BPL Settlement shall be terminated on the Effective Date excepts as set forth herein.  On the Effective Date, Escrow Funds shall be transferred to and shall vest in the Estate and shall be utilized, among other purposes set forth in the Plan, to fund the Reserve Accounts in accordance with this Article 4.3 of the Plan.  All Cash remaining in the Estate immediately after funding the Reserve Accounts and the payment of any other amounts required by this Plan, shall vest in, and be transferred to, the Litigation Trust.

(a)      The Administrative and Priority Claims Reserve

On the Effective Date, the Administrative and Priority Claims Reserve shall be established and funded in the amount of the aggregate Administrative and Priority Claims Estimate.  Subject to the terms of the Plan, the Litigation Trustee shall pay each Allowed Administrative Expense Claim as provided for in Article 2.1 of this Plan.  In the event that excess Cash remains in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Expense and Priority Claims, or at such time as the Cash in the Administrative and Priority Claims Reserve exceeds the Face Amount of the unpaid Administrative Expense and Priority Claims, such Cash shall be transferred to the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(b)      The General Unsecured Claims Cash Pool

On the Effective Date, or as soon as reasonably practicable thereafter, the General Unsecured Claims Cash Pool shall be established and funded from remaining cash in the Estate.  Subject to the terms of the Plan, the Litigation Trustee or its designee shall distribute the Cash in the General Unsecured Claims Cash Pool Pro Rata to holders of Allowed Class 4 Claims.  The Litigation Trustee shall establish, fund and administer the Disputed General Unsecured Claims Reserve in accordance this Plan from the Cash deposited into the General Unsecured Claims Cash Pool.  In the unlikely event that the amount in the General Unsecured Claims Cash Pool exceeds the allowed amount of General Unsecured Claims, then such excess funds shall be transferred to the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(c)      The Substantial Contribution Fund

21

On the Effective Date, or as soon as reasonably practicable thereafter, the Substantial Contribution Fund shall be funded and disbursed to the holders of the Allowed Substantial Contribution Claims. The amount of the Substantial Contribution Fund shall be equal to (i) 33% of the remaining BPL Settlement payments outstanding as of the entry of the Confirmation Order; and (ii) _[tbd]_ % of the net proceeds recovered by the Litigation Trust from the Avoidance Actions. Notwithstanding the foregoing, the Substantial Contribution Fund shall be subordinate to the accrued and unpaid fees and expenses of the Committee's Professionals, which shall be paid in full prior to the payment of the Allowed Substantial Contribution Claims, unless otherwise agreed to in writing by such Professionals.

(d)      The Professional Fee Escrow

On or before the Effective Date, the Professional Fee Escrow shall be established and funded by the Debtor and Collection Agent in Cash in the amount of the aggregate Professional Fee Estimate. Each Professional Claim shall be paid from the Professional Fee Escrow as provided for in Article 2.2 of this Plan. In the event that excess Cash remains in the Professional Fee Escrow after payment of all Allowed Professional Fee Claims, such Cash shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(e)      The Litigation Trust Initial Funding

On the Effective Date, or as soon as reasonably practicable thereafter, after the establishment and funding of the Reserve Accounts and payment of any other amounts required by the Plan, the Litigation Trust Initial Funding shall be deposited into an account owned and controlled by the Litigation Trustee in trust for the holders of Allowed Consumer Borrower Claims.

**4.4      Books and Records**

The Litigation Trustee shall receive possession of and the right to use and maintain copies of all of Debtor's books and records, whether hard copy or electronically stored information (the "**Books and Records**"). The Debtor shall provide reasonable advance notice with reasonable specificity to the Litigation Trustee prior to destroying any Books and Records and provide the Litigation Trustee with the opportunity, at the Litigation Trust's expense, to review, and obtain, such Books and Records prior to such destruction. The Litigation Trustee shall have the unilateral right to destroy Books and Records received from the Debtor. For the avoidance of doubt, the Litigation Trustee and his professionals in their capacities as such shall have full reasonable access to all such Books and Records for the purpose of investigating and pursuing the Causes of Action, and the Litigation Trustee shall be deemed own the attorney-client privilege, work product doctrine, or other privilege or immunity attaching to any such Books and Records necessary for investigating and pursuing the Causes of Action, or obtaining any right to payment.

