Ian R. Phillips, Esq. (TX Bar No. 24091239)
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
iphillips@coleschotz.com

*Counsel to the Official Committee of Unsecured Creditors*

Gary H. Leibowitz, Esq. (*Admitted Pro hac vice*)
H.C. Jones, III, Esq. (*Admitted Pro hac vice*)
J. Michael Pardoe, Esq. (*Admitted Pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: (410) 230-0660
Facsimile: (410) 230-0667
gleibowitz@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORTH WORTH DIVISION

| | |
|---|---|
| In re:<br><br>EVENTIDE CREDIT ACQUISITIONS, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-90007 (XMX) |

## DISCLOSURE STATEMENT ACCOMPANYING OFFICIAL
## COMMITTEE OF UNSECURED CREDITOR'S FIRST AMENDED CHAPTER 11
## PLAN OF LIQUIDIATION OF EVENTIDE CREDIT ACQUISITIONS, LLC

**THIS IS A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126. THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED TO THE COURT FOR APPROVAL BUT HAS NOT YET BEEN APPROVED. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

**SEPTEMBER 4, 2025**

---

[1] The last 4 digits of the Debtor's tax identification number is 1353.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.  THE TRANSMISSION OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.  AFTER THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL BE MATERIALLY ACCURATE, OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NONBANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE FOREGOING REGULATORY ENTITY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.  THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. PERSONS OR ENTITIES TRADING IN, OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING, SECURITIES OF THE DEBTOR SHOULD NOT RELY UPON THIS DISCLOSURE STATEMENT FOR SUCH PURPOSES AND SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE, OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, AS A STIPULATION OR AS A WAIVER, BUT, RATHER, AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN ON HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTOR.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTOR (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS OR INTERESTS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

## <u>TABLE OF CONTENTS</u>

ARTICLE I PURPOSE AND FUNCTION OF THE DISCLOSURE STATEMENT .................. 1

ARTICLE II GENERAL INFORMATION CONCERNING THE DEBTOR'S BUSINESS ....... 3

2.1    Background, Restructuring, and Bankruptcy Filings ....................................... 3

2.2    Corporate Structure ........................................................................................ 6

2.3    Pre-Petition Capital Structure ........................................................................ 8

ARTICLE III CLAIMS IN THE CASE ................................................................................. 8

ARTICLE IV SUMMARY OF THE PLAN OF REORGANIZATION ..................................... 12

4.1    Treatment of Unclassified Claims ................................................................ 12

4.2    Summary of Classification and Treatment of Claims and Interests ............. 14

4.3    Means for Implementation of the Plan .......................................................... 16

ARTICLE V THE LITIGATION TRUST ............................................................................. 21

5.1    Establishment of the Litigation Trust ........................................................... 21

5.2    Transfer of Assets to the Litigation Trust ..................................................... 21

5.3    Litigation Trust Funding ............................................................................... 21

5.4    Causes of Action .......................................................................................... 21

5.5    Litigation Trust Distributions ....................................................................... 22

5.6    Litigation Trust Agreement ........................................................................... 23

ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
............................................................................................................................................ 25

6.1    Assumption and Rejection of Executory Contracts and Unexpired Leases ................. 25

6.2    Insurance Policies ........................................................................................ 25

6.3    Cure of Defaults and Objections to Cure and Assumption .......................... 26

6.4    Reservation of Rights ................................................................................... 26

ARTICLE VII PROCEDURES GOVERNING DISTRIBUTIONS ........................................ 27

7.1    Distributions on Account of Claims Allowed as of the Effective Date ....................... 27

7.2    Special Rules for Distributions to Holders of Disputed Claims ................... 27

7.3    Delivery of Distributions .............................................................................. 27

7.4    Claims Paid or Payable by Third Parties ..................................................... 30

7.5    Setoffs .......................................................................................................... 30

ARTICLE VIII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ........................... 31

8.1    Disputed Claims Process ............................................................................. 31

8.2    Prosecution of Objections to Claims ........................................................... 31

8.3    Estimation of Claims .................................................................................... 32

8.4   Recoupment ........................................................................................................ 32

8.5   No Interest ........................................................................................................... 32

8.6   Disallowance of Claims ...................................................................................... 32

ARTICLE IX EFFECT OF CONFIRMATION OF THE PLAN ............................................. 33

9.1   Dissolution of the Creditors' Committee ............................................................ 33

9.2   Discharge of Claims and Termination of Interests ............................................. 33

9.3   Exculpation .......................................................................................................... 33

9.4   Injunction ............................................................................................................ 34

9.5   Release of Liens .................................................................................................. 34

9.6   Reimbursement or Contribution ......................................................................... 34

ARTICLE X CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ........................... 35

10.2  Substantial Consummation .................................................................................. 35

10.3  Effect of Non-Occurrence of Conditions to Consummation .............................. 35

ARTICLE XI MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....... 36

11.1  Modification of Plan ........................................................................................... 36

11.2  Effect of Confirmation on Modifications ........................................................... 36

11.3  Revocation or Withdrawal of Plan ..................................................................... 36

ARTICLE XII RETENTION OF JURISDICTION ................................................................. 36

ARTICLE XIII OTHER MISCELLANEOUS PLAN PROVISIONS ...................................... 38

13.1  Additional Documents ........................................................................................ 38

13.2  Payment of Statutory Fees .................................................................................. 38

13.3  Waiver of Federal Rule of Civil Procedure 62(a) .............................................. 38

13.4  Reservation of Rights; Binding Effect ................................................................ 39

13.5  Closing of Chapter 11 Case ................................................................................ 39

13.6  Service of Documents ......................................................................................... 39

13.7  Term of Injunctions or Stays .............................................................................. 40

13.8  Entire Agreement ................................................................................................ 40

13.9  Plan Supplement Exhibits ................................................................................... 40

13.10    Non-Severability ............................................................................................. 40

ARTICLE XIV SOLICITATION AND VOTING PROCEDURES ........................................ 40

14.1  Classes Entitled to Vote on the Plan .................................................................. 40

14.2  Votes Required for Acceptance by a Class ......................................................... 41

14.3  Certain Factors to be Considered Prior to Voting .............................................. 41

14.4  Voting Procedures ............................................................................................... 41

ARTICLE XV CONFIRMATION PROCEDURES ................................................................... 42

15.1 The Confirmation Hearing .......................................................................... 42

15.2 Confirmation Standards ............................................................................. 43

15.3 Best Interests Test / Liquidation Analysis ................................................. 44

15.4 Funding and Feasibility of the Chapter 11 Plan.......................................... 44

15.5 Alternatives to Confirmation and Consummation of the Plan..................... 44

ARTICLE XVI CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES..................... 44

16.1 Tax Consequences for the Debtor............................................................... 45

16.2 Tax Consequences for Holders of Claims and Interests .............................. 46

ARTICLE XVII CERTAIN FACTORS TO BE CONSIDERED ............................................. 47

17.1 General Considerations ............................................................................... 47

17.2 Certain Tax Implications of the Chapter 11 Case ....................................... 48

17.3 Disclosure Statement Disclaimer ............................................................... 48

ARTICLE XVIII CONCLUSION AND RECOMMENDATION ............................................ 50

# ARTICLE I
## PURPOSE AND FUNCTION OF THE DISCLOSURE STATEMENT

This disclosure statement (this "**Disclosure Statement**")[2] provides information regarding the Official Committee of Unsecured Creditor's First Amended Chapter 11 Plan of Liquidation of Eventide Credit Acquisitions, LLC (as it may be further amended, supplemented, or otherwise modified from time to time, the "**Plan**"), which the Official Committee of Unsecured Creditors (the "**Committee**") is seeking to have confirmed by the Court.  A copy of the Plan is attached hereto as **Exhibit A**.  The rules of interpretation set forth in Article 1.2 of the Plan shall govern the interpretation of this Disclosure Statement.

The Committee provides this Disclosure Statement to enable any creditor whose Claim is impaired under the Plan and is entitled to vote on the Plan, to arrive at a reasonably informed decision in exercising the right to vote to accept or reject the Plan.  This Disclosure Statement should be read in its entirety prior to voting on the Plan.  The information contained herein is based on records maintained by the Debtor and obtained by the Committee, and no representation or warranty is made as to their complete accuracy.

For a class of impaired Claims to be considered to have accepted the proposed treatment of the class under the Plan, creditors who hold at least two-thirds in amount and more than one-half in number of Claims within the class must vote in favor of the Plan.  If a party does not vote, i.e., does not return a fully completed Ballot within the specific time to the correct addressee, neither the party nor the amount of its Claim or Interest is counted to determine acceptance or rejection of the Plan.  If you are entitled to vote and do not, the Ballots will be tallied as though your Claims did not exist.  The Court can confirm the Plan even if the requisite acceptances are not obtained so long as the Plan complies with the Bankruptcy Code and accords fair and equitable treatment to any non-accepting Class.

Parties entitled to vote are furnished a Ballot on which to record their respective acceptances or rejections of the Plan.  Those completed Ballots must be returned by the deadline set forth on the Ballot to Donlin Recano & Co. LLC (the "**Claims Agent**" or "**Solicitation Agent**"), who will tally the votes and report the results to the Court prior to or at the Confirmation Hearing.

The Committee believes the Plan is in the best interests of the Debtor, creditors, and the Estate.  As such, the Committee recommends that all holders of impaired Claims that are entitled to vote accept the Plan by returning their ballots so as to be actually received by the Claims Agent no later than the deadline to be set by the Court.

NO REPRESENTATIONS CONCERNING THE DEBTOR, THE DEBTOR'S OPERATIONS, THE VALUE OF THE DEBTOR'S PROPERTY OR THE PLAN ARE AUTHORIZED UNLESS THEY ARE IN THIS DISCLOSURE STATEMENT.  THIS DISCLOSURE STATEMENT IS THE ONLY STATEMENT WITH RESPECT TO THE PLAN.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Committee's Plan.

1

NO OTHER REPRESENTATION CONCERNING THE DEBTOR, ITS OPERATIONS OR THE VALUE OF ITS PROPERTY HAS BEEN AUTHORIZED.  YOU SHOULD RELY ONLY ON THE REPRESENTATIONS OR INDUCEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.  YOU SHOULD REPORT ANY ADDITIONAL REPRESENTATIONS AND INDUCEMENTS TO THE COURT, COUNSEL FOR THE DEBTOR, COUNSEL FOR THE COMMITTEE, AND THE OFFICE OF THE UNITED STATES TRUSTEE.

THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A RECOMMENDATION BY THE COURT AS TO THE MERITS OF THE PLAN BUT MERELY CONFIRMS THAT THE DISCLOSURE STATEMENT IS ADEQUATE TO PROVIDE THE INFORMATION NECESSARY FOR YOU TO MAKE AN INFORMED JUDGMENT REGARDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THIS DISCLOSURE STATEMENT PROVIDES INFORMATION ABOUT THE PLAN. ALTHOUGH THE DEBTOR BELIEVES THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS ACCURATE, THE PROVISIONS OF THE PLAN CONTROL IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

If the Court does not confirm the Plan, the Committee may amend the Plan or file a different Plan.  Additionally, on motion of a party in interest and after notice and a hearing, the Court may convert the Bankruptcy Case to a Chapter 7 case.

The summaries of the financial information and the documents annexed to this Disclosure Statement or otherwise incorporated herein by reference are qualified in their entirety by reference to those documents.  The statements contained in this Disclosure Statement are made only as of the date of this Disclosure Statement, and there is no assurance that the statements contained herein will be correct at any time after such date.  Except as otherwise provided in the Plan or in accordance with applicable law, the Debtor is under no duty to update or supplement this Disclosure Statement.

### Summary of Treatment of Claims and Equity Interests Under the Plan

The following chart is a summary of the classification and treatment of Claims against and Interests in the Debtor and the potential distributions under the Plan.  Reference should be made to the entire Disclosure Statement and the Plan for a complete description of the classification and treatment of Claims against and Interests in the Debtor. Each of the estimates set forth below are based on currently available information and are subject to change. The projected recovery percentage for holders of Claims are similarly based on the Committee's good faith estimates, and actual recoveries may vary materially for the reasons stated more fully in Article herein.  In addition, the projected recovery percentage for Class 5 Claims does not account for potential recoveries on account of any Causes of Action described herein. The "Estimated Total Recovery" percentage represents the estimate of all distributions to be made by the Litigation Trustee to holders of Allowed Claims.

| Class | Description | Proposed Treatment | Estimated Total Recovery | Voting Rights |
|---|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | 100% | Deemed to accept |
| 2 | Other Secured Claims | Unimpaired | 100% | Deemed to accept |
| 3 | Secured Claim of Bluetech | Impaired | 0% | Deemed to reject |
| 4 | General Unsecured Claims | Impaired | 25% | Entitled to vote |
| 5 | Consumer Borrower Claims | Impaired | [tbd] | Entitled to vote |
| 6 | Equity Interests | Impaired | 0% | Entitled to vote |

## ARTICLE II
## GENERAL INFORMATION CONCERNING THE DEBTOR'S BUSINESS

**2.1    Background, Restructuring, and Bankruptcy Filings**

Beginning in 2011, Matt Martorello ("**Martorello**") through a complex structure of companies (at the time consisting of different entities) which ultimately included the Debtor, established and began operating what is commonly referred to as a "Rent-a-Tribe" scheme that charged more than 400% annual interest on short term loans to consumers nationwide, in violation of many state usury statutes.  Under this model, short term lenders use "Native American tribal entities" as "the nominal lender" to cloak the actual lenders in the sovereign immunity afforded to Native American tribes, and, in doing so, to preclude enforcement of the interest rate caps of state usury laws.  The loan contracts misrepresent the nature of the lender and applicable law.  Over the last decade, government regulators and private class actions have returned hundreds of millions of dollars to consumers and cancelled more than $1 billion in loans in similar Rent-a-Tribe schemes, including cases like Think Finance, LLC in Texas.  Dozens of other actions have been heavily litigated throughout the country, including criminal proceedings that have resulted in the felony convictions of three pioneers of the tribal lending models.  Each enterprise is slightly different, but most follow the same basic pattern: a tribal lending entity is held out as the lender on these illegal loans, but it contractually relinquishes the right to control and operate the key aspects of the lending business.  Behind the scenes, non-tribal outsiders control the day-to-day operations of the lending business and reap the vast majority of the profits.