On the Effective Date, or as soon as reasonably practicable thereafter, the Litigation Trustee shall receive a copy of the Debtor's Books and Records held by any litigation vendor, at the expense of the Litigation Trust, in a form and manner whereby it is commercially and technologically reasonable to obtain such copy.

60754/0002-49429237v3

The term "Confidential Business Information" shall mean confidential PII, or any trade secrets or other confidential business information related to (a) financial information, statements, or records of the Debtor except in connection with pursuing a Cause of Action, (b) typical confidential employee information, (c) risk analysis products and methods (such as models, data and know how), (d) marketing services, strategies and methodologies, and (e) the technology platforms, systems, products and all other Intellectual Property, including without limitation software development and programs and related documentation contained in the Books and Records.

**4.5    Section 1145 Exemption**

To the extent beneficial interests in the Litigation Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the exemption provisions of section 1145 of the Bankruptcy Code shall apply to such beneficial interests.

**4.6    Exemption from Certain Taxes and Fees**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**4.7    Subordination**

The allowance, classification, and treatment of all Claims and Equity Interests under the Plan shall conform to and be consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Equity Interests, and the Plan shall recognize and implement any such rights. Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Committee or the Litigation Trustee on or after the Effective Date

23

reserve the right to seek to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 4.8      Cancellation of Notes, Instruments, Certificates, and Other Documents

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates, and other documents evidencing Claims against the Debtor shall be canceled; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of Allowed Claims to receive Distributions under the Plan and (b) allowing and preserving the rights of the Litigation Trustee, as applicable, to make Distributions on account of Allowed Claims as provided herein.

### 4.9      Effectuating Documents; Further Transactions

On and after the Effective Date, the Committee and the manager, officers and members of the Debtor are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

## ARTICLE V

## THE LITIGATION TRUST

### 5.1      Establishment of the Litigation Trust

The Litigation Trust shall be established and shall become effective on the Effective Date. The Litigation Trust shall be governed and administered in accordance with this Plan and the Litigation Trust Agreement.

### 5.2      Transfer of Assets to the Litigation Trust

On the Effective Date, any and all assets and property of the Estate shall be transferred to the Litigation Trust and administered by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement, including, but not limited to, the Causes of Action, refunds, deposits, remnant assets, the General Unsecured Claims Cash Pool, and any remaining funds in the Professional Fee Escrow following the payment of all Allowed Professional Claims.

### 5.3      Litigation Trust Funding

On the Effective Date, or on such other date as is set forth in the Litigation Trust Agreement, the Litigation Trust shall be established and receive the Litigation Trust Initial Funding. Additionally, all estate assets including but not limited to payments received from Big Picture Loans pursuant to the BPL Settlement, and any net proceeds of the Causes of Action received subsequent to the Effective Date shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

24

**5.4**     **Causes of Action**

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Causes of Action and proceeds therefrom shall be transferred and assigned by the Debtor and the Estates (and deemed transferred) to the Litigation Trust free and clear of all Claims, Liens, charges, encumbrances, and rights and interests, without the need for any Entity to take any further action or obtain any approval and the Litigation Trust shall be authorized as the representative of the Estate to pursue the Causes of Action.  In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trustee shall have the exclusive right to commence and pursue, as appropriate, in his sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, any and all Causes of Action, and the Litigation Trustee's right to commence, prosecute, or settle any such Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date. The Debtor expressly reserves such Cause of Action, which shall be transferred by the Debtor to the Litigation Trust pursuant to the Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order or any other Final Order (including the Confirmation Order).  In addition, the Litigation Trustee reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.  Causes of Action include, but are not limited to:

- Intentional or constructive fraudulent conveyances under section 544(b) of the Bankruptcy Code and applicable law, and section 548 of the Bankruptcy Code.
- Preference payments under section 547 of the Bankruptcy Code.
- Turnover of payments received as advance indemnification payments under section 542 of the Bankruptcy Code or other theories and recovery of same under section 550.
- Breach of contract or breach of the implied covenant of good faith and fair dealing.
- Breach of fiduciary duty.
- Common law and statutory conspiracy.
- Claims for civil remedies against racketeer influenced and corrupt organizations under chapter 96 of title 18 of the United States Code.
- Claims for overpayments, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract or prospective economic advantage, and civil conspiracy, whether under federal law or the laws of any state.
- Equitable subordination, including under section 510(c) of the Bankruptcy Code.
- Aiding and abetting any act or omission of any Entity.
- Objections to fees, interest, or other charges paid by the Debtor.