As early as December 2012—a little over a year into the business—Martorello had concerns about the viability and legality of the tribal lending model.  Emails obtained in discovery show that he (i) asked others how to value illegal businesses, such as online poker sites, medical marijuana stores, and "a drug cartel"; (ii) had received "Cease and Desist" letters from State Attorneys General; and (iii) was in possession of a 20-page legal opinion, concluding that he could be liable "for aiding and abetting felony crime" in states like Georgia.  In 2013-2014, Martorello attempted to avoid regulatory scrutiny by restructuring the business through several assignments of the ownership interests in certain entities to his other controlled entities, but Martorello (and his entities) retained control of the enterprise and continued to receive the net profits.  But he was unable to avoid lawsuits from the consumer borrowers who were defrauded by the scheme (the "**Consumer Borrowers**").  Over the past eight years, the United States District Court for the Eastern District of Virginia (the "**Virginia Court**") presided over various Consumer Borrower

claims against Martorello and his entities, including *Williams v. Big Picture Loans, LLC*, Case No. 3:17-cv-461 (E.D. Va.).  As other perpetrators of Rent-a-Tribe schemes continued to lose in court, Martorello restructured the enterprise again to avoid prosecution.

Martorello formed Eventide on February 9, 2015 as part of the second restructuring to avoid scrutiny, and for the express purpose of holding and collecting on a $300,000,000 promissory note (the "**Note**") in "consideration" of the sale of Martorello's company named Bellicose to a tribal company known as Tribal Acquisition Corporation.  Following the creation, Eventide continued to operate, control, and profit from the illegal Rent-a-Tribe scheme for years and it distributed over $62.0 million to Martorello, his family members and entities and trusts he controlled or used to help protect his interests.

In 2019, Martorello first attempted to use the bankruptcy process to protect the millions of dollars he made from the scheme when he placed Eventide in its first Chapter 11 case.  But Judge Edward L. Morris of the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**") saw through the attempt and ruled on June 9, 2020 that Eventide failed to file and prosecute the Chapter 11 case in good faith, and determined that the Chapter 11 case should be dismissed.  In reaching the decision, Judge Morris unequivocally found that:

> [T]he Bankruptcy Case was also clearly filed as the next step in a strategy to try to assist Martorello and individuals and entities affiliated with Martorello in finding a way to forum shop away from the District Court in the District of Virginia[.]
>
> . . .
>
> [C]ontrary to the Debtor's arguments of filing the Bankruptcy Case to stop the bleeding and preserve value, the Bankruptcy Case has been nothing but bleeding, with the Debtor having already incurred upwards of $800,000 in professional fees, predominantly in litigation in three different adversary proceedings that is duplicative of the arbitration in the case of the Tribal Defendants and which has, in any event, netted zero beneficial results for the estate.

The litigation in the Virginia Court was renewed after the dismissal of the first bankruptcy case.

On July 20, 2021, the Virginia Court certified a consumer borrower class in the cases before it. As to the Consumer Borrower's § 1962(d) claim in the cases, it found that "Martorello conceded that . . . the loans are governed by the law of Virginia and that a mistake of law defense is not available as a defense to liability, and 'there are no remaining triable issues of fact on Plaintiffs' § 1962(d) claim'" because the undisputed evidence showed that Martorello knew about and facilitated the unlawful lending scheme. As to the § 1962(c) claim, the Virginia Court found that Martorello further stipulated: "that, for the entire class period, he was associated with an association-in-fact enterprise the activities of which affect, interstate or foreign commerce, and Mr. Martorello participated in the operation of the affairs of the enterprise through the collection of "'unlawful debt.'"  Based on the loan-level data, Martorello also stipulated that the total damages were $43,401,817.47.  Accordingly, following six years of litigation and after cross-

4

motions for summary judgment, a Final Judgment Order was entered against Martorello in September 2023 in the amount of $43,401,817.17 in favor of the Consumer Borrowers in Virginia who took out loans from the illegal lending enterprise.

Ignoring the collateral estoppel effect of the Virginia Court's many decisions, Eventide filed its second bankruptcy case on September 6, 2023 after the tribal entities stopped making payments under the Note, presumably hoping that it could use the Bankruptcy Court to end run the decisions of the Virginia Court, or that Martorello would be successful in appealing certain rulings of the Virginia Court.  On September 21, 2023, the United States Trustee for the Northern District of Texas (the "**U.S. Trustee**") appointed as members of the Committee:  Dowin Coffy, Dana Duggan, Renee Galloway, George Hengle, Regina Nolte, Richard Smith, Jr. and Teresa Titus (the "**Committee**") [Doc. No. 20].  On November 22, 2025, the Court approved the retention of Cole Schotz P.C. ("**Cole Schotz**") [Doc. No. 89] as counsel to the Committee and on February 12, 2025, the Court approved Aurora Management Partners ("**Aurora**") as financial advisor to the Committee [Doc. No. 597].  The Committee, Cole Schotz and Aurora investigated the whereabouts of all the money which the Debtor received since its formation.  The Committee's review of the Debtor's financial records indicates that approximately $62.0 million was transferred out of Eventide prior to the petition date without receiving adequate consideration, and/or in an attempt to hinder, delay or defraud creditors.

Since the Petition Date, the Debtor has repeatedly advised the Bankruptcy Court that the decisions of the Virginia Court were erroneous and would likely be overturned on appeal.  Relying on this position, the Debtor refused to consent to certification of a Consumer Borrower class, provide adequate notice of a proof of claim bar date, or preserve / prosecute the Estate's causes of action arguing that the Debtor would be shown to be solvent by Martorello's appeal, and all assets would be distributed to Martorello, insiders, and his related entities.  The Debtor's actions have caused the unnecessary accrual of over $7.0 million of professional fees which could have funded distributions to creditors in this case.

In a written opinion issued on July 16, 2025 (the "**Written Opinion**"), the United States Court of Appeals for the Fourth Circuit (the "**Fourth Circuit**") (Case No. 23-2097) affirmed the rulings of the Virginia Court which led to the entry of the final judgment against Martorello in the defrauded Consumer Borrowers' class action lawsuit for violating civil provisions of the Racketeering Influenced and Corrupt Organizations Act ("**RICO**") under 18 U.S.C. §§ 1962(c)-(d).  The Fourth Circuit expressly stated:

> **. . . Martorello was the architect behind this particular "'Rent-A-Tribe' scheme** in which a payday lender partners with a Native American tribe to cloak the lender in the sovereign immunity of the tribe, thereby precluding enforcement of otherwise applicable usury laws that cap interest rates." . . . In this iteration of the scheme, "[t]he Lac Vieux Desert Band of Chippewa Indians (the "Tribe") purportedly created businesses under tribal law to make small-dollar, high-interest rate loans to [the class of Virginia consumers and to other consumers around the country] via the internet." . . . **Throughout the scheme, including the restructuring,** Martorello arranged the lending business so that he "continued to keep almost all the profits . . . while retaining substantial control of the lending operation through" his companies . . .

(emphasis added).  Part of the "restructuring" referred to by the Fourth Circuit was the sale of the entity which owned illegal loan portfolio to the tribal entities and the creation of Eventide to hold the Note and receive payments.  As a result of the decision of the Fourth Circuit, the Debtor can no longer rely on the hope of a favorable appeal to continue administering this case to protect himself, insiders, and his controlled entities and trusts to the detriment of the Consumer Borrowers and non-insider creditors with allowable claims.  Thus, this case can proceed to confirmation of a liquidating plan to bring this case to a close without the loss of millions of dollars in fees to the Debtor's many professionals and unnecessary noticing process.

On August 6, 2025, the Committee filed a Motion to Appoint a Chapter 11 Trustee Pursuant to Sections 105(a) and 1104(a) for Eventide based, in part, on the Debtor's (and Martorello's_prepetition conduct in (i) participating in the operation of an illegal RICO scheme, (ii) orchestrating a sham restructuring to keep the proceeds of the scheme, (iii) filing a prior bad faith Chapter 11 case, (iii) lying under oath in the Virginia Cases, (iv) orchestrating substantial fraudulent transfers, and postpetition conduct in (a) failing to preserve Estate assets, failing to recover property of the Estate from third-parties, and failing to properly administer this case despite almost two years of control since the Petition Date and over $6.0 million in legal fees.  (the "**Trustee Motion**") [Dkt. No. 845].  The Plan assumes that a Chapter 11 Trustee will be appointed at the scheduled hearing on the Trustee Motion set for September 10, 2025, and that the Chapter 11 Trustee will then consent to certification of the National Consumer Borrower Class, and the allowance of the National Consumer Borrower Class Claim because it is in the best interests of the Debtor, creditors and Estate.

## 2.2    Corporate Structure

Eventide is not a going concern company and there are no operations or employees to protect, and no hope of rehabilitation.  The Debtor has no vendors, no landlords, and no customers. In other words, the Debtor's sole purpose has always been to function as a conduit to receive the Settlement Payments and then distribute the cash to insiders and offshore asset protection trusts and entities created by Martorello.  Its only legitimate creditors consist exclusively of the Consumer Borrowers who paid usurious interest on installment loans.

Notably, Martorello did not leave the profits from his illegal RICO scheme in Eventide or his personal bank accounts. Instead, to protect the funds in anticipation of fraudulent transfer litigation, Martorello set up and controlled a maze of companies and offshore trusts in the Cook islands and elsewhere through which money from the illegal lending scheme was distributed.  The Debtor has repeatedly argued to the Bankruptcy Court that the transfers of cash were legitimate asset protection maneuvers.  The Virginia Court, however, already addressed that contention.  In one of its opinions, the Virginia Court made clear that:

> Martorello's asset protection scheme would not be tolerated.  In particular, on August 14, 2023, the Virginia Court issued a memorandum opinion explaining: Asset protection is, however, nothing more than a euphemism for evasion. For decades, Americans have used Cook Islands trusts trying to avoid the reach of American courts.  *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1240 (9th Cir. 1999) ("The 'asset protection' aspect of these foreign trusts arises from the ability of people... to frustrate and impede the United States courts by moving their assets

6

beyond those courts' jurisdictions"); Debra Baker, "Island Castaway," 84 A.B.A. J. 54, 55 (1998). Courts throughout the nation have rejected these attempts to impede their jurisdiction and to avoid compliance with their orders. In a landmark case against asset protection trusts, the United States Court of Appeals for the Ninth Circuit upheld a contempt order against a couple who claimed they were unable to satisfy a judgment because their money was in a Cook Islands trust. *Affordable Media, LLC*, 179 F.3d at 1231. Rejecting the couples' impossibility argument, the Ninth Circuit noted with disapproval how "the provisions of the trust were intended to frustrate the operation of domestic courts." Id. at 1232, 1240. Any difficulties with repatriating the money in the trust were "the intended result of [the defendants'] own conduct" and could not be used to excuse court-ordered performance. *Id*. at 1239. Favorably citing to *Affordable Media*, the United States Court of Appeals for the Eleventh Circuit rejected a similar contention by a debtor with an overseas trust. *In re Lawerence*, 279 F.3d 1294, 1296 (11th Cir. 2002). The Eleventh Circuit noted that the trust provision at issue "appears to be an aid to the settlor to evade contempt while merely feigning compliance with the court's order" and that the "validation of such a provision would contravene public policy." *Id*. at 1299. The United States District Court for the Southern District of Florida likewise held in contempt a defendant claiming he could not access his Cook Islands trust funds. *S.E.C. v. Solow*, 682 F.Supp.2d 1312, 1330 (S.D. Fla. 2010). The court found the defendant's use of a Cook Islands trust an attempt to "obfuscate" his duty to make good faith efforts to pay the judgment against him. *Id*. The courts have sent a clear message: American citizens cannot evade American court orders by squirreling their money away into offshore asset protection trusts. *Galloway v. Martorello*, 2023 WL 5229231, at *11 (E.D. Va. Aug. 14, 2023).

Based on records obtained in this case, Martorello, through his professionals, created over thirty (30) off-shore and domestic entities and trusts to receive the net profits from the RICO scheme. One such entity is the co-debtor in this case.

For the last four years, certain of the Consumer Borrowers were also litigating against another Martorello controlled entity named Breakwater Holdings, LLC ("**Breakwater Holdings**"), which was formed under the laws of the Cook Islands. After a two-day evidentiary hearing, the Honorable Robert E. Payne of the Virginia Court issued two unfavorable rulings against Breakwater Holdings in August 2023. *See Galloway v. Martorello*, No. 3:19-cv-314(REP), 2023 WL 5183204, at *1 (E.D. Va. Aug. 11, 2023) (holding the court had personal jurisdiction over Breakwater Holdings); Galloway, 2023 WL 5180332, at *1 (E.D. Va. Aug. 11, 2023) (holding that Breakwater Holdings was properly served). Less than three weeks after the adverse rulings against Breakwater Holdings (and following a summary judgment ruling in related litigation against its lone principal), Martorello formed a new company called BWH Texas, LLC ("**BWH**") on August 30, 2023. Martorello then transferred certain assets of Breakwater Holdings (and its parent company, the Bluetech Irrevocable Trust) to BWH, which then filed bankruptcy on October 9, 2023—a mere four days after another unfavorable ruling from the Virginia Court. *Galloway*, 2023 WL 6518085, at *1 (E.D. Va. Oct. 5, 2023).