The failure of the Committee to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release of such claim, right of action, suit or proceeding. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Litigation Trustee will not pursue any and all

25

available Causes of Action against them.  An initial list of the Causes of Action may be annexed to the Disclosure Statement or provided in the Plan Supplement.   While the list provides notice to certain Persons and Entities of the existence of Causes of Action against them, it is not intended to limit the Causes of Action the Litigation Trustee may prosecute as others may be discovered after the Litigation Trustee receives copies of the Books and Records.

### 5.5    Litigation Trust Distributions

The Litigation Trustee shall liquidate the Causes of Action and distribute any proceeds therefrom in accordance with this Plan and the Litigation Trust Agreement.  The Litigation Trustee also shall administer the Unsecured Claims Cash Pool and make distributions to Allowed General Unsecured Claims in accordance with this Plan.

### 5.6    Litigation Trust Agreement

A copy of the Litigation Trust Agreement shall be filed, no later than five (5) business days before the deadline for voting on the Plan, as part of the Plan Supplement.   The Committee represents that the Litigation Trust Agreement shall include, without limitation, the following terms:

(a)    **Duration of Trust**

The Litigation Trust shall have an initial term of five (5) years from the Effective Date. Notwithstanding the foregoing, the LTOB may extend such term for an additional finite term provided that the Litigation Trust does not become subject to the Securities Exchange Act of 1934, as amended (as now in effect or hereafter amended) and provided further that the Bankruptcy Court approves an extension based upon a finding that an extension is necessary for the Litigation Trust to resolve all Claims, reduce all applicable Litigation Trust Assets to Cash and liquidate.  The Litigation Trustee shall at all times endeavor to liquidate the Litigation Trust Assets expeditiously, and in no event shall the Litigation Trustee unduly prolong the duration of the Litigation Trust. Unless the Chapter 11 Case has previously been dismissed, upon termination of the Litigation Trust, the Litigation Trustee shall advise the Bankruptcy Court in writing of its termination. Notwithstanding the foregoing, after the termination of the Litigation Trust, the Litigation Trustee shall have the authority to exercise all the powers, authorities and discretions herein conferred solely for the purpose of winding up the affairs of the Litigation Trust.  The Litigation Trustee shall retain the books, records and files that shall have been delivered to or created by the Litigation Trustee; provided, however, subject to the requirements in the Disclosure Statement, in the Plan, and of applicable law, that at the Litigation Trustee's discretion, all of such records and documents may be destroyed at any time after two (2) years from the date of an order of the Bankruptcy Court terminating the Litigation Trust. As soon as practicable after the liquidation or abandonment of all Causes of Action, the Litigation Trustee shall seek entry of a Final Order closing the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

26

(b)      **Litigation Trust Oversight Board**

On the Effective Date, the LTOB shall be established.  The members of the LTOB shall disclose to the Litigation Trustee and all other members of the LTOB whether any Claim or Interest that is held by them personally, by any relative or by any entity with which they are employed or affiliated, has been sold, transferred or otherwise assigned, disposed of or satisfied by any entity other than the Litigation Trust.  The members of the LTOB shall serve without compensation, but shall be entitled to reimbursement of reasonable expenses. The LTOB shall be comprised of a representative from each of the firms designated as Nationwide Consumer Borrower Class Counsel in Section 3.5.  In the case of an inability or unwillingness of any member of the LTOB to serve subsequent to his or her original appointment and acceptance, such member shall be replaced by designation of the remaining members of the LTOB and the Litigation Trustee.  If any position on the LTOB remains vacant for more than thirty (30) days, such vacancy may be filled within fifteen (15) days thereafter by the designation of the Litigation Trustee without the requirement of a vote by the other members of the LTOB.  Each replacement member of the LTOB must be a beneficiary of the Litigation Trust.  The LTOB will continue to fully function even while a position on the LTOB remains vacant.