The Bluetech Irrevocable Trust ("**Bluetech**") and BWH together received more than $23.0 million of cash distributions from Eventide. BWH's bankruptcy case is jointly administered with

Eventide's case.  Martorello, his wife Rebecca Martorello, and his brother Justin Martorello all filed personal bankruptcy as well, but their cases are not jointly administered with this case.

**2.3    Pre-Petition Capital Structure**

    **(a)    <u>Assets</u>**

    The Debtor's only scheduled asset with value consists of the stream of payments it receives from the tribal entities pursuant to the $28,046,107.92 note receivable the Debtor settled for $16,868,983.17 ("**<u>Settlement Payments</u>**").  The proceeds from the Settlement Payments are depleted each month by the Debtor to fund the administrative costs of the case.  The Committee contends that the Estate also has valuable fraudulent transfer and other avoidance action claims against Martorello, his family, and the entities and trusts he controls, which the Debtor denies.

    **(b)    <u>Liabilities</u>**

    Other than the claims of the defrauded Consumer Borrowers, virtually all of the claims the Debtor included on its Schedule A filed in the case are the Debtor's insiders and/or professionals who assisted the Debtor in the RICO scheme, including, but not limited to, Martorello, Bluetech Irrevocable Trust, BWH, Brian McFadden, Gallant Capital, LLC, Justin Martorello, Liont, LLC, Rebecca Martorello, and Loeb & Loeb.  As of the date of this Disclosure Statement, the Debtor has already accrued $6,082,792 in professional fees and expenses in the case since its filing less than two (2) years ago, not including the over $1.0 million in fees the Estate incurred from the Committee opposing the Debtor's actions:

| | |
|---|---|
| Forshey & Prostok LLP | $2,995,819 |
| Vartabedian, Hester & Haynes LLP | $1,701,162 |
| Phelan Law | $1,097,331 |
| Holland & Knight | $  150,000 |
| Coherent Economics | $   52,065 |
| William Roberts | $   76,415 |
| **TOTAL** | **$6,072,792** |

**ARTICLE III
CLAIMS IN THE CASE**

    **(a)    <u>Claims Process and Bar Dates</u>**

    On November 26, 2024 the Debtor filed its Amended Motion for Order (i) Extending Bar Date for Unknown Consumer Borrower Creditors, (ii) Approving Procedures to Protect the Identity of the Unknown Borrowers, (iii) Approving Proof of Claim Form for the Unknown Borrowers, (iv) Approving the Form and Manner of Notice Thereof, and (v) Providing Supplemental Relief, as supplemented [Doc. No. 444].  On January 14, 2025, the Consumer Borrowers filed a Motion to Apply Rule 7023 to Consumer Borrowers' Class Proof of Claims and to Certify National Class of Consumer Borrowers [Doc. No. 521].  These motions have not yet been heard by the Court.  Accordingly, the Debtor has failed to obtain a Bar Date for filing proofs

of claim in the case or even provide notice of the case to creditors despite the case being filed two (2) years ago and the agreement entered into by the Consumer Borrowers with the Debtor for an allowed class (which the Debtor pulled out of). To move the case forward efficiently, **the Committee's Plan provides a "Bar Date" deadline to file a Proof of Claim in this case, which shall be fourteen (14) days before the date set by the Bankruptcy Court for the Confirmation Hearing**. The Debtor shall send a written notice of the Bar Date to all known creditors of the Debtor other than the Nationwide Consumer Borrowers within five (5) business days of the entry of the Order approving the Disclosure Statement. The Bar Date notice for the Nationwide Consumer Borrowers shall be sent to the Nationwide Class Counsel only which will save the Estate hundreds of thousands of dollars in postage and processing to provide notice to over 500,000 defrauded consumer borrowers.

The Debtors scheduled approximately 73 claims in their Schedules (the "**Scheduled Claims**") in the aggregate amount of approximately $19,857,231. Of this amount, only $102,341 belong to creditors who are not "insiders" or the Debtor's professionals who assisted the Debtor. In addition, the Debtor listed 50 claims of defrauded Consumer Borrowers in "unknown" amounts.

**(b)**     **Claims Objections**

On January 22, 2024, the Debtor filed Objections to thirty-one (31) claim objections seeking disallowance of the claims of 31 Consumer Borrowers from several states including Virginia, Texas and Oregon who asserted various claims against the Debtor under federal and state consumer lending laws in the proofs of claim they filed in the case (the "**Claims Objections**"). Each of them is represented by either (i) Kelly Guzzo PLLC; (ii) Berger Montague PC; (iii) Caddell & Chapman; (iv) Consumer Litigation Associates; (v) Tycko & Zavareei, LLP; or (vi) Terrell Marshall Law Group LLC.

The Claims Objections are scheduled for trial on November 3-14, 2025. Following the recent decision by the Fourth Circuit and its collateral estoppel impact, along with the rulings of the Virginia Court, the Committee believes the Claims Objections would be overruled and the claims allowed if the objections were tried. Accordingly, the Committee believes the Chapter 11 Trustee will withdraw the Claims Objections.

**(c)**     **Committee's Investigation and Demand**

The Committee and its professionals investigated the Debtor's prepetition transactions, including an extensive review of documents and the filing of at least three Motions Seeking Examinations Under Rule 2004. On October 10, 2023, Committee counsel sent Debtor's counsel a letter requesting the informal production of specified documents that the Committee required to fulfill its statutory duties. The Debtor initially failed to produce any of the documents and information requested and refused to allow the Committee to join in a protective order it already had in place with the defrauded Consumer Borrower creditors in the *Williams* case in the Virginia Court. On November 21, 2024, the Committee filed motions pursuant to Bankruptcy Rule 2004, seeking (i) the Court's authorization to conduct an examination of a representative of the Debtor and Martorello, and (ii) the production of relevant documents. On December 1, 2023, the Committee sent the Debtor a letter demanding that it pursue avoidance actions against Martorello and the other recipients of cash transfers from the Debtor believed to be intentional and/or

9

constructively fraudulent transfers.  The Debtor refused to file the avoidance actions.  On December 16, 2024, the Committee filed a Motion for Leave, Standing and Authority to Commence, Prosecute, and Settle Certain Claims and Causes of Action on Behalf of the Estate. [Doc. No. 471].  The Debtor opposed the relief.  After the issue was fully briefed and just prior to the hearing, the Debtor consented to the relief sought by the Committee and an Agreed Order Granting Derivative Standing to the Official Committee of Unsecured Creditors to Pursue Avoidance Actions on Behalf of the Estate [Doc. No. 654].  Under the terms of this order, the Committee was granted the right to prosecute and/or settle Causes of Action including, but not limited to, actions under 11 U.S.C. §§ 544, 545, 547, 548, 550 and/or 553 and their state law equivalents, to avoid having the deadlines in 11 U.S.C. § 546(a) expire.  The Committee agreed not to initiate such actions until after July 6, 2025.

### (d)      Extension of Exclusivity Periods

The Debtor sought and obtained Court approval of two extensions of (i) the period during which the Debtor has the exclusive right to file a plan or plans and (ii) the period during which the Debtor has the exclusive right to solicit acceptances of any plan.  On December 9, 2024, the Debtor sought a third extension of the periods through March 4, 2025 and May 6, 2025 respectively [Doc. No. 453].  On December 16, 2024, the Committee filed an objection to the third extension [Doc. No. 470].  On February 24, 2025, the Court denied the Debtor's third request.  [Doc. No 631].

On January 2, 2025, the Debtor filed a Plan of Liquidation (the "**Debtor's Plan**") [Doc. No 500].  The Debtor's Plan implausibly assumes the disallowance of the Consumer Borrower's claims and no recovery from Avoidance Actions, leaving the remaining funds from the Settlement Payments, if any, to be distributed to Martorello, his family, and the entities and trusts he controls. The Debtor filed a First Supplement to Debtor's Plan on January 14, 2025 which seeks to have Martorello hand select a "Litigation Manager" to oversee the filing of Avoidance Actions as opposed to allowing the Committee to make the selection [Doc. No. 517].  The Debtor has not amended the Plan since the First Supplement.  On March 7, 2025, the Committee filed its Plan of Liquidation (the "**Committee's Plan")** [Doc. No. 653].

### (e)      The Consumer Borrower Litigation

The resolution of the Consumer Borrower claims was critically important to the resolution of the Chapter 11 case prior to the decision of the Fourth Circuit.  Since the filing of this case, the Debtor has opposed (i) the noticing and Bar Date procedures proposed by the Consumer Borrowers; (ii) the Consumer Borrower's request for the application of Bankruptcy Rule 7023 to a class proof of claim; (iii) the certification of a class; and (iv) the allowance of a Consumer Borrower class claim.  The Debtor's opposition has caused the estate to accrue more than $7.0 million in professional fees and substantially deplete cash that could be available for distribution to the holders of allowed claims in the case.  At the current cash burn rate, all of the Settlement Payments could be squandered if the interested parties are required to litigate these issues in this case, to the detriment of the Debtor, creditors and estate.

Considering the Fourt Circuit decision and the fact that certain Consumer Borrowers in Virginia already obtained a $43,401,817.17 judgment against Martorello which the Debtor has indemnified and scheduled as a liability in the case, there is no material benefit to the Estate for

the Debtor to continue to litigate the Consumer Borrower claims.  Unless and until the Committee or a Litigation Trustee can monetize the Avoidance Actions, there will be less than $10.0 million available for distribution to creditors.  It makes little to no difference whether the Consumer Borrowers have an Allowed $43.4 million claim or an Allowed $775.0 million claim as the approximate 500,000 members of the Consumer Borrower class will still share *pro rata* in the less than $10.0 million potentially available.[3]  Accordingly, the Committee's Plan contains provisions for the Allowed claim of a certified national class of Consumer Borrowers.  The "Nationwide Consumer Borrower Class" shall include three tiers for purposes of determining distributions based on the state of residence of the Nationwide Consumer Borrowers at the time that the Consumer Borrower obtained an Eligible Tribal Loan (the "**Nationwide Consumer Borrower Class**").  Details concerning the three tiers as set forth in Article III of the Committee's Plan.

As agreed to by certain Consumer Borrowers and as set forth more fully in the Litigation Trust Agreement, the Nationwide Consumer Borrower Class shall be represented by the following firms:

- Kelly & Guzzo, P.L.C.;
- Neligan LLP;
- Consumer Litigation Associates, P.C.;
- Caddell & Chapman;
- Terrell Marshall Law Group PLLC;
- Berger Montague; and
- Gupta Wessler LLP.

Having Nationwide Consumer Borrower Class Counsel alleviates the need and unnecessary substantial expense of litigating the issues regarding the Bar Date Notice, and avoids substantial costs of mailing the Bar Date Notice and the Plan and Disclosure statement to in excess of 500,000 Consumer Borrowers. These law firms, and certain other law firms who represented Nationwide Consumer Borrowers in the Chapter 11 Case, shall receive aggregate compensation in the amount of ___[tbd]____ in the form of an allowed administrative expense claim under 11 U.S.C. §§ 503(b)(3)(D) and 503(b)(4) for services provided during the Chapter 11 Case to certain Consumer Borrower claimants and for serving the role of counsel to the Nationwide Consumer Borrower Class.

A cash distribution pool in a fixed amount (the "**General Unsecured Claims Cash Pool**") will be created for distributions to holders of allowed unsecured non-priority claims against the Debtor other than the claims of Nationwide Consumer Borrowers ("**General Unsecured Claims**").  On the Effective Date, the General Unsecured Claims Cash Pool shall be funded with cash in an amount equal to $50,000.  In the unlikely event that the amount in the General Unsecured Claims Cash Pool exceeds the allowed amount of General Unsecured Claims, then such excess funds after pro-rata payment of all allowed General Unsecured Claims shall be transferred to the Litigation Trust.  The Committee (before the Effective Date) and the Litigation Trustee (after the

---

[3] The Virginia Consumer Borrower class that obtained the judgment against Martorello has already consented to sharing any recovery in this case with similarly situated Consumer Borrowers from other states, subject to the distribution tiers in the Committee's Plan.

Effective Date) shall have the sole authority and power to object to and/or settle General Unsecured Claims on behalf of the Debtor's estate. Neither the Debtor nor any other party shall object to any Claims in this Chapter 11 Case or have standing to be a party in a Claims objection.

As further discussed below, the Committee shall select the person or entity in its sole and absolute discretion to serve as trustee of the Litigation Trust as approved by the Bankruptcy Court, and any successor trustee appointed pursuant to the Litigation Trust Agreement. The Committee will identify the Litigation Trustee and submit the name to the Bankruptcy Court no later than the filing of the Plan Supplement. There shall be appointed a Litigation Trust Oversight Board. The Litigation Trust Oversight Board shall have the right after the Effective Date to seek a replacement for the Litigation Trustee in accordance with the Litigation Trustee's retention agreement and the terms of the Plan and the Litigation Trust Agreement. The members of the Litigation Trust Oversight Board will not receive any additional compensation on account of serving in such capacity.