(c)      **Appointment, Compensation, and Powers of Litigation Trustee**

The Litigation Trustee shall serve as the trustee for the Litigation Trust.  The appointment of the Litigation Trustee shall be effective as of the Effective Date. Following the Effective Date, in the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation, incompetency or removal of the Litigation Trustee, the members of the LTOB shall, by majority vote, designate a successor Litigation Trustee.  Such appointment shall specify the date when such appointment shall be effective.  Every successor Litigation Trustee appointed shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Litigation Trustee an instrument accepting the appointment and shall additionally file with the Bankruptcy Court an affidavit demonstrating that such Person is a "disinterested person," as defined by Section 101(14) of the Bankruptcy Code, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Litigation Trustee.  The Litigation Trustee shall be compensated and reimbursed for reasonable costs and expenses as set forth in, and in accordance with, the Litigation Trust Agreement.  The Litigation Trustee shall have the powers and duties set forth in this Plan and in the Litigation Trust Agreement.  The Litigation Trustee may retain professionals to aid in the performance of his or her responsibilities pursuant to the terms of the Plan and the Litigation Trust Agreement, including, without limitation, the prosecution of the Causes of Action, to administer, dispute, object to or compromise or otherwise resolve all Claims against the Debtor and to make Distributions to holders of Allowed Claims. The Litigation Trustee may retain Cole Schotz P.C. and/or such other law firm(s) as the Litigation Trustee determines necessary to liquidate the Litigation Trust Assets and to perform such other functions as may be appropriate to carry out the primary purposes of the Litigation Trust.  The Litigation Trustee may commit the Litigation Trust to and shall pay such law firm(s) the reasonable compensation from the Litigation Trust Assets for services rendered and expenses incurred, which expenses may include, without limitation, the fees and expenses of Persons retained by such counsel to perform any such services, including, without limitation, expert witnesses and

27

consultants.  The Litigation Trustee may also engage such law firm(s) on a contingent fee basis or hybrid hourly fee / contingency basis, as permitted by applicable law.  The Litigation Trustee may retain such accountants, experts, advisors, consultants, investigators, appraisers, auctioneers, claims and disbursing agents or other professionals as are advisable to carry out the purposes of the Litigation Trust.

**5.7**     **Indemnification and Exculpation**

The Litigation Trustee, and the Litigation Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Litigation Trust, except those acts arising out of its own willful misconduct or gross negligence, and shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Litigation Trust, except for any actions or inactions involving willful misconduct or gross negligence.   Any indemnification or reimbursement claim of the Litigation Trustee, or any other party entitled to indemnification or reimbursement under this subsection) shall be satisfied from the Litigation Trust.

## ARTICLE VI

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1**     **Assumption and Rejection of Executory Contracts and Unexpired Leases**

All costs and expenses, if any, related to the assumption of executory contracts by the Committee, including but not limited to, Cure costs, shall be the sole responsibility of, and paid for by, the Litigation Trust.  The following shall be the treatment of Executory Contracts and Unexpired Leases:

Unless an Executory Contract or Unexpired Lease (i) is expressly identified on the Assumption Schedule; (ii) has been previously assumed by the Debtor by Final Order or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date and not subsequently rejected, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is otherwise assumed pursuant to the terms herein, each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejection of all such Executory Contracts and Unexpired Leases.

Except as otherwise provided herein or agreed to by the Committee and the applicable counterparty, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition

28

nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

If a Claim arises from the rejection of any Executory Contract or Unexpired Lease pursuant to this Plan, such Claim shall be barred and unenforceable against the Debtor or Litigation Trust, or their property unless a proof of claim asserting such Claim is filed with the Bankruptcy Court or the Solicitation Agent and served upon the Litigation Trustee within thirty (30) days after the Effective Date.  Unless otherwise ordered by the Bankruptcy Court, any such rejection damages Claims shall be treated as General Unsecured Claims under the Plan.