### ARTICLE IV
### SUMMARY OF THE PLAN OF REORGANIZATION

**THE FOLLOWING SUMMARY PROVIDES ONLY A GENERAL OVERVIEW OF THE PLAN, WHICH IS QUALIFIED IN ITS ENTIRETY BY, AND SHOULD BE READ IN CONJUNCTION WITH, THE PLAN AND THE MORE DETAILED DISCUSSION APPEARING ELSEWHERE IN THIS DISCLOSURE STATEMENT.**

**4.1     Treatment of Unclassified Claims**

(a)     **Unclassified Claims Summary**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan. The Claim recoveries for such unclassified Claims are set forth below:

| Claim | Plan Treatment | Projected Plan Recovery |
|---|---|---|
| Administrative Claims | Paid in Allowed amount in Cash | 100% |
| Professional Fee Claims | Paid in Allowed amount in Cash | 100% |
| Priority Tax Claims | Paid in Allowed amount in Cash | 100% |

(b)     **Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Litigation Trustee after the Effective Date, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash from the Administrative and Priority Claim Reserve equal to the amount of such Allowed Administrative Claim either: (a) if an Administrative Claim

is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Litigation Trustee; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

All requests for allowance and payment of an Administrative Claim, other than Professional Claims and the Substantial Contribution Claims, must be filed with the Court and served on counsel for the Committee, or the Litigation Trustee on or after the Effective Date, by no later than the Administrative Claims Bar Date.  In the event that any party to an Administrative Claim on or before the Administrative Claims Objection Deadline, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim. The Committee is not aware of any potential Administrative Claims.

### (c)    Professional Claims

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be filed and served in accordance with the Compensation Procedures approved by the Bankruptcy Court no later than **45 days after the Effective Date**.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code.  Allowed Professional Claims for services rendered prior to the Effective Date shall be paid in Cash in the amount the Bankruptcy Court allows from the Professional Fee Escrow, which shall be held in trust for the Professionals and funded with Cash equal to the Professional Fee Estimate.  Claims for any post-Effective Date services by Professionals shall be submitted to the Litigation Trustee and paid in the ordinary course, **but in no event later than fourteen (14) days after their submission.**  Professionals shall deliver to the Committee their estimates for purposes of computing the Professional Fee Estimate no later than five Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court.  If a Professional does not provide an estimate, the Committee may estimate the unpaid fees and expenses of such Professional.  Any funds remaining in the Professional Fee Escrow after all Professional Claims have been paid will be deposited into the Litigation Trust for use in accordance with the Plan.

From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate.  For the avoidance of doubt, the Litigation Trustee may employ and pay any professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.  Any professionals employed by the Litigation Trustee shall be paid from the funds in or generated by the Litigation Trust.

13

**(d)**    **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive on the Effective Date payment in Cash from the Administrative and Priority Claim Reserve in an amount equal to the amount of such Allowed Priority Tax Claim or, as determined by the Committee, regular installment payments from the Litigation Trustee from the Administrative and Priority Claim Reserve of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash from the Administrative and Priority Claim Reserve, and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business, in each case from the Administrative and Priority Claim Reserve. The Committee is not aware of any Priority Tax Claims that in the aggregate total in excess of $100. Notwithstanding the foregoing, the Plan shall be deemed to be an objection to any penalty asserted as a Priority Tax Claim arising with respect to or in connection with any Allowed Priority Tax Claims.

**4.2**    **Summary of Classification and Treatment of Claims and Interests**

The Plan establishes a comprehensive classification of Claims and Interests. The table below summarizes the classification, treatment, voting rights, and estimated recoveries, estimated as of the date hereof, of the Claims and Interests, by Class, under the Plan. Amounts assumed in the projected Plan recovery analysis are estimates only.

| Class | Claim or Interest | Voting Rights | Treatment | Projected Plan Recovery |
|-------|-------------------|---------------|-----------|-------------------------|
| 1 | Priority Non-Tax Claims | No | Unimpaired | 100% |
| 2 | Other Secured Claims | No | Unimpaired | 100% |
| 3 | Secured Claim of Bluetech | Yes | Impaired | 0% |
| 4 | General Unsecured Claims | Yes | Impaired | 25% |
| 5 | Nationwide Consumer Borrower Class Claim | Yes | Impaired | [TBD] |
| 6 | Equity Interests | Yes | Impaired | 0% |

**(a)**    **Class 1 Priority Non-Tax Claims**

Each holder of an Allowed Class 1 Claim shall receive Cash from the Administrative and Priority Claim Reserve in an amount equal to such Allowed Class 1 Claim. Class 1 is Unimpaired, and holders of Claims in Class 1 are conclusively presumed to have accepted the Plan.

**(b)**    **Class 2 Other Secured Claims**

Each holder of an Allowed Class 2 Claim shall receive (i) payment in full in Cash of its Allowed Class 2 Claim, including any accrued and unpaid interest, fees, and expenses as may be

required to be paid, (ii) the collateral securing its Allowed Class 2 Claim; or (iii) such other treatment rendering its Allowed Class 2 Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.  Class 2 is Unimpaired, and holders of Claims in Class 2 are conclusively presumed to have accepted the Plan.

### (c)    Class 3 Secured Claim of Bluetech Irrevocable Trust

Class 3 consists of the disputed Secured Claim of Bluetech Irrevocable Trust in the amount of $7,086,634.72.  The Committee contends that Bluetech is an Insider, and that its scheduled claim is not valid or secured. The Committee or Litigation Trustee intends to seek the disallowance and/or equitable subordination of the claim under section 510(c).  The holder of the Class 3 Claim will only receive a Cash Distribution if the Class 3 Claim is Allowed.  Class 3 is Impaired, and the Holder of an Allowed Class 3 Claim is deemed to have rejected the Plan.

### (d)    Class 4 General Unsecured Claims

Each holder of an Allowed Class 4 Claim shall receive a cash Distribution equal to its pro rata share of the General Unsecured Claims Cash Pool.  Class 4 is Impaired, and Holders of Allowed Class 4 Claims are entitled to vote to accept or reject the Plan.

### (e)    Class 5 Nationwide Consumer Borrower Class Claim

The Nationwide Consumer Borrower Class shall be made up of all Nationwide Consumer Borrowers.  The Nationwide Consumer Borrower Class Claim shall be allowed as an unsecured claim in the amount of $775,000,000.  Class 5 is Impaired, and the Nationwide Consumer Borrower Class Representatives are entitled to submit a single vote to accept or reject the Plan on behalf of the Nationwide Consumer Borrower Class.  No other claims of any members of the Nationwide Consumer Borrower Class shall be allowed for distribution purposes.  Distributions to members of the Nationwide Consumer Borrower Class shall be governed by the Plan and the Litigation Trust Agreement.

Distributions to members of the Nationwide Consumer Borrower Class shall be allocated as follows:

   o    Tier 1: the following states: Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Ohio, South Dakota, Vermont, Virginia, and Wisconsin.  Tier 1 shall receive 70% of the Litigation Trust Proceeds (the "Tier 1 Allocation"); and

   o    Tier 2: the following states: Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Washington, West Virginia, Washington D.C., and Wyoming.  Tier 2 shall receive 30% of the Litigation Trust Proceeds (the "Tier 2 Allocation").

o        Tier 3: states other than Tier 1 states and Tier 2 states. Tier 3 shall not receive any of the Litigation Trust Proceeds, and shall include the states of Nevada and Utah.

Each member of the Nationwide Consumer Borrower Class in a Tier 1 state shall receive a Pro Rata Distribution of the Tier 1 Allocation calculated based on the total amount paid by such Class member on Eligible Tribal Loans as reflected on the applicable tribal lender's books and records available to the Debtor.

Each member of the Nationwide Consumer Borrower Class in a Tier 2 state shall receive a Pro Rata distribution of the Tier 2 Allocation calculated based upon the total amount of interest, and of charges, paid by such Class member on Eligible Tribal Loans, as reflected on the tribal lender's  books and records available to the Debtor, over the usury limit in such state applicable to unsecured installment loans issued by lenders subject to such state's laws in a similar dollar amount as the Eligible Tribal Loans.

Members of the Nationwide Consumer Borrower Class in a Tier 3 state shall not receive any monetary distribution.

Notwithstanding anything in this Plan or the Confirmation Order, Distributions from the Litigation Trust to individual members of the Nationwide Consumer Borrower Class shall not exceed the amount each of those consumers paid in excess of principal on his or her Eligible Tribal Loans.

As set forth more fully in the Litigation Trust Agreement the Nationwide Consumer Borrower Class shall be represented by the following firms:

- Kelly & Guzzo, P.L.C.;
- Neligan LLP;
- Consumer Litigation Associates, P.C.;
- Caddell & Chapman;
- Terrell Marshall Law Group PLLC;
- Berger Montague; and
- Gupta Wessler LLP.

The Nationwide Consumer Borrower Class Representatives shall receive the requested service awards in the amount of $5,000 as representatives of the Nationwide Consumer Borrower Class pursuant to the terms of the Litigation Trust Agreement.

**(f)      Class 6 Equity Interests**

Holders of the Equity Interests shall have their Equity Interests cancelled on the Effective Date. Class 6 is Impaired, and holders of Claims in Class 6 are deemed to have rejected the Plan.

**4.3   Means for Implementation of the Plan**

**(a)      Restructuring Transactions**

16

On the Effective Date, the Committee shall implement the "Restructuring Transactions ". The actions to implement the Restructuring Transactions may include: (a) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, interest, or right consistent with the terms of the Plan; (b) creation of the Litigation Trust; and (c) all other actions necessary or appropriate and consistent with the Plan and Confirmation Order, including making filings or recordings that may be required by applicable law in connection with the Plan.

**(b)**       **Corporate Action**

Upon the Effective Date, the Committee shall be authorized to implement the Restructuring Transactions. Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including the implementation of the Restructuring Transactions. On or (as applicable) before the Effective Date, the appropriate manager or officers of the Debtor shall be ordered and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Debtor, including any and all other agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals contemplated by Article 4.2 of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**(c)**       **Funding and Administration of Reserve Accounts**

On the Effective Date, the Debtor and the Debtor's "Collection Agent" (Daniel J. "Corky" Sherman or his successor as applicable) pursuant to the Order Granting Motion to Approve Settlement Agreement and Release Between the Lac Vieux Desert Band of Lake Superior Chippewa Indians, Big Picture Loans, LLC, Eventide Credit Acquisitions, LLC and Certain other Limited Parties to the settlement Agreement ("**BPL Settlement**") [Docket No. 410] shall cause all cash to be transferred to the Escrow Account. The Collection Agent shall also direct Big Picture Loans to send all future payments to be made pursuant to the BPL Settlement to the Litigation Trustee, and the Collection Agent shall immediately forward any Cash received after the Effective Date to the Litigation Trustee. The Collection Agent's obligations under the BPL Settlement shall be terminated on the Effective Date excepts as set forth herein. On the Effective Date, Escrow Funds shall be transferred to and shall vest in the Estate and shall be utilized, among other purposes set forth in the Plan, to fund the Reserve Accounts in accordance with this Article 4.3 of the Plan. All Cash remaining in the Estate immediately after funding the Reserve Accounts and the payment of any other amounts required by this Plan, shall vest in, and be transferred to, the Litigation Trust.

**(1)**       **The Administrative and Priority Claims Cash Reserve**

On the Effective Date, the Administrative and Priority Claims Reserve shall be established and funded in the amount of the aggregate Administrative and Priority Claims Estimate. Subject to the terms of the Plan, the Litigation Trustee shall pay each Allowed Administrative Expense Claim as provided for in Article 2.1 of the Plan. In the event that excess Cash remains in the Administrative and Priority Claims Reserve after payment of all Allowed Administrative Expense and Priority Claims, or at such time as the Cash in the Administrative and Priority Claims Reserve exceeds the Face Amount of the unpaid Administrative Expense and Priority Claims, such Cash

shall be transferred to the Litigation Trust for distribution in accordance with the Plan and the Litigation Trust Agreement.

(2)    <strong>The General Unsecured Claims Cash Pool</strong>

On the Effective Date, or as soon as reasonably practicable thereafter, the General Unsecured Claims Cash Pool shall be established and funded from remaining cash in the Estate. Subject to the terms of the Plan, the Litigation Trustee or its designee shall distribute the Cash in the General Unsecured Claims Cash Pool Pro Rata to holders of Allowed Class 4 Claims. The Litigation Trustee shall establish, fund and administer the Disputed General Unsecured Claims Reserve in accordance this Plan from the Cash deposited into the General Unsecured Claims Cash Pool. In the unlikely event that the amount in the General Unsecured Claims Cash Pool exceeds the allowed amount of General Unsecured Claims, then such excess funds shall be transferred to the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(3)    <strong>The Substantial Contribution Fund</strong>

On the Effective Date, or as soon as reasonably practicable thereafter, the Substantial Contribution Fund shall be funded and disbursed to the holders of the Allowed Substantial Contribution Claims. The amount of the Substantial Contribution Fund shall be equal to (i) 33% of the remaining BPL Settlement payments outstanding as of the entry of the Confirmation Order; and (ii) _[tbd]_ % of the net proceeds recovered by the Litigation Trust from the Avoidance Actions. Notwithstanding the foregoing, the Substantial Contribution Fund shall be subordinate to the accrued and unpaid fees and expenses of the Committee's Professionals, which shall be paid in full prior to the payment of the Allowed Substantial Contribution Claims, unless otherwise agreed to in writing by such Professionals.