## 6.2    Insurance Policies

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Litigation Trust if necessary to continue the insurance policies in full force) all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption (and assignment, if necessary) of each of the insurance policies.  For the avoidance of doubt, nothing in this provision shall impair the Estate's right to the proceeds of the Insurance Rights.

## 6.3    Cure of Defaults and Objections to Cure and Assumption

The Litigation Trust shall be solely responsible for paying Cures, if any, on the Effective Date, as soon as practicable thereafter, or such other date as agreed to by the counterparty.  Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid to a counterparty must be served on counsel to the Litigation Trust on or before the Cure Objection Deadline.  Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable, without the need for any objection by the Litigation Trust or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure.  The Litigation Trustee also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court.  In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court by the Cure Objection Deadline.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is a dispute regarding Cure, the ability of the Litigation Trust to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption and assignment, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption and assignment, or as may be agreed upon by the Litigation Trust and the counterparty to the Executory Contract or Unexpired Lease.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and the payment of any Cures shall result in the full release and satisfaction of Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed and assigned Executory Contract or Unexpired Lease at any time prior to the Effective Date.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed and assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

**6.4      Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Committee or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Litigation Trust shall have forty-five (45) days following entry of a Final Order resolving such dispute to determine whether to assume, assign or reject the related contract or lease, if applicable.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

**7.1      Distributions on Account of Claims Allowed as of the Effective Date**

(a)      **Distributions to Holders of Allowed Claims Other than Members of the Nationwide Consumer Borrower Class**

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Litigation Trustee on or after the Effective Date, as the case may be, and the holder of the applicable Claim or Equity Interest, on the Initial Distribution Date, the Litigation Trustee shall make Distributions under the Plan on account of Claims Allowed on or before the Effective Date. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash, and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or, at the Litigation Trustee's election, through regular installment payments of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code.

(b)      **Distributions to Members of the Nationwide Consumer Borrower Class**

The Class Administrator, on behalf of the Litigation Trustee, shall make Distributions to members of the Nationwide Consumer Borrower Class in accordance with the Plan and Litigation Trust Agreement.  The Debtor shall not prosecute, settle, sell, transfer, assign, waive or release any of the Causes of Action, all of which are preserved for and shall be transferred to the Litigation Trust.

To the extent not provided by the Debtor prior to the Effective Date, the Litigation Trustee shall provide on a confidential basis sufficient information to the Class Administrator, and any subsequently appointed Class Administrator for the Nationwide Consumer Borrower Class, to make an initial Distribution and any subsequent Distributions to the members of the Nationwide Consumer Borrower Class in accordance with the Plan and Litigation Trust Agreement.

**7.2     Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until such Claim becomes an Allowed Claim.

**7.3     Delivery of Distributions**

(a)     **Record Date for Distributions to Holders of Claims**

On the Confirmation Date, the Claims Register shall be closed and the Litigation Trustee on and after the Effective Date shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Confirmation Date. Notwithstanding the foregoing, if a Claim is transferred and the Claims Agent has been notified in writing of such transfer no later than ten (10) days before the Effective Date, the Litigation Trustee shall make Distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.  The Litigation Trustee on and after the Effective Date may, but shall have no obligation to, recognize transfers occurring after ten (10) days before the Effective Date.

(b)     **Distribution Process**

Except as otherwise provided herein, Distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to beneficial holders of record as of the Confirmation Date: (1) to the address of such holder as set forth in the Books and Records of the Debtor (or if the Claims Agent has been notified in writing, on or before the date that is ten (10) days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtor's Books and Records, no Proof of Claim has been filed and the Claims Agent has not received a written notice of a change of address on or before the date that is ten (10) days before the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Case on the holder's behalf.  The Litigation Trustee and the Claims Agent shall not incur any liability whatsoever on account of any Distributions under the Plan.

(c)     **Compliance Matters**

In connection with the Plan, to the extent applicable, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Litigation Trustee

31

shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate.  The Litigation Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances, to the extent applicable.