(4)    <strong>The Professional Fee Escrow</strong>

On or before the Effective Date, the Professional Fee Escrow shall be established and funded by the Debtor and Collection Agent in Cash in the amount of the aggregate Professional Fee Estimate. Each Professional Claim shall be paid from the Professional Fee Escrow as provided for in Article 2.2 of the Plan. In the event that excess Cash remains in the Professional Fee Escrow after payment of all Allowed Professional Fee Claims, such Cash shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

(5)    <strong>The Litigation Trust Initial Funding</strong>

On the Effective Date, or as soon as reasonably practicable thereafter, after the establishment and funding of the Reserve Accounts and payment of any other amounts required by the Plan, the Litigation Trust Initial Funding shall be deposited into an account owned and controlled by the Litigation Trustee in trust for the holders of Allowed Consumer Borrower Claims.

<strong>(d)    <u>Books and Records</u></strong>

18

The Litigation Trustee shall receive possession of and the right to use and maintain copies of all of Debtor's books and records, whether hard copy or electronically stored information (the "**Books and Records**").  The Debtor shall provide reasonable advance notice with reasonable specificity to the Litigation Trustee prior to destroying any Books and Records and provide the Litigation Trustee with the opportunity, at the Litigation Trust's expense, to review, and obtain, such Books and Records prior to such destruction.  The Litigation Trustee shall have the unilateral right to destroy Books and Records received from the Debtor.  For the avoidance of doubt, the Litigation Trustee and his professionals in their capacities as such shall have full reasonable access to all such Books and Records for the purpose of investigating and pursuing the Causes of Action, and the Litigation Trustee shall be deemed own the attorney-client privilege, work product doctrine, or other privilege or immunity attaching to any such Books and Records necessary for investigating and pursuing the Causes of Action, or obtaining any right to payment.

On the Effective Date, or as soon as reasonably practicable thereafter, the Litigation Trustee shall receive a copy of the Debtor's Books and Records held by any litigation vendor, at the expense of the Litigation Trust, in a form and manner whereby it is commercially and technologically reasonable to obtain such copy.

The term "Confidential Business Information" shall mean confidential PII, or any trade secrets or other confidential business information related to (a) financial information, statements, or records of the Debtor except in connection with pursuing a Cause of Action, (b) typical confidential employee information, (c) risk analysis products and methods (such as models, data and know how), (d) marketing services, strategies and methodologies, and (e) the technology platforms, systems, products and all other Intellectual Property, including without limitation software development and programs and related documentation contained in the Books and Records.

(e)     **Section 1145 Exemption**

To the extent beneficial interests in the Litigation Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the exemption provisions of section 1145 of the Bankruptcy Code shall apply to such beneficial interests.

(f)     **Exemption from Certain Taxes and Fees**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtor; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording

fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

(g)     **Subordination**

The allowance, classification, and treatment of all Claims and Equity Interests under the Plan shall conform to and be consistent with the respective contractual, legal, and equitable subordination rights of such Claims and Equity Interests, and the Plan shall recognize and implement any such rights.  Pursuant to section 510 of the Bankruptcy Code, except where otherwise provided herein, the Committee or the Litigation Trustee on or after the Effective Date reserve the right to seek to re-classify any Allowed Claim or Equity Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

(h)     **Cancellation of Notes, Instruments, Certificates, and Other Documents**

On the Effective Date, except to the extent otherwise provided herein, all notes, instruments, certificates, and other documents evidencing Claims against the Debtor shall be canceled; provided, however, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim shall continue in effect solely for purposes of (a) allowing holders of Allowed Claims to receive Distributions under the Plan and (b) allowing and preserving the rights of the Litigation Trustee, as applicable, to make Distributions on account of Allowed Claims as provided herein.

(i)     **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Committee and the manager, officers and members of the Debtor are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

## ARTICLE V
## THE LITIGATION TRUST

**5.1    Establishment of the Litigation Trust**

The Litigation Trust shall be established and shall become effective on the Effective Date. The Litigation Trust shall be governed and administered in accordance with this Plan and the Litigation Trust Agreement.

**5.2    Transfer of Assets to the Litigation Trust**

On the Effective Date, any and all assets and property of the Estate shall be transferred to the Litigation Trust and administered by the Litigation Trustee in accordance with the terms of the Plan and the Litigation Trust Agreement, including, but not limited to, the Causes of Action, refunds, deposits, remnant assets, the General Unsecured Claims Cash Pool, and any remaining funds in the Professional Fee Escrow following the payment of all Allowed Professional Claims.

**5.3    Litigation Trust Funding**

On the Effective Date, or on such other date as is set forth in the Litigation Trust Agreement, the Litigation Trust shall be established and receive the Litigation Trust Initial Funding. Additionally, any net proceeds of the Causes of Action received subsequent to the Effective Date shall be deposited into the Litigation Trust for distribution in accordance with this Plan and the Litigation Trust Agreement.

**5.4    Causes of Action**

Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Causes of Action and proceeds therefrom shall be transferred and assigned by the Debtor and the Estate (and deemed transferred) to the Litigation Trust free and clear of all Claims, Liens, charges, encumbrances, and rights and interests, without the need for any Entity to take any further action or obtain any approval and the Litigation Trust shall be authorized as the representative of the Estate and Committee to pursue the Causes of Action. In accordance with section 1123(b) of the Bankruptcy Code, the Litigation Trustee shall have the exclusive right to commence and pursue, as appropriate, in his sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, any and all Causes of Action, and the Litigation Trustee's right to commence, prosecute, or settle any such Causes of Action shall be preserved notwithstanding entry of the Confirmation Order or the occurrence of the Effective Date. The Debtor expressly reserves such Cause of Action, which shall be transferred by the Debtor to the Litigation Trust pursuant to the Plan, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, the Plan or the Confirmation Order or any other Final Order (including the Confirmation Order). In addition, the Litigation Trustee reserves the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits. Causes of Action include, but are not limited to:

- Intentional or constructive fraudulent conveyances under section 544(b) of the Bankruptcy Code and applicable law, and section 548 of the Bankruptcy Code, and recovery of same under section 550.

  - Preference payments under section 547 of the Bankruptcy Code and recovery of same under section 550.

  - Turnover of payments received as advance indemnification payments under section 542 of the Bankruptcy Code or other theories and recovery of same under section 550.

  - Breach of contract or breach of the implied covenant of good faith and fair dealing.

  - Breach of fiduciary duty.

  - Common law and statutory conspiracy.

  - Claims for civil remedies against racketeer influenced and corrupt organizations under chapter 96 of title 18 of the United States Code

  - Claims for overpayments, unjust enrichment, fraud, negligent misrepresentation, tortious interference with contract or prospective economic advantage, and civil conspiracy, whether under federal law or the laws of any state.

  - Equitable subordination, including under section 510(c) of the Bankruptcy Code.

  - Aiding and abetting any act or omission of any Entity.

  - Objections to fees, interest, or other charges paid by the Debtor.

The failure of the Committee to list a claim, right, cause of action, suit or proceeding shall not constitute a waiver or release of such claim, right of action, suit or proceeding. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Causes of Action against them as any indication that the Litigation Trustee will not pursue any and all available Causes of Action against them.  An initial list of the Causes of Action may be annexed to the Disclosure Statement or provided in the Plan Supplement.  While the list provides notice to certain Persons and Entities of the existence of Causes of Action against them, it is not intended to limit the Causes of Action the Litigation Trustee may prosecute as others may be discovered after the Litigation Trustee receives copies of the Books and Records.

## 5.5    Litigation Trust Distributions

The Litigation Trustee shall liquidate the Causes of Action and distribute any proceeds therefrom in accordance with this Plan and the Litigation Trust Agreement.  The Litigation Trustee also shall administer the Unsecured Claims Cash Pool and make distributions to Allowed General Unsecured Claims in accordance with this Plan.

**5.6     Litigation Trust Agreement**

A copy of the Litigation Trust Agreement shall be filed, no later than five (5) business days before the deadline for voting on the Plan, as part of the Plan Supplement.  The Committee represents that the Litigation Trust Agreement shall include, without limitation, the following terms:

**(1)     Duration of Trust**

The Litigation Trust shall have an initial term of five (5) years from the Effective Date. Notwithstanding the foregoing, the LTOB may extend such term for an additional finite term provided that the Litigation Trust does not become subject to the Securities Exchange Act of 1934, as amended (as now in effect or hereafter amended) and provided further that the Bankruptcy Court approves an extension based upon a finding that an extension is necessary for the Litigation Trust to resolve all Claims, reduce all applicable Litigation Trust Assets to Cash and liquidate.  The Litigation Trustee shall at all times endeavor to liquidate the Litigation Trust Assets expeditiously, and in no event shall the Litigation Trustee unduly prolong the duration of the Litigation Trust. Unless the Chapter 11 Case has previously been dismissed, upon termination of the Litigation Trust, the Litigation Trustee shall advise the Bankruptcy Court in writing of its termination. Notwithstanding the foregoing, after the termination of the Litigation Trust, the Litigation Trustee shall have the authority to exercise all the powers, authorities and discretions herein conferred solely for the purpose of winding up the affairs of the Litigation Trust.  The Litigation Trustee shall retain the books, records and files that shall have been delivered to or created by the Litigation Trustee; provided, however, subject to the requirements in the Disclosure Statement, in the Plan, and of applicable law, that at the Litigation Trustee's discretion, all of such records and documents may be destroyed at any time after two (2) years from the date of an order of the Bankruptcy Court terminating the Litigation Trust. As soon as practicable after the liquidation or abandonment of all Causes of Action, the Litigation Trustee shall seek entry of a Final Order closing the Chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code.

**(2)     Litigation Trust Oversight Board**

On the Effective Date, the LTOB shall be established.  The members of the LTOB shall disclose to the Litigation Trustee and all other members of the LTOB whether any Claim or Interest that is held by them personally, by any relative or by any entity with which they are employed or affiliated, has been sold, transferred or otherwise assigned, disposed of or satisfied by any entity other than the Litigation Trust.  The members of the LTOB shall serve without compensation, but shall be entitled to reimbursement of reasonable expenses. The LTOB shall be comprised of a representative from each of the firms designated as Nationwide Consumer Borrower Class Counsel in Section 3.5 of the Plan.  In the case of an inability or unwillingness of any member of the LTOB to serve subsequent to his or her original appointment and acceptance, such member shall be replaced by designation of the remaining members of the LTOB and the Litigation Trustee.  If any position on the LTOB remains vacant for more than thirty (30) days, such vacancy may be filled within fifteen (15) days thereafter by the designation of the Litigation Trustee without the requirement of a vote by the other members of the LTOB.  Each replacement member of the LTOB must be a beneficiary of the Litigation Trust.  The LTOB will continue to fully function even while a position on the LTOB remains vacant.

### (3)    Appointment, Compensation, and Powers of Litigation Trustee

The Litigation Trustee shall serve as the trustee for the Litigation Trust.  The appointment of the Litigation Trustee shall be effective as of the Effective Date.  Following the Effective Date, in the event of the death (in the case of a Litigation Trustee that is a natural person), dissolution (in the case of a Litigation Trustee that is not a natural person), resignation, incompetency or removal of the Litigation Trustee, the members of the LTOB shall, by majority vote, designate a successor Litigation Trustee.  Such appointment shall specify the date when such appointment shall be effective.  Every successor Litigation Trustee appointed shall execute, acknowledge and deliver to the Bankruptcy Court and to the retiring Litigation Trustee an instrument accepting the appointment and shall additionally file with the Bankruptcy Court an affidavit demonstrating that such Person is a "disinterested person," as defined by Section 101(14) of the Bankruptcy Code, and thereupon the successor Litigation Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Litigation Trustee.  The Litigation Trustee shall be compensated and reimbursed for reasonable costs and expenses as set forth in, and in accordance with, the Litigation Trust Agreement.  The Litigation Trustee shall have the powers and duties set forth in the Plan and in the Litigation Trust Agreement.  The Litigation Trustee may retain professionals to aid in the performance of his or her responsibilities pursuant to the terms of the Plan and the Litigation Trust Agreement, including, without limitation, the prosecution of the Causes of Action, to administer, dispute, object to or compromise or otherwise resolve all Claims against the Debtor and to make Distributions to holders of Allowed Claims.  The Litigation Trustee may retain Cole Schotz P.C. and/or such other law firm(s) as the Litigation Trustee determines necessary to liquidate the Litigation Trust Assets and to perform such other functions as may be appropriate to carry out the primary purposes of the Litigation Trust.  The Litigation Trustee may commit the Litigation Trust to and shall pay such law firm(s) the reasonable compensation from the Litigation Trust Assets for services rendered and expenses incurred, which expenses may include, without limitation, the fees and expenses of Persons retained by such counsel to perform any such services, including, without limitation, expert witnesses and consultants.  The Litigation Trustee may also engage such law firm(s) on a contingent fee basis or hybrid hourly fee / contingency basis, as permitted by applicable law.  The Litigation Trustee may retain such accountants, experts, advisors, consultants, investigators, appraisers, auctioneers, claims and disbursing agents or other professionals as are advisable to carry out the purposes of the Litigation Trust.

### (b)    <u>Indemnification and Exculpation</u>

The Litigation Trustee, and the Litigation Trustee's agents and professionals, shall not be liable for actions taken or omitted in its capacity as, or on behalf of, the Litigation Trust, except those acts arising out of its own willful misconduct or gross negligence, and shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Litigation Trust, except for any actions or inactions involving willful misconduct or gross negligence.   Any indemnification or reimbursement claim of the Litigation Trustee, or any other party entitled to indemnification or reimbursement under this subsection) shall be satisfied from the Litigation Trust.