(d)    **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition on the Petition Date, for all purposes under the Plan, including voting, allowance and distribution.

(e)    **Fractional, Undeliverable, and Unclaimed Distributions**

(1)    *Fractional Distributions*.  Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(2)    *Undeliverable Distributions*.

A.    If any Distribution to a holder of an Allowed Claim other than a member of the Nationwide Consumer Borrower Class is returned as undeliverable, no further Distributions shall be made to such holder unless and until such holder provides notification to the Litigation Trustee or its designee of the then-current address or other necessary information for delivery, at which time all currently due missed Distributions shall be made to such holder on the next Distribution Date.  Undeliverable Distributions shall remain in the possession of the Litigation Trustee or its designee until such time as a Distribution becomes deliverable, or such Distribution reverts to the Litigation Trust or is canceled pursuant to Article 7.3(e)(3), and shall not be supplemented with any interest, dividends, or other accruals of any kind.

B.    The Class Administrator shall attempt to distribute all available funds that are distributable to members of the Nationwide Consumer Borrower Class pursuant to the Plan and Litigation Trust Agreement to class members that can be located.  Any Unclaimed Distributions to such members shall be distributed pursuant to the Tier 1 Allocation and Tier 2 Allocation to all other members who cashed their initial Distribution checks. At the discretion of the Litigation

32

Trustee and the Litigation Trust Oversight Board, one additional Distribution to members may be attempted if reasonably practicable to do so.

(3) *Reversion*.    Any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.  Subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall contribute all such Unclaimed Distributions to a charity selected by the Litigation Trustee.  The Claim of any holder of a Claim or its successors with respect to such Unclaimed Distributions shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the Distribution that is an Unclaimed Distribution, to the contrary.

(4) *De Minimis Distributions*.  Except in the case of members of the Nationwide Consumer Borrower Class, the Litigation Trustee shall not be required to, but may in his sole and absolute discretion, make Distributions of Cash in an amount less than $10 to any holder of an Allowed Claim.

(f) **Surrender of Canceled Instruments**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate.  Such Certificate shall be canceled solely with respect to the Debtor and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

## 7.4    Claims Paid or Payable by Third Parties

(a) **Maximum Distribution**

An Allowed Claim that receives (i) Distributions in the Allowed amount of such Claim or (ii) Distributions that combined with Distributions or other consideration provided on the Allowed Claim equal the Allowed amount of such Claim shall, in each case be deemed satisfied in full as to such Allowed Claim, and in no event shall an Allowed Claim receive Distributions in excess of the Allowed amount of such Claim.

(b) **Claims Paid by Third Parties**

The Litigation Trustee on or after the Effective Date, in its sole discretion, may request that a holder of an Allowed Claim certify in writing and provide evidence reasonably acceptable to the Litigation Trustee, as applicable, to confirm whether: (i) the holder of such Claim has received payment in full on account of such Claim from a party that is not a Debtor; or (ii) such holder has been notified by or on behalf of a third party of any future Distributions or payment anticipated or estimated to be made on account of such Claim from such third party.

33

If (i) the Litigation Trustee on or after the Effective Date determines, based on the foregoing, that an Allowed Claim has been satisfied in full in accordance with Article 7.4(a) of the Plan, then unless the Bankruptcy Court orders otherwise, no Distributions shall thereafter be made on account of such Allowed Claim, or (ii) a holder of an Allowed Claim does not comply with this Article, then unless the Bankruptcy Court orders otherwise, the Litigation Trustee shall not be required to make Distributions on account of such Allowed Claim, *provided* that nothing herein shall preclude a holder of an Allowed Claim from challenging such determination in the Bankruptcy Court.

(c)    **Claims Payable by Insurance Carriers**

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim, such Claim shall be disallowed and expunged to the extent of any agreed upon satisfaction in accordance with this Article after notice to such holder of an Allowed Claim and an opportunity for a hearing.

(d)    **Applicability of Insurance Policies**

Except as otherwise provided herein, Distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any rights of any Entity, including insurers, under any policies of insurance.