## ARTICLE VI
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1    Assumption and Rejection of Executory Contracts and Unexpired Leases**

All costs and expenses, if any, related to the assumption of executory contracts by the Committee, including but not limited to, Cure costs, shall be the sole responsibility of, and paid for by, the Litigation Trust.  The following shall be the treatment of Executory Contracts and Unexpired Leases:

Unless an Executory Contract or Unexpired Lease (i) is expressly identified on the Assumption Schedule; (ii) has been previously assumed by the Debtor by Final Order or has been assumed by the Debtor by order of the Bankruptcy Court as of the Effective Date and not subsequently rejected, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is otherwise assumed pursuant to the terms herein, each Executory Contract and Unexpired Lease shall be deemed rejected, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejection of all such Executory Contracts and Unexpired Leases.

Except as otherwise provided herein or agreed to by the Committee and the applicable counterparty, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests.  Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

If a Claim arises from the rejection of any Executory Contract or Unexpired Lease pursuant to this Plan, such Claim shall be barred and unenforceable against the Debtor or Litigation Trust, or their property unless a proof of claim asserting such Claim is filed with the Bankruptcy Court or the Solicitation Agent and served upon the Litigation Trustee within thirty (30) days after the Effective Date.  Unless otherwise ordered by the Bankruptcy Court, any such rejection damages Claims shall be treated as General Unsecured Claims under the Plan.

**6.2    Insurance Policies**

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtor shall assume (and assign to the Litigation Trust if necessary to continue the insurance policies in full force) all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption (and assignment, if necessary) of each of the insurance policies.  For the

25

avoidance of doubt, nothing in this provision shall impair the Estate's right to the proceeds of the Insurance Rights.

### 6.3    Cure of Defaults and Objections to Cure and Assumption

The Litigation Trust shall be solely responsible for paying Cures, if any, on the Effective Date, as soon as practicable thereafter, or such other date as agreed to by the counterparty. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid to a counterparty must be served on counsel to the Litigation Trust on or before the Cure Objection Deadline. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable, without the need for any objection by the Litigation Trust or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment of the Cure. The Litigation Trustee also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court by the Cure Objection Deadline. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is a dispute regarding Cure, the ability of the Litigation Trust to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption and assignment, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption and assignment, or as may be agreed upon by the Litigation Trust and the counterparty to the Executory Contract or Unexpired Lease.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and the payment of any Cures shall result in the full release and satisfaction of Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed and assigned Executory Contract or Unexpired Lease at any time prior to the Effective Date. Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed and assigned in the Chapter 11 Case, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

### 6.4    Reservation of Rights

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Committee or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Litigation Trust shall have forty-five (45) days following entry of a Final Order resolving such dispute to determine whether to assume, assign or reject the related contract or lease, if applicable.

26

## ARTICLE VII
## PROCEDURES GOVERNING DISTRIBUTIONS

**7.1    Distributions on Account of Claims Allowed as of the Effective Date**

(a)    <u>Distributions to Holders of Allowed Claims Other than Members of the Nationwide Consumer Borrower Class</u>

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Litigation Trustee on or after the Effective Date, as the case may be, and the Holder of the applicable Claim or Equity Interest, on the Initial Distribution Date, the Litigation Trustee shall make Distributions under the Plan on account of Claims Allowed on or before the Effective Date, subject to the rights of the Litigation Trustee, as applicable, to object to Claims. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors or the Litigation Trustee, as applicable, and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or, at the Litigation Trustee's election, through regular installment payments of a total value, as of the Effective Date, equal to the amount of the Allowed Priority Tax Claim as provided in section 1129(a)(9)(c) of the Bankruptcy Code.

(b)    <u>Distributions to Members of the Nationwide Consumer Borrower Class</u>

The Class Administrator shall make Distributions to members of the Nationwide Consumer Borrower Class in accordance with the Plan and Litigation Trust Agreement. The Debtor shall not prosecute, settle, sell, transfer, assign, waive or release any of the Causes of Action, all of which are preserved for and shall be transferred to the Litigation Trust, except those otherwise released, waived or discharged pursuant to the Plan.

To the extent not provided by the Debtor prior to the Effective Date, the Litigation Trustee shall provide on a confidential basis sufficient information to the Class Administrator, and any subsequently appointed class administrator for the Nationwide Consumer Borrower Class, to make an initial Distribution and any subsequent Distributions to the members of the Nationwide Consumer Borrower Class in accordance with the Plan and Litigation Trust Agreement.

**7.2    Special Rules for Distributions to Holders of Disputed Claims**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until such Claim becomes an Allowed Claim.

**7.3    Delivery of Distributions**

(a)    <u>Record Date for Distributions to Holders of Claims</u>

On the Confirmation Date, the Claims Register shall be closed and the Litigation Trustee shall be authorized and entitled to recognize only those record holders, if any, listed on the Claims Register as of the close of business on the Confirmation Date. Notwithstanding the foregoing, if a Claim is transferred and the Claims Agent has been notified in writing of such transfer no later

27

than 10 days before the Effective Date, the Litigation Trustee shall make Distributions to the transferee (rather than the transferor) only to the extent practical and in any event only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. The Litigation Trustee on and after the Effective Date may, but shall have no obligation to, recognize transfers occurring after ten (10) days before the Effective Date.

**(b)     Distribution Process**

Except as otherwise provided herein, Distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to beneficial holders of record as of the Confirmation Date: (1) to the address of such holder as set forth in the books and records of the applicable Debtor (or if the Claims Agent has been notified in writing, on or before the date that is 10 days before the Effective Date, of a change of address, to the changed address); (2) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the Debtors' books and records, no Proof of Claim has been filed and the Claims Agent has not received a written notice of a change of address on or before the date that is 10 days before the Effective Date; or (3) to any counsel that has appeared in the Chapter 11 Cases on the holder's behalf. The Litigation Trustee, and the Claims Agent shall not incur any liability whatsoever on account of any Distributions under the Plan.

**(c)     Compliance Matters**

In connection with the Plan, to the extent applicable, the Litigation Trustee shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Litigation Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Litigation Trustee reserves the right to allocate all Distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances, to the extent applicable.

**(d)     Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition on the Petition Date, for all purposes under the Plan, including voting, allowance and distribution.

(1)     Fractional, Undeliverable, and Unclaimed Distributions

*i.*     Fractional Distributions. Whenever any payment of Cash of a fraction of a dollar pursuant to the Plan would otherwise be required, the actual

28

payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

(2)     Undeliverable Distributions.

      *a)*     If any Distribution to a holder of an Allowed Claim other than a member of the Nationwide Consumer Borrower Class is returned as undeliverable, no further Distributions shall be made to such holder unless and until such holder provides notification to the Litigation Trustee or its designee of the then-current address or other necessary information for delivery, at which time all currently due missed Distributions shall be made to such holder on the next Distribution Date.  Undeliverable Distributions shall remain in the possession of the Litigation Trustee or its designee until such time as a Distribution becomes deliverable, or such Distribution reverts to the Litigation Trust or is canceled pursuant to Article 7.3(e)(3) of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

      *b)*     The Class Administrator shall attempt to distribute all available funds that are distributable to members of the Nationwide Consumer Borrower Class pursuant to the Plan and Litigation Trust Agreement to class members that can be located.  Any Unclaimed Distributions to such members shall be distributed as follows: (a) to the Tier 1 Allocation and Tier 2 Allocation to all other members who cashed their initial distribution checks. At the discretion of the Litigation Trustee and the Litigation Trust Oversight Board, one additional distribution to members may be attempted if reasonably practicable to do so.

(3)     Reversion.   Any Distribution under the Plan that is an Unclaimed Distribution for a period of six months after Distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code.  Subject to the terms of the Litigation Trust Agreement, the Litigation Trustee shall contribute all such Unclaimed Distributions to a charity selected by the Litigation Trustee.  The Claim of any holder of a Claim or its successors with respect to such Unclaimed Distributions shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the Distribution that is an Unclaimed Distribution, to the contrary.

(4)     *De Minimis* Distributions.  Except in the case of members of the Nationwide Consumer Borrower Class, the Litigation Trustee shall not be required to, but may in his sole and absolute discretion, make Distributions of Cash in an amount less than $10 to any holder of an Allowed Claim.

**(e)     Surrender of Canceled Instruments**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent.  Such Certificate shall be canceled solely with respect

to the Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.

### 7.4 Claims Paid or Payable by Third Parties

#### (a)  Maximum Distribution

An Allowed Claim that receives (i) Distributions in the Allowed amount of such Claim or (ii) Distributions that combined with Distributions or other consideration provided on the Allowed Claim equal the Allowed amount of such Claim shall, in each case be deemed satisfied in full as to such Allowed Claim, and in no event shall an Allowed Claim receive Distributions in excess of the Allowed amount of such Claim.

#### (b)  Claims Paid by Third Parties

The Litigation Trustee on or after the Effective Date, in their sole discretion, may request that a holder of an Allowed Claim certify in writing and provide evidence reasonably acceptable to the Litigation Trustee to confirm whether: (i) the holder of such Claim has received payment in full on account of such Claim from a party that is not a Debtor; or (ii) such holder has been notified by or on behalf of a third party of any future Distributions or payment anticipated or estimated to be made on account of such Claim from such third party.

If (i) the Litigation Trustee on or after the Effective Date determine, based on the foregoing, that an Allowed Claim has been satisfied in full in accordance with Article 7.4(a) of the Plan, then unless the Bankruptcy Court orders otherwise, no Distributions shall thereafter be made on account of such Allowed Claim, or (ii) a holder of an Allowed Claim does not comply with this section, then unless the Bankruptcy Court orders otherwise, the Litigation Trustee shall not be required to make Distributions on account of such Allowed Claim, *provided* that nothing herein shall preclude a holder of an Allowed Claim from challenging such determination in the Bankruptcy Court.

#### (c)  Claims Payable by Insurance Carriers

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full a Claim, such Claim shall be disallowed and expunged to the extent of any agreed upon satisfaction in accordance with this section after notice to such Holder of an Allowed Claim and an opportunity for a hearing.

#### (d)  Applicability of Insurance Policies

Except as otherwise provided herein, Distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any rights of any Entity, including insurers, under any policies of insurance.

### 7.5 Setoffs

Except as otherwise expressly provided for herein, the Litigation Trustee on or after the Effective Date, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Allowed Claim (before any Distribution is made on account of such Allowed Claim), any Claims, rights, and Causes of Action of any nature that the Debtor, or Litigation Trustee on or after the Effective Date, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor, the Litigation Trustee of any such Claims, rights, and Causes of Action that they may possess against such holder.  In no event shall any holder of Claims be entitled to set off any Claim against any Claim, right, or Cause of Action of the Debtor or the Litigation Trustee, as applicable, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

## ARTICLE VIII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

### 8.1    Disputed Claims Process

Except as otherwise provided herein, if an Entity files a Proof of Claim and the Litigation Trustee does not determine, and without the need for notice to or action, order, or approval of the Bankruptcy Court, that the Claim subject to such Proof of Claim is Allowed, such Claim shall be Disputed unless Allowed or disallowed by a Final Order or as otherwise set forth in Article VIII of the Plan.  Except as otherwise provided herein, all Proofs of Claim not filed in accordance with the requirements set forth in the Plan shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against the Debtor, the Litigation Trust or their respective property or estates without the need for any objection by the Debtor or the Litigation Trustee, as applicable, or any further notice to or action, order, or approval of the Bankruptcy Court.

### 8.2    Prosecution of Objections to Claims

The Committee (before the Effective Date) and the Litigation Trustee (on and after the Effective Date), shall have the sole authority and power to object to and/or settle General Unsecured Claims on behalf of the Debtor's estate.  The Debtor shall not object to any Claims in the Chapter 11 Case or have standing to be a party in the Claims objection.  Neither the Debtor nor any Released Parties shall object to any Claims in these Chapter 11 Cases or have standing to be a party in the Claims objections.  Any objections to Claims shall be **served and filed on or before the 180th day after the Effective Date** or by such later date as ordered by the Bankruptcy Court. All Claims not objected to by the end of such 180-day period shall be deemed Allowed unless such period is extended upon approval of the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Litigation Trustee shall have and

retain any and all rights and defenses a Debtor or the Committee had immediately prior to the Effective Date with respect to any Disputed Claim, including the Causes of Action.

### 8.3    Estimation of Claims

On and after the Effective Date, the Litigation Trustee shall have the sole authority and power on behalf of the Estate to request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, regardless of whether the Debtor, the Litigation Trustee or any other Person has previously objected to such Claim.  The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim and any appeal thereof.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the amount on which a reserve is to be calculated for purposes of any reserve requirement in the Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Litigation Trustee may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

### 8.4    Recoupment

In no event shall any holder of Claims be entitled to recoup any Claim against any Claim, right, or Cause of Action of the Debtor or the Litigation Trustee, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

### 8.5    No Interest

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final Distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

### 8.6    Disallowance of Claims

All Claims of any Entity from which property is sought by the Litigation Trustee under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Litigation Trustee alleges is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if: (a) the Entity, on the one hand, and the Litigation Trustee, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

## ARTICLE IX
## EFFECT OF CONFIRMATION OF THE PLAN

**9.1** **Dissolution of the Creditors' Committee**

The Committee shall continue in existence until the Effective Date to exercise those powers and perform those duties specified in section 1103 of the Bankruptcy Code.  On the Effective Date, the Committee shall be dissolved automatically and its members shall be deemed released of all their duties, responsibilities and obligations in connection with the Chapter 11 Cases and the Plan and its implementation, and the retention or employment of the Committee's attorneys, financial advisors, and other agents shall terminate as of the Effective Date; provided, however, such attorneys and financial advisors shall be entitled to pursue their own Professional Claims and represent the Committee in connection with such Professional Claims.