**7.5    <u>Setoffs</u>**

Except as otherwise expressly provided for herein, the Litigation Trustee on or after the Effective Date, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor or Litigation Trustee on or after the Effective Date, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor or the Litigation Trustee of any such Claims, rights, and Causes of Action that they may possess against such holder. In no event shall any holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor or the Litigation Trustee, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

# ARTICLE VIII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### 8.1   Disputed Claims Process

Except as otherwise provided herein, if an Entity files a Proof of Claim and the Litigation Trustee does not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in this Article VIII. Except as otherwise provided herein, all Proofs of Claim not filed in accordance with the requirements set forth in the Plan shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, the Litigation Trust or their respective property or estates without the need for any objection by the Litigation Trustee, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.2   Prosecution of Objections to Claims

The Committee (before the Effective Date,) and the Litigation Trustee (on and after the Effective Date), shall have the sole authority and power to object to and/or settle General Unsecured Claims on behalf of the Debtor's Estates. The Debtor shall not object to any Claims in the Chapter 11 Case or have standing to be a party in the Claims objection. Any objections to Claims shall be served and filed **on or before the 180th day after the Effective Date** or by such later date as ordered by the Bankruptcy Court. All Claims not objected to by the end of such 180-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Litigation Trustee shall have and retain any and all rights and defenses a Debtor or the Committee had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action.

### 8.3   Estimation of Claims

On and after the Effective Date, the Litigation Trustee shall have the sole authority and power on behalf of the Estate to request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, regardless of whether the Debtor, the Litigation Trustee or any other Person has previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim and any appeal thereof. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement in the Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trustee may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

**8.4** **Recoupment**

In no event shall any holder of Claims be entitled to recoup any Claim against any Claim, right, or Cause of Action of the Debtor or the Litigation Trustee, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**8.5** **No Interest**

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

**8.6** **Disallowance of Claims**

All Claims of any Entity from which property is sought by the Litigation Trustee under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Litigation Trustee alleges is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Litigation Trustee, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE IX

## EFFECT OF CONFIRMATION OF THE PLAN

**9.1** **Dissolution of the Committee**

The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.  On the Effective Date, the Committee shall be dissolved automatically and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Case and this Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Professional Claims and represent the Committee in connection with such Professional Claims.

**9.2** **Discharge of Claims and Termination of Equity Interests**

Except as otherwise provided for herein and effective as of the Effective Date pursuant to section 1141(d) of the Bankruptcy Code: (a) the rights afforded in the Plan and the treatment of all

36

Claims, Equity Interests, and Causes of Action that arose before the Effective Date shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all holders of Claims and Equity Interests, whether known or unknown, notwithstanding whether any such holder has filed a Proof of Claim or Equity Interest or has failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code, regardless of whether a Proof of Claim or Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Litigation Trustee, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

All Equity Interests shall be cancelled, disallowed, released, and extinguished as of the Effective Date, and will be of no further force or effect.

### 9.3 **Exculpation**

**Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim or Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

### 9.4 **Injunction**

**Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Equity Interests are permanently enjoined, from and after the Effective Date, from taking any of the following actions against,**

37

as applicable, the Debtor: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Persons or the property or Estate of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or against the property or Estate of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan.

**9.5**     **Release of Liens**

Except (a) with respect to the Liens securing Other Secured Claims (depending on the treatment of such Claims), or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Litigation Trustee to reflect or effectuate such releases, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Estate.

**9.6**     **Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(c)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE X

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**10.1**     **Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived by the Committee:

(a)      the "Disclosure Statement Approval Order", and the Confirmation Order shall have been entered by the Bankruptcy Court and each shall have become a Final Order;

(b)      the Confirmation Order shall become a Final Order;

(c)      all authorizations, consents, regulatory approvals, rulings or documents (if any) that are necessary for the Plan's effectiveness shall have been obtained;

(d)      all payments and transfers of assets from the Debtor's estate, and all other payments, required under the Plan to be made before the Effective Date shall have been made in accordance with the terms of the Plan; and

(e)      with respect to all documents, applications, and agreements necessary to implement the Plan: (1) all conditions precedent to such documents, applications, and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents, applications, and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable governmental units, regulators, or commissions in accordance with applicable laws; and (3) such documents, applications, and agreements shall have been effected or executed.