**9.2** **Discharge of Claims and Termination of Interests**

Except as otherwise provided for herein and effective as of the Effective Date pursuant to section 1141(d) of the Bankruptcy Code: (a) the rights afforded in the Plan and the treatment of all Claims, Equity Interests, and Causes of Action that arose before the Effective Date shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtor or any of its assets, property, or Estate; (b) the Plan shall bind all holders of Claims and Equity Interests, whether known or unknown, notwithstanding whether any such holders has filed a Proof of Claim or Equity Interest or has failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Equity Interests shall be satisfied, discharged, and released in full, and the Debtor's liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code, regardless of whether a Proof of Claim or Equity Interest with respect thereto was filed, whether the Claim or Equity Interest is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a Distribution hereunder; and (d) all Entities shall be precluded from asserting against the Debtor, the Debtor's Estate, the Litigation Trustee, their successors and assigns, and their assets and properties any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

All Equity Interests shall be cancelled, disallowed, released, and extinguished as of the Effective Date, and will be of no further force or effect.

**9.3** **Exculpation**

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is released and exculpated from any Claim, Cause of Action or Non-Estate Cause of Action related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Case, the

33

pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud, willful misconduct or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

### 9.4    Injunction

**Except as otherwise provided herein or for obligations issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Equity are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Persons or the property or Estate of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Persons or against the property or Estate of such Persons on account of or in connection with or with respect to any such Claims or Equity Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Equity Interests released, exculpated, or settled pursuant to the Plan.**

### 9.5    Release of Liens

Except (a) with respect to the Liens securing Other Secured Claims (depending on the treatment of such Claims), or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and the holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested to reflect or effectuate such releases.

### 9.6    Reimbursement or Contribution

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is

contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

## ARTICLE X
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived by the Committee and Nationwide Class Counsel:

(a)     the Disclosure Statement Approval Order and Confirmation Order shall have been entered by the Bankruptcy Court and each shall have become a Final Order;

(b)     all authorizations, consents, regulatory approvals, rulings or documents (if any) that are necessary for the Plan's effectiveness shall have been obtained;

(c)     the Nationwide Consumer Borrower Class shall have been fully and finally certified;

(d)     all payments and transfers of assets from the Debtor's estate, and all other payments, required under the Plan to be made before the Effective Date shall have been made in accordance with the terms of the Plan; and

(e)     with respect to all documents, applications, and agreements necessary to implement the Plan: (1) all conditions precedent to such documents, applications, and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents, applications, and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units, regulators, or commissions in accordance with applicable laws; and (3) such documents, applications, and agreements shall have been effected or executed.

**10.2     Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**10.3     Effect of Non-Occurrence of Conditions to Consummation**

If the Effective Date does not occur, then the Plan shall be null and void in all respects, including that no claimants shall be deemed to have allowed claims as a result of the Plan.

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then except as provided in any order of the Bankruptcy Court vacating the Confirmation Order, the Plan will be null and void in all respects, and nothing contained in the Plan or Disclosure

Statement shall: (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XI
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### 11.1   Modification of Plan

Effective as of the date hereof: (a) the Committee reserves the right in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Litigation Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

### 11.2   Effect of Confirmation on Modifications

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### 11.3   Revocation or Withdrawal of Plan

The Committee reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Committee revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Equity Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor, Committee or any other Entity.

## ARTICLE XII
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

(a)      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim, including the resolution of any request for payment of an Administrative Claim and the resolution of any and

all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

(b)    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

(c)    resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) any dispute regarding whether a contract or lease is or was executory or expired; and (d) any dispute regarding rejection damages claims.

(d)    ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(e)    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

(f)    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

(g)    enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

(h)    grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

(j)    hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including: (a) any adversary proceedings related to the Chapter 11 Cases; (b) with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the holder of a Claim or an Equity Interest for amounts not timely repaid pursuant to Article 7.4(a) of the Plan; (c) with respect to the injunctions, and

other provisions contained in Article IX of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (d) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (e) related to section 1141 of the Bankruptcy Code;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(l)     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

(m)     issue any order in aid of implementation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(n)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     enter an order or Final Decree concluding or closing the Chapter 11 Case;

(p)     enforce all orders previously entered by the Bankruptcy Court; and

(q)     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII
## OTHER MISCELLANEOUS PLAN PROVISIONS

### 13.1    Additional Documents

On or before the Effective Date, the Committee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtor or the Litigation Trustee, as applicable, and all holders of Claims receiving Distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 13.2    Payment of Statutory Fees

Subject to Article 4.1 of the Plan, all fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

### 13.3    Waiver of Federal Rule of Civil Procedure 62(a)

The Committee may request that the Confirmation Order include (a) a finding that Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order, and (b) authorization for the Committee to consummate the Plan immediately after entry of the Confirmation Order.

**13.4    Reservation of Rights; Binding Effect**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Committee with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Committee with respect to the holders of Claims or Equity Interests prior to the Effective Date.

Upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Litigation Trustee and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

**13.5    Closing of Chapter 11 Case**

The Litigation Trustee shall, as promptly as practicable after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required to obtain closures of the Chapter 11 Case under Bankruptcy Rule 3022, any applicable local rules, and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

**13.6    Service of Documents**

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtor or the Litigation Trustee, as applicable, shall be served on:

| | |
|---|---|
| **Counsel to Debtor** | **Vartabedian Hester & Haynes**<br>301 Commerce Street, Suite 3635<br>Fort Worth, TX 76102<br>Attn.:  Jeff Prostok<br>         Suzanne Rosen |
| **Litigation Trustee** | [tbd by Committee] |
| **United States Trustee** | **Office of the United States Trustee for the Northern District of Texas**<br>Earle Cabell Federal Building<br>1100 Commerce Street, Room 976<br>Dallas, TX 25242<br>Attn: Elizabeth A. Young |

**13.7     Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect during the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan, the Confirmation Order shall remain in full force and effect in accordance with their terms.

**13.8     Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**13.9     Plan Supplement Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Committee's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at www.txnb.uscourts.gov.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such part of the Plan that does not constitute the Plan Supplement shall control.

**13.10    Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid and enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

### ARTICLE XIV
### SOLICITATION AND VOTING PROCEDURES

**14.1     Classes Entitled to Vote on the Plan**

The following Classes are the only Classes entitled to vote to accept or reject the Plan (the "**Voting Classes**"):

| Class | Claim or Interest | Voting Rights | Status |
|-------|-------------------|---------------|--------|
| 4 | General Unsecured Claims | Yes | Impaired |
| 5 | Consumer Borrower Claims | Yes | Impaired |

If your Claim or Interest is not included in the Voting Classes, you are not entitled to vote, and you will not receive a Solicitation Package (as defined herein), including a ballot setting forth detailed voting instructions. If your Claim or Interest is included in the Voting Classes, you should read your ballot and carefully follow the instructions included in the ballot. Please use only the ballot that accompanies this Disclosure Statement or the ballot that the Debtor, Committee or the Solicitation Agent on behalf of the Debtor, otherwise provided to you.

**14.2   Votes Required for Acceptance by a Class**

Under the Bankruptcy Code, acceptance by a class of claims requires an affirmative vote of more than one-half in number of the Holders of the total allowed claims that have voted and an affirmative vote of Holders representing at least two-thirds in dollar amount of the total allowed claims that have voted.

**14.3   Certain Factors to be Considered Prior to Voting**

There are a variety of factors that all Holders of Claims entitled to vote on the Plan should consider prior to voting to accept or reject the Plan. These factors may impact recoveries under the Plan and include:

- unless otherwise specifically indicated, the financial information contained in the Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and the Disclosure Statement;

- although the Committee believes that the Plan complies with all applicable provisions of the Bankruptcy Code, the Committee can neither assure such compliance nor that the Court will confirm the Plan.

While these factors could affect distributions available to Holders of Allowed Claims under the Plan, the occurrence or impact of such factors will not necessarily affect the validity of the vote of the Voting Classes or necessarily require a re-solicitation of the votes of Holders of Claims in the Voting Classes. For a further discussion of risk factors, please refer to Article X of this Disclosure Statement, entitled "Certain Factors to Be Considered."

**14.4   Voting Procedures**

Each Class entitled to Vote on the Plan will receive a solicitation package (the "**Solicitation Package**") in the form that will be attached to the Motion for Order (I) Approving the Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving Form and Notice of the Confirmation Hearing, (C) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (D) Approving Forms of Ballots, (E) Establishing Deadline for Receipt of Ballots, and (F) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to Confirmation of the Plan; and (IV) Granting Related Relief (the "**Disclosure Statement and Solicitation Motion**"), with instructions explaining how to vote and identifying the deadline by which votes must be received by the Solicitation Agent.

IF A BALLOT IS RECEIVED AFTER THE VOTING DEADLINE, IT WILL NOT BE COUNTED UNLESS THE COMMITTEE DETERMINEs OTHERWISE.

ANY BALLOT THAT IS PROPERLY EXECUTED BY THE HOLDER OF A CLAIM BUT THAT DOES NOT CLEARLY INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN OR ANY BALLOT THAT INDICATES BOTH AN ACCEPTANCE AND A REJECTION OF THE PLAN WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.

EACH HOLDER OF A CLAIM MUST VOTE ALL OF ITS CLAIMS WITHIN A PARTICULAR CLASS EITHER TO ACCEPT OR REJECT THE PLAN AND MAY NOT SPLIT SUCH VOTES.  BY SIGNING AND RETURNING A BALLOT, EACH HOLDER OF A CLAIM WILL CERTIFY TO THE COURT AND THE COMMITTEE THAT NO OTHER BALLOTS WITH RESPECT TO SUCH CLAIM HAVE BEEN CAST OR, IF ANY OTHER BALLOTS HAVE BEEN CAST WITH RESPECT TO SUCH CLASS OF CLAIMS, SUCH OTHER BALLOTS INDICATED THE SAME VOTE TO ACCEPT OR REJECT THE PLAN. IF A HOLDER CASTS MULTIPLE BALLOTS WITH RESPECT TO THE SAME CLASS OF CLAIMS AND THOSE BALLOTS ARE IN CONFLICT WITH EACH OTHER, SUCH BALLOTS WILL NOT BE COUNTED FOR PURPOSES OF ACCEPTING OR REJECTING THE PLAN.

IT IS IMPORTANT THAT THE HOLDER OF A CLAIM IN THE VOTING CLASSES FOLLOW THE SPECIFIC INSTRUCTIONS PROVIDED ON SUCH HOLDER'S BALLOT AND THE ACCOMPANYING INSTRUCTIONS.

## ARTICLE XV
## CONFIRMATION PROCEDURES

The following is a brief summary of the Confirmation process.  Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and to consult with their own advisors.

### 15.1   The Confirmation Hearing

Under section 1128(a) of the Bankruptcy Code, the Court, after notice, may hold a hearing to confirm a plan of reorganization. In the Disclosure Statement and Solicitation Motion, the

Debtors requested that the Court set a date and time for the Confirmation Hearing.   The Confirmation Hearing, once set, may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the Entities who have filed an objection to the Plan, if any, without further notice to parties in interest.   The Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing.   Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation.   The Debtors, in the Disclosure Statement and Solicitation Motion, will request that the Court set a date and time for parties in interest to file Plan objections. All objections to the Plan must be filed with the Court and served on the Debtor, the Committee, and certain other parties in interest in accordance with the applicable order of the Court so that they are received on or before the deadline to file such objections as set forth therein.

**15.2    Confirmation Standards**

The following requirements must be satisfied pursuant to section 1129(a) of the Bankruptcy Code before the Court may confirm a plan of reorganization.

- The proponent of the Plan have complied with the applicable provisions of the Bankruptcy Code.

- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made by a proponent of the Plan or by a Person issuing Securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Case, in connection with the Plan and incident to the Case is subject to the approval of the Court as reasonable.

- With respect to each holder within an impaired Class of Claims or Interests, each such holder (a) has accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

- With respect to each Class of Claims or Interests, such Class (a) has accepted the Plan or (b) is unimpaired under the Plan, provided that the Plan may be confirmed despite not meeting this requirement if the Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code.

- The Plan provides for treatment of Claims, as applicable, in accordance with the provisions of section 507(a) of the Bankruptcy Code.

- If a Class of Claims or Interests is impaired under the Plan, at least one Class of Claims or Interests that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any Insider.

- Confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, or any successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

- All fees payable under 28 U.S.C. § 1930 have been paid or the Plan provides for the payment of all such fees on the Effective Date.

## 15.3    Best Interests Test / Liquidation Analysis

As described above, section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired Claim or Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  Based on the liquidation analysis attached hereto as **Exhibit B** (the "**Liquidation Analysis**"), the Committee believes that the value of any distributions if the Case were converted to cases under chapter 7 of the Bankruptcy Code would be no greater than the value of distributions under the Plan.  As a result, the Committee believes holders of Claims and Interests in all impaired Classes will recover at least as much as a result of Confirmation of the Plan as they would recover through a hypothetical chapter 7 liquidation.

## 15.4    Funding and Feasibility of the Chapter 11 Plan

All amounts necessary for the Committee (on the Effective Date) or the Litigation Trust (after the Effective Date) to make payments or distributions pursuant to the Plan shall be available, as applicable, to the Litigation Trust through, inter alia, the Escrow Funds.

The Bankruptcy Code requires that a debtor demonstrate that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization, unless the plan provides for a liquidation.  The Committee's cash flow forecasts and the vesting of the Assets demonstrate that the confirmation of the Plan is not likely to be followed by a liquidation or the need for further financial reorganization.