## 10.2   Substantial Consummation

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## ARTICLE XI

## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## 11.1   Modification of Plan

Effective as of the date hereof: (a) the Committee reserves the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Litigation Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

## 11.2   Effect of Confirmation on Modifications

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

## 11.3   Revocation or Withdrawal of Plan

60754/0002-49429237v3

The Committee reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Committee revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (2) prejudice in any manner the rights of any Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Entity.

## ARTICLE XII

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of an Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b)      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) any dispute regarding whether a contract or lease is or was executory or expired; and (d) any dispute regarding rejection damages claims.

(d)      ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(e)      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and

40

other agreements or documents approved by Final Order in the Chapter 11 Case and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

(g)    enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(h)    grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(j)    hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) any adversary proceedings related to the Chapter 11 Case; (b) with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the holder of a Claim or an Equity Interest for amounts not timely repaid pursuant to Article 7.4(a); (c) with respect to the injunctions, and other provisions contained in Article IX, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (d) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (e) related to section 1141 of the Bankruptcy Code;

(k)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l)    consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(m)    issue any order in aid of implementation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(n)    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)    enter an order or Final Decree concluding or closing the Chapter 11 Case;

(p)    enforce all orders previously entered by the Bankruptcy Court; and

(q)    hear any other matter not inconsistent with the Bankruptcy Code.

The Confirmation Order shall provide that the Bankruptcy Court's jurisdiction over the Litigation Trust, Litigation Trust's Assets, and Litigation Trustee continues until the Litigation Trust Assets have been fully liquidated and distributed pursuant to the Plan and Litigation Trust Agreement,

41

and the Litigation Trust has been resolved, notwithstanding any Final Decree (subject to a motion to reopen the Chapter 11 Case).

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1    Additional Documents

On or before the Effective Date, the Committee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Litigation Trustee, Debtor as applicable, and all holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 13.2    Payment of Statutory Fees

Subject to Article 4.1, all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

### 13.3    Reservation of Rights; Binding Effect

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.

Upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Litigation Trustee and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

### 13.4    No Admission

Notwithstanding anything else herein, nothing in the Plan or the Confirmation Order shall constitute an admission or agreement by the Debtor concerning the solvency or insolvency of the Debtor.

### 13.5    Closing of Chapter 11 Case

The Litigation Trustee shall, as promptly as practicable after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required to obtain closures of the Chapter 11 Case under Bankruptcy Rule 3022, any applicable local rules, and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

### 13.6    Service of Documents

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or the Litigation Trustee, as applicable, shall be served on:

| | |
|---|---|
| **Debtor** | **Eventide Credit Acquisitions, LLC**<br>3805 Greenbrier Drive<br>Dallas, TX 75225<br>Attn:   Matt Martorello |
| **Counsel to Debtor** | **Vartabedian Hester & Haynes LLP**<br>301 Commerce Street, #3635<br>Fort Worth, Texas 76102<br>Attn.:  Suki Rosen, Equire, Jeffrey Prostok, Esquire |
| **Litigation Trustee** | _____<br>**[tbd by Committee]** |

### 13.7    Term of Injunctions or Stays

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect during the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan, the Confirmation Order shall remain in full force and effect in accordance with their terms.**

### 13.8    Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

### 13.9    Plan Supplement Exhibits

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

60754/0002-49429237v3

### 13.10  <u>Non-Severability</u>

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Committee's consent, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

*[Remainder of page intentionally left blank.]*

Dated: September 4, 2025

60754/0002-49429237v3

*/s/ Ian R. Phillips*
Ian R. Phillips, Esq. (TX Bar No. 24091239)
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX  75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
iphillips@coleschotz.com

-and-

Gary H. Leibowitz, Esq. (*Admitted Pro hac vice*)
H.C. Jones, III, Esq. (*Admitted Pro hac vice*)
J. Michael Pardoe, Esq. (*Admitted Pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: (410) 230-0660
Facsimile: (410) 230-0667
gleibowitz@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com


*Counsel to the Official Committee of Unsecured Creditors*

60754/0002-49429237v3