## 15.5    Alternatives to Confirmation and Consummation of the Plan

If the Plan cannot be confirmed, the Committee may seek to (1) prepare and present to the Court an alternative chapter 11 plan for confirmation, or (2) liquidate the Debtor under chapter 7 of the Bankruptcy Code.  If the Committee were to pursue a chapter 7 liquidation, the Case would be converted to cases under chapter 7 of the Bankruptcy Code and a trustee would be elected or appointed to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effects that a chapter 7 liquidation would have on Creditors' recoveries and the Debtor is described in the unaudited Liquidation Analysis.

## ARTICLE XVI
## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES

THE FOLLOWING IS NOT INTENDED TO BE A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL.  THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN FOR HOLDERS OF CLAIMS AND INTERESTS ARE COMPLEX AND, IN SOME CASES, UNCERTAIN.  ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER OWN INDIVIDUAL TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER.

The following is a general summary of certain significant U.S. federal income tax consequences of the Plan to the holders of certain Claims and Interests.  This summary is based upon the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), the Treasury Department regulations promulgated thereunder ("**Treasury Regulations**"), judicial decisions and current administrative rulings and practice as in effect on the date hereof.  These authorities are all subject to change at any time by legislative, judicial or administrative action, and such change may be applied retroactively in a manner that could adversely affect holders of Claims or Interests and the Debtors.

Due to a lack of definitive judicial or administrative authority or interpretation, the complexity of the application of the Tax Code and Treasury Regulations to the implementation of the Plan, the possibility of changes in the law, the differences in the nature of various Claims and Interests and the potential for disputes as to legal and factual matters, the tax consequences discussed herein are subject to substantial uncertainties.

## 16.1    Tax Consequences for the Debtor

Subject to certain exceptions, a debtor generally recognizes cancellation of indebtedness ("**COD**") income upon satisfaction of outstanding indebtedness equal to the excess of (i) the adjusted issue price of the indebtedness satisfied less (ii) the sum of the issue price of any new indebtedness issued, the amount of cash paid, and the fair market value of any other consideration (including stock of the debtor) given in satisfaction of the indebtedness.

A debtor may not be required to include COD income in gross income if the discharge of the debt occurs in a case under the Bankruptcy Code.  However, under the Tax Code a debtor generally must, after the determination of the tax imposed for the year of discharge, if any, reduce its tax attributes (including net operating loss carryovers, tax credits, capital loss carryovers, and/or the tax basis of its assets) by the amount of COD income excluded from gross income by this exception, if any.

**16.2     Tax Consequences for Holders of Claims and Interests**

The U.S. federal income tax consequences of the Plan to a U.S. holder of a Claim or Interest (a "**Holder**") will depend, in part, on whether the Claim constitutes a "security" for federal income tax purposes, whether the holder reports income on the accrual or cash basis, whether the Holder has taken a bad debt deduction or worthless security deduction with respect to the Claim and whether the Holder receives distributions under the Plan in more than one taxable year. U.S. Holders should consult their tax advisors regarding the tax consequences of the Plan based on their individual circumstances.

Whether an instrument constitutes a "security" is determined based upon all the facts and circumstances, but most authorities have held that the length of the term of a debt instrument is an important factor in determining whether such instrument is a security for federal income tax purposes. These authorities have indicated that a term of less than five years is evidence that the instrument is not a security, whereas a term of ten years or more is evidence that it is a security. Under somewhat different facts, the IRS has ruled that new debt obligations with a term of less than five years issued in exchange for and bearing the same terms (other than interest rate) as securities should also be classified as securities for this purpose, since the new debt represents a continuation of the holder's investment in the corporation in substantially the same form. There are numerous other factors that could be taken into account in determining whether a debt instrument is a security, including the security for payment, the creditworthiness of the obligor, the subordination or lack thereof to other creditors, the right to vote or otherwise participate in the management of the obligor, convertibility of the instrument into an equity interest of the obligor, whether payments of interest are fixed, variable, or contingent, and whether such payments are made on a current basis or accrued. Because of the inherently factual nature of this determination, each U.S. Holder is urged to consult its tax advisor regarding whether such Claim constitutes a security for federal income tax purposes.

The Litigation Trustee will withhold distributions provided under the Plan and required by law to be withheld, and will comply with all applicable reporting requirements of the Tax Code. Under the Tax Code, interest, dividends and other "reportable payments" may under certain circumstances be subject to "backup withholding". Backup withholding generally applies if the holder of a Claim (i) fails to furnish his social security number or other taxpayer identification number ("**TIN**"), (ii) furnishes an incorrect TIN, (iii) fails to report interest or dividends, or (iv) under certain circumstances fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct TIN and the holder is not subject to backup withholding. Your Ballot contains a place to indicate your TIN.

Non-U.S. Holders may also be subject to withholding on payments under Chapter 3 of the Tax Code (Withholding on fixed, determinable, annual, periodical income or "FDAP") and Chapter 4 of the Tax Code (the Foreign Account Tax Compliance Act or "FATCA"). These withholding regimes generally apply to non-resident alien individuals and foreign corporations.

Holders of Claims and Interests should consult their respective individual tax advisors for more specific advice on the tax implications of the Plan on their specific situations.

46

**ARTICLE XVII**
**CERTAIN FACTORS TO BE CONSIDERED**

**PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS THAT ARE IMPAIRED SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.**

**ALTHOUGH THESE RISK FACTORS ARE MANY, THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' BUSINESSES OR THE PLAN AND ITS IMPLEMENTATION.**

The following provides a summary of various important considerations and risk factors associated with the Plan; however, it is not exhaustive. In considering whether to vote to accept or reject the Plan, Holders of Claims that are entitled to vote should read and carefully consider the factors set forth below, as well as all other information set forth or otherwise referenced or incorporated by reference in this Disclosure Statement.

**17.1    General Considerations**

**(a)    Parties in Interest May Object to the Committee's Classification of Claims and Interests**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each Class of Claims or Interests, as applicable, are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Court will reach the same conclusion.

**(b)    The Committee May Not Be Able to Satisfy the Voting Requirements for Confirmation of the Plan**

If votes are received in number and amount sufficient to enable the Court to confirm the Plan, the Committee may seek, as promptly as practicable thereafter, Confirmation. If the Plan does not receive the required support from at least one impaired Class, the Committee may not be able to confirm the Plan.

**(c)    The Committee May Not Be Able to Secure Confirmation of the Plan**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) such plan is feasible; and (c) the value of distributions to non-accepting holders of claims and interests within a particular class under such plan will not be less than the value of

47

distributions such holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Court will confirm the Plan. A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Court determined that the Disclosure Statement, the balloting procedures and voting results were appropriate, the Court could still decline to confirm the Plan if it found that any of the statutory requirements for Confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes. If the Plan is not confirmed, it is unclear what distributions, if any, Holders of Allowed Claims would receive with respect to their Allowed Claims.

The Committee, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for Confirmation. Any such modifications could result in a less favorable treatment of any non-accepting Class, as well as of any Classes junior to such non-accepting Class, than the treatment currently provided in the Plan. Such less favorable treatment could include a distribution of property to the Class affected by the modification of a lesser value than currently provided in the Plan or no distribution of property whatsoever under the Plan.

**(d)** **Risk of Non-Occurrence of Effective Date**

Although the Committee believes that the Effective Date would occur shortly after the Confirmation Date, there can be no assurance as to such timing.

**17.2    Certain Tax Implications of the Chapter 11 Case**

Holders of Allowed Claims and Interests should carefully review Article IX herein, "Certain U.S. Federal Income Tax Consequences," to determine how the tax implications of the Plan and the Case may adversely affect the Debtors and holders of Claims and Interests.

**17.3    Disclosure Statement Disclaimer**

**(a)** **Information Contained Herein Is for Soliciting Votes**

The information contained in this Disclosure Statement is for the purpose of soliciting acceptances of the Plan and may not be relied upon for any other purpose.

**(b)** **Disclosure Statement May Contain Forward-Looking Statements**

Many of the statements included in this Disclosure Statement contain forward-looking statements and information relating to the Debtor. These forward-looking statements are generally identified by the use of terminology such as "may," "will," "could," "should," "potential," "continue," "expect," "intend," "plan," "estimate," "project," "forecast," "anticipate," "believe," or similar phrases or the negatives of such terms. These statements are based on the beliefs of the

48

Committee as well as assumptions made using information currently available to the Committee. Such statements are subject to risks, uncertainties and assumptions, as well as other matters not yet known or not currently considered material by the Committee.  Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, actual results may vary materially from those anticipated, estimated or projected.  Given these risks and uncertainties, Holders of Claims or Interests are cautioned not to place undue reliance on such forward-looking statements.  Forward-looking statements do not guarantee future performance. Holders of Claims or Interests should recognize these statements for what they are and not rely on them as facts.  The Committee does not undertake any obligation to update or revise any of these forward-looking statements to reflect new events or circumstances after the date of this Disclosure Statement

    **(c)**    <u>**No Legal, Business, or Tax Advice Is Provided to You by This Disclosure Statement**</u>

    **THIS DISCLOSURE STATEMENT IS NOT LEGAL, BUSINESS, OR TAX ADVICE TO YOU**.  The contents of this Disclosure Statement should not be construed as legal, business, or tax advice.  Each holder of a Claim or Interest should consult his or her own legal counsel and accountant with regard to any legal, tax, and other matters concerning his or her Claim or Interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to Confirmation.

    **(d)**    <u>**No Admissions Made**</u>

    The information and statements contained in this Disclosure Statement will neither (1) constitute an admission of any fact or liability by any entity (including the Committee) nor (2) be deemed evidence of the tax or other legal effects of the Plan on the Committee, holders of Allowed Claims or Interests, or any other parties-in-interest.

    **(e)**    <u>**Failure to Identify Causes of Action or Projected Objections**</u>

    No reliance should be placed on the fact that a particular Cause of Action or projected objection to a particular Claim or Interest is, or is not, identified in this Disclosure Statement or discussed at length.  Except as otherwise provided under the Plan, the Litigation Trustee reserves the right to continue to investigate Causes of Action and objections to Claims and to pursue Causes of Action and/or objections to Claims, as appropriate.

    **(f)**    <u>**No Waiver of Right to Object or Right to Recover Transfers and Assets**</u>

    Except as otherwise provided in the Plan, the vote by a holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any claims or rights of the Litigation Trustee to object to that holder's Allowed Claim, to bring Causes of Action, or to recover any preferential, fraudulent, or other voidable transfer of assets, regardless of whether any such Claims, Causes of Action or avoidable transfers are specifically or generally identified herein or in the Plan.

**(g)** **Information Was Provided by the Debtor and Was Relied Upon by the Committee's Advisors**

Counsel to and other advisors retained by the Committee have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Committee have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not independently verified the information contained herein.

**(h)** **The Potential Exists for Inaccuracies and the Debtors Have No Duty To Update**

The Committee makes the statements contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since such date. Although the Committee has used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Committee nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Committee may subsequently update the information in this Disclosure Statement, the Committee has no affirmative duty to do so unless ordered by the Court.

**(i)** **No Representations Outside of the Disclosure Statement Are Authorized**

No representations concerning or relating to the Debtor, the Chapter 11 Case, or the Plan are authorized by the Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. In deciding whether to vote to accept or reject the Plan, you should not rely upon any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, unless otherwise indicated herein. You should promptly report unauthorized representations or inducements to the counsel to the Committee and the Office of the United States Trustee.

**ARTICLE XVIII**
**CONCLUSION AND RECOMMENDATION**

For all the reasons set forth in this Disclosure Statement, the Committee believes that confirmation of the Plan is preferable to all other alternatives. The Committee urges all holders of Claims entitled to vote to accept the Plan and to evidence such acceptance by returning their ballots so they will be received by the Solicitation Agent by the voting deadline that is set by the Court.

*[Remainder of page intentionally left blank]*

Dated: September 4, 2025

/s/ Ian R. Phillips
Ian R. Phillips, Esq. (TX Bar No. 24091239)
COLE SCHOTZ P.C.
901 Main Street, Suite 4120
Dallas, TX 75202
Telephone: (469) 557-9390
Facsimile: (469) 533-1587
iphillips@coleschotz.com

and

Gary H. Leibowitz, Esq. (*Admitted Pro hac vice*)
H.C. Jones, III, Esq. (*Admitted Pro hac vice*)
J. Michael Pardoe, Esq. (*Admitted Pro hac vice*)
COLE SCHOTZ P.C.
1201 Wills Street, Suite 320
Baltimore, MD 21231
Telephone: (410) 230-0660
Facsimile: (410) 230-0667
gleibowitz@coleschotz.com
hjones@coleschotz.com
mpardoe@coleschotz.com

*Counsel to the Official Committee of Unsecured Creditors*

## <u>Exhibit A</u>

**The Plan**

[TO BE FILED SEPARATELY]

**Exhibit B**

**Liquidation Analysis**

[TO BE FILED IN ADVANCE OF THE HEARING ON APPROVAL OF
THE DISCLOSURE STATEMENT]

**<u>Exhibit C</u>**

**Consumer Borrower Litigation**

- *Williams, et al. v. Big Picture Loans, LLC, et al*., Case No. 3:17-cv-461 (E.D. Va.);

- *Galloway et al. v. Big Picture Loans*, *LLC, et al.,* Case No. 3:18-cv-406 (E.D. Va.);

- *Smith, et al. v. Martorello, et al.,* Case No. 3:18-cv-01651-AR (D. Or.);

- *Duggan, et al. v. Martorello, et al.,* Case No. 1:18-cv-12277 (D. Ma